# EXHIBIT K

```
DOCKET NUMBER CV07-5013037S      :  SUPERIOR COURT

BANK OF NEW YORK                 :  JUDICIAL DISTRICT

VS.                              :  HARTFORD, CONNECTICUT

SONJA BELL, ET AL                :  JANUARY 29, 2010
```

B E F O R E:

        THE HONORABLE ROBERT SATTER, JTR

A P P E A R A N C E S:

REPRESENTING THE PLAINTIFF:

GEOFF MILNE
HUNT LEIBERT JACOBSON, PC
50 WESTON STREET
HARTFORD, CONNECTICUT 06120

REPRESENTING THE DEFENDANT:

J. HANSON GUEST
151 NEW PARK AVENUE
HARTFORD, CONNECTICUT 06106

Recorded and Transcribed by:
Lori Van Buren

1  **EXCERPTS**
2           MR. MILNE: Your Honor, if I could just have
3  about a 90 second recess, I'll be right back, please?
4           (Recess.)
5           THE COURT: Okay. Mr. Milne, you've been
6  waiting since ten o'clock.
7           MR. MILNE: Yes. I certainly have, Your Honor.
8  I am going to start with the law; I think that's a
9  good place to start.
10          THE COURT: That's the best place I know.
11          MR. MILNE: Let's start with what the law is,
12 I'm going to hand to Your Honor a copy of the
13 decision in SKW Real Estate Limited Partnership v.
14 Gallicchio, 49 Conn. App. 563, and I have gone to the
15 trouble of putting a green flag on the opinion and
16 I'm even going to give my green flagged opinion to my
17 opponent.
18          MR. GUEST: Thank you, sir.
19          MR. MILNE: And what I love about the law is I
20 love to read the law because the law sets the
21 standard for everything that we do and we need to
22 bring that standard to bear on this case and this
23 motion. And I think if we do that, we may be able to
24 bring some focus to where we are.
25          In the Gallicchio case, which dealt with
26 standing, and this is an Appellate Court decision,
27 page 4, the Appellate Court set forth that the

```
 1       production of the note establishes a prima facie case
 2       against the makers and the plaintiff may rest there.
 3       It's up to the defendant to set up and prove facts
 4       which limit or change the plaintiff's rights, and
 5       perhaps most part of this paragraph, this is page 4
 6       of the Lexus printout, the defendant's here did not
 7       establish that the title of any holder who negotiated
 8       the note to the plaintiff was defective.  Here, even
 9       without endorsement, when the plaintiff had lawful
10       possession of the note and mortgage and the
11       defendant's made payments according to the terms of
12       the note to the plaintiff for nineteen months, the
13       plaintiff was entitled to enforce the note.  That is
14       the appellate caselaw on subject matter jurisdiction,
15       this was a foreclosure case.
16            In our memorandum of law, which we submitted to
17       the Court at the end of December of this year, we
18       quoted that language because the issue that's been
19       raised in this case is there's no endorsement to the
20       Bank of New York as trustee then the Bank of New York
21       as trustee has no standing.  That isn't the law and
22       Gallicchio says that.  And I'm going to deal with the
23       chronologically before we get to any of the hearings
24       in the case.
25            Subsequent to the filing of the foreclosure,
26       Mrs. Bell --
27            THE COURT:  Just let me mention something.  If
```

```
 1    the note is made payable to an identity, Bank X, and
 2    Bank Y has possession of the note, does Y have a
 3    right to bring the action?
 4         MR. MILNE:  It does if it establishes lawful
 5    possession, we have done that.
 6         THE COURT:  But if the note is made payable to
 7    somebody else and not endorsed to the plaintiff, made
 8    payable to somebody else.
 9         MR. MILNE:  Yes.
10         THE COURT:  That doesn't make him a holder.
11         MR. MILNE:  Well the Appellate Court dealt with
12    that in Gallicchio and I quoted it, and I'm going to
13    quote it again.  Here, even without endorsement, when
14    plaintiff had lawful possession of the note and
15    mortgage and the defendants made payments according
16    to the terms of the note to the plaintiff for
17    nineteen month, the plaintiff was entitled to enforce
18    the note.
19         THE COURT:  But that doesn't tell me how the
20    note was endorsed.  If it was endorsed in blank --
21         MR. MILNE:  It was not endorsed to the plaintiff
22    and it was not a bearer paper note.
23         THE COURT:  How do you know, does it make clear
24    of that?
25         MR. MILNE:  I believe it does, Your Honor.  Yes,
26    sir.
27         MR. BELL:  SKW is bearer paper, that case is
```

```
 1            bearer paper, Your Honor.  He's just throwing --
 2                 THE COURT:  It's bearer paper, it's not --
 3                 MR. MILNE:  I'm sorry, Mr. Bell, I didn't
 4            interrupt you for an hour and a half, so.
 5                 MR. BELL:  It's bearer paper, Your Honor, that
 6            case is about bearer paper.
 7                 MR. GUEST:  That is true, what he said is true.
 8                 MR. BELL:  He's just telling you --
 9                 THE COURT:  Just a minute.  Let me look at the
10            facts.
11                 MR. BELL:  It's going to waste our time.
12                 MR. GUEST:  Page 2, page 2, to the right.
13                 MR. MILNE:  It was not.  It says on the right,
14            the note in this case is made payable with Shawmut
15            Home Bank and no endorsement to the plaintiff appears
16            on the note.
17                 MR. GUEST:  There was an allonge attached to it
18            which is enforceable, it's an accepted way in
19            commercial practice to endorse a note, by attaching
20            an allonge, and so the allonge -- the defendant
21            objected to the allonge, but it was admitted over the
22            defendant's objection, and so it was recognized as
23            bearer paper.
24                 MR. MILNE:  Your Honor, I don't see that it says
25            that anywhere in the decision and I think --
26                 MR. GUEST:  Right there in the part that he was
27            reading.
```

1   MR. MILNE: What undercuts that is what the
2   Appellate Court quoted here, even without
3   endorsement, when the plaintiff had lawful possession
4   of the note and mortgage and the defendants made
5   payments according to the terms of the note to the
6   plaintiff for nineteen months, the plaintiff was
7   entitled to enforce the note, that's the Appellate
8   Court. I don't want to spend my time debating what
9   the opinion says, so I'm going to move on, Your
10  Honor.
11      Mrs. Bell filed a Chapter 13, Your Honor, before
12  the motion to dismiss proceedings began. And in that
13  bankruptcy proceeding the Bank of New York as trustee
14  filed a proof of claim. There was no objection to
15  that proof of claim. In fact, Mrs. Bell filed a
16  Chapter 13 petition in which we recognize --
17      MR. GUEST: I object. I object to the
18  introducing --
19      MR. MILNE: Counselor, counselor.
20      MR. GUEST: Excuse me, Your Honor, when he was
21  speaking, he made objections to the introduction of
22  evidence and I have the same right, I'm making that
23  objection to his introducing this. He's had his
24  chance, as I said before, he rested.
25      THE COURT: Objection overruled.
26      MR. GUEST: Okay. Thank you.
27      THE COURT: Move on.

1  MR. MILNE: Mrs. Bell filed a Chapter 13
2  petition and in that Chapter 13, not only did she
3  recognize the validity of the mortgage on the
4  property in a secured claim, but she identified the
5  servicer, which she now claims in this litigation
6  through her husband that she has no idea who the
7  servicer is. They never objected to the Bank of New
8  York trustee's proof of claim, they never challenged
9  any aspects of that proof of claim, and ultimately
10 their bankruptcy petition was dismissed. But they
11 filed a Chapter 13 plan in which they recognized the
12 arrearage on the loan and they offered to make
13 payments on it before the Chapter 13 was dismissed.
14     THE COURT: So therefore why are you seeking to
15 withdraw the claim?
16     MR. MILNE: Well, Your Honor, if I may. Prior
17 to the commencement of the case and we produced in
18 discovery the fact that law firm had the original
19 note and we produced to be clear on October 8, 2009
20 documents which identified that the original note was
21 in our possession before we commenced the
22 foreclosure, okay. Subsequent to that time and after
23 the entry of a foreclosure judgment --
24     THE COURT: Partial summary judgment, yes, in a
25 --
26     MR. MILNE: Subsequent to the entry of a
27 foreclosure judgment, the borrowers then elected to

```
 1    file a motion to dismiss.  That was their decision
 2    and I want to talk about the options that they had.
 3    They had the option of seeking a mediation.  They
 4    didn't do that.  They had the option of reinstating
 5    the loan.  They didn't do that.  They had the option
 6    of trying to negotiate a loan modification.  They
 7    didn't do that.  What they did was they said we're
 8    not going to pay this loan and we're going to find
 9    some way not to pay it, no matter what we have to do,
10    we're not going to pay it.  In their bankruptcy
11    petition, because the borrowers want the Court to
12    feel sorry for them, they show family income in
13    excess of a hundred thousand dollars.  These are not
14    low income people being steamrolled by the corporate
15    juggernaut.  In fact this is a three thousand square
16    foot house worth over a half of million dollars in
17    Glastonbury.  Not every American lives in a house of
18    that size, these are sophisticated people or they
19    wouldn't be living in a half a million dollar house
20    with the bank paying the taxes while they live in the
21    house and litigate the validity of a foreclosure.
22    While other people get up every day and go to work
23    and pay their mortgages.
24        The borrowers elected to move to dismiss and
25    when they made that election, a conscious decision,
26    they did that with the full ramifications of what the
27    law is on motions to dismiss.  And we have briefed
```

```
 1        this in our reply to the objection to the withdrawal
 2        dated January 28 of this year.  First and foremost,
 3        as hearing with respect to subject matter
 4        jurisdiction does not result in a ruling on the
 5        merits.  And we have cited in support of that
 6        proposition, Your Honor, the Appellate court case of
 7        Isaac v. Mount Sinai Hospital, and in addition to
 8        that the case of Broderick v. Jackman.  And the
 9        Jackman case was decided in the context of the
10        accidental failure of suit statute, Connecticut
11        General Statutes 52-592a, that statute says, I'm
12        going to paraphrase it because I'm not going to read
13        the entire section of it into the record, because
14        it's a long statute, but it says that a party is
15        permitted to re-file an action after a dismissal for
16        a series of different reasons including but not
17        limited to a want of jurisdiction, 52-592a.
18             Jackman talks about the issue of whether the
19        accidental failure of suit statute applies if a case
20        is dismissed for lack of subject matter jurisdiction
21        and they say yes.  And the Appellate caselaw is not
22        only do you have the right to re-file it by statute,
23        but the dismissal is not a dismissal on the merits
24        and it doesn't have any preclusive effect.  The
25        defendants were charged with that knowledge when they
26        filed the motion to dismiss.  Whether they actually
27        knew it or not is legally irrelevant, they're charged
```

1   with that knowledge and they made a tactical election
2   that that was the way they wanted to proceed.  Again,
3   they could have reinstated, they could have modified,
4   they could have gone into mediation, they didn't want
5   any of those things.  They wanted to challenge
6   standing no matter way because they don't want to
7   repay the mortgage.  But they didn't realize
8   apparently when they filed it over a year ago, was
9   that a dismissal is not a dismissal on the merits.
10  So even if they won the case on subject matter
11  jurisdiction, under 52-592a, plaintiff can re-file
12  the case within a year and the Connecticut
13  legislature has spoken to that and that is the law of
14  the land.  And we must look at the case through the
15  eyes of the law and not subjective feelings of the
16  way things ought to be based on some subjective
17  perception of the litigant, that's not the rule of
18  law, that's chaos.
19       When we got to the hearing on the motion to
20  dismiss, well, let me back, before we got to the
21  hearing on the motion to dismiss, the Court granted a
22  motion to vacate the judgment.  The Court will recall
23  there were law days set, they were extended, and they
24  were ultimately vacated and the judgment was vacated.
25  And Your Honor's order to that effect was in April of
26  2009, if I recall this correctly and that's attached
27  to our reply papers.  That finding is significant

| | |
|---|---|
| 1 | because to the extent the entry of the underlying |
| 2 | foreclosure judgment was a hearing on the merits, |
| 3 | that judgment was vacated. And the defendants asked |
| 4 | for the judgment to be vacated because they wanted |
| 5 | everything to stop so they could litigate the motion |
| 6 | to dismiss. They came into the Court and said stop |
| 7 | the foreclosure, bring it to a halt, we want to |
| 8 | litigate the motion to dismiss. Now they want to |
| 9 | shift and say that's not what we wanted, Judge, we |
| 10 | really wanted a hearing on the merits under the |
| 11 | Convoy case, but that's not the way this case has |
| 12 | been litigated at all from the motion to dismiss on. |
| 13 | They wanted to bring it to a screeching halt, that |
| 14 | was a tactical decision. What do you do if you're |
| 15 | faced with a foreclosure you want to keep your house |
| 16 | and you can't make the payments, what's the quickest, |
| 17 | easiest way to bring it to a halt, file a motion to |
| 18 | dismiss, because it stops everything. And until |
| 19 | Convoy came down in 2009, that was the law of the |
| 20 | land. That was the law, file the motion to dismiss, |
| 21 | it stops the foreclosure, okay. |
| 22 | But I recall that when lawyers sign pleadings |
| 23 | and even pro se's, that have a responsibility to sign |
| 24 | pleadings in good faith that they have to represent |
| 25 | that they've made a good faith inquiry before they |
| 26 | file the motion. There were no facts in the motion |
| 27 | to dismiss filed in February of 2009 that identified |

```
 1    defective title on the plaintiff.  And I'm going to
 2    fast-forward to the defendant's discovery compliance,
 3    which we received in December of last year.  And in
 4    the response that came from, I believe Mrs. Bell
 5    dated December 28th of 2009, question number two was,
 6    because there were only four interrogatories, but it
 7    took us three months to get some answers if you call
 8    these answers, number two was if you contend that the
 9    Bank of New York trustee for BS ALT A 2005-9 does not
10    own or hold the note secured by the first mortgage on
11    your residence, state who you claim the trustee for
12    BS ALT A 2005-9 was in 2007, 2008, and 2009?
13    Defendant's objected to that even though it went
14    directly to standing.  The Court ultimately overruled
15    that objection and in December of last year they
16    answered with the following answer.  Without waiving
17    any prior objections, defendant makes no contention
18    and holds no opinion at this time regarding who
19    currently owns or holds the note allegedly secured by
20    a first mortgage on her residence.  They made that
21    answer after they had filed a bankruptcy petition
22    where a proof of claim was filed by the Bank of New
23    York as trustee, they incorporated a payment plan in
24    a Chapter 13, and they gave that answer under oath.
25    That was their answer.  But it gets better then that
26    because the Appellate Court has said that once the
27    plaintiff has demonstrated lawful possession of a
```

1  note, its been executed by the borrower, and they
2  demonstrate lawful possession, the burden shifts to
3  the defendant to attack jurisdiction, that's in the
4  Gallicchio case and we've cited that in our brief,
5  the brief of December 29, 2009.  Gallicchio is quite
6  clear that there is a burden shifting process that
7  occurs once that evidence has been adduced and at the
8  first day of the hearing on the motion to dismiss,
9  which was May 27th of 2009, the plaintiff offered the
10 original note in evidence as Exhibit 7 and
11 defendant's counsel stipulated that Mrs. Bell signed
12 the note, that was the May 27th transcript, pages 72
13 to 73.  So we have a note, we have a note that's been
14 executed.  Glenn Mitchell further testified that the
15 plaintiff was the holder of the note and that the
16 trustee of BS ALT A 2005-9 was the plaintiff.  Mr.
17 Mitchell, this is -- it carries over actually to May
18 29, 2009 as well, page 51 and page 57, and Mr.
19 Mitchell testified that the Bank of New York as
20 trustee held the note for the certificate holders and
21 the securitization and he testified to that at page
22 57.  The Connecticut Appellate Court has ruled that
23 secondary evidence of ownership of a loan is
24 admissible to prove standing.  Connecticut Bank and
25 Trust Company v. Reckert,' 33 Conn. App. 702, 1994
26 Connecticut Appellate Court Decision.  So not only
27 did we demonstrate lawful possession of the note and

| | |
|---|---|
| 1 | that it was executed and they stipulated it was |
| 2 | executed and that they borrowed the money, and by the |
| 3 | way it was $650,000 they borrowed.  And in fact the |
| 4 | Court will recall that the borrowers walked away with |
| 5 | a check because it was a refi, a refinance for over |
| 6 | $100,000, because that evidence came in during the |
| 7 | hearings last year. |
| 8 | But under Gallicchio, the burden shifts to the |
| 9 | defendants.  Once we've proved lawful possession of |
| 10 | an executed note to contest jurisdiction and their |
| 11 | discovery response, and I've used Mrs. Bell because |
| 12 | she signed the note, Mr. Bell did not, doesn't show |
| 13 | that she has one scintilla of fact to challenge |
| 14 | subject matter jurisdiction.  I listened to counsel |
| 15 | go on about purported inconsistencies, but they |
| 16 | haven't once, not either one of them, mentioned the |
| 17 | original promissory note.  Why, because that's the |
| 18 | basis upon which subject matter jurisdiction is |
| 19 | determined.  And what they've done is they've rolled |
| 20 | the fog from the ocean into the case because that's |
| 21 | the defense strategy.  Judge, this document doesn't |
| 22 | look like it's got all the schedules.  Judge, this |
| 23 | document doesn't look it was signed the right day. |
| 24 | Judge, this document doesn't appear to me to be |
| 25 | complete.  But I haven't taken a deposition of |
| 26 | anybody who signed the document to prove my |
| 27 | accusation without evidence that the document was |