

2010 MAY 24  P 2: 20

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

The Bank of New York as Trustee for BS

ALT A 2005-9

    v.

Sonja V. Bell, et. Al.

CASE NO: 3:10 CV 00508 (SRU)

May 24, 2010

("Emergency Motion")
## AMENDED MOTION TO REMAND

**Jurisdiction**

The Court has jurisdiction to hear this Motion To Remand pursuant to 28 USC §1446 and 28 USC §1447 until such time as the Court remands the action to State Court.

**Defendants Entitled To Relief**

1

The Court is required by law pursuant to 28 USC §1447(c) to remand this action back to state court anytime the Court determines that the Court lacks subject matter jurisdiction or, upon motion from a defendant within 30 days of the notice of removal, the Court determines that the removal procedure was defective.

Plaintiff filed their notice of removal on 3-31-2010. The Defendants' Motion To Remand was received by the Court on 4-30-2010 and entered on 5-3-2010 (Entry #19). Therefore, the Defendants' motion is timely and the Defendants' are entitled to relief, if the grounds upon which relief is sought are appropriate.

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, the Defendants have chosen amend the Motion To Remand "as a matter of course".

Pursuant to Local Rule §7(a)(1) and Local Rule §7(a)(3), the Court has jurisdiction to hear this motion as an emergency motion for expedited consideration[1].

## Grounds Upon Which Relief Is Sought (Remand)

The grounds upon which the Amended Motion for Remand is sought are detailed in full in the Memorandum of Law In Support of the Amended Motion To Remand.

---

[1] The Pro Se Defendant did not previously know how to request an emergency motion eventhough the Defendant did fax on April 14, 2010 a letter (Attachment A) in response to Attorney Milne's Letter to the Court of April 6, 2010 (Entry #17) regarding the facts supporting removal. The letter sought the Court grant sua sponte remand based on the false allegations in the removal. The Plaintiff alleged that the underlying case had been withdrawn even though the transcript and other court action clearly indicated that the case had not been withdrawn. The Plaintiff had removed the entire action including the Defendant's counterclaims to the District Court. Hence, the District Court clearly lacks jurisdiction over the removed case as the original Plaintiff cannot remove a Defendant's counterclaim.

2

However, the Defendant briefly summarizes the grounds upon which the Remand is
sought.

1. Plaintiff false alleged that the foreclosure action was withdrawn in the State
   Court.

2. Plaintiff chose the forum and is bound to it.

3. Plaintiff cannot remove counterclaims.

4. Plaintiff's removal procedure was defective.

Facing significant disciplinary action for failing to comply with multiple court
orders, the Plaintiff attempted to withdraw the action in State Court. The Plaintiff's
counsel stated that the withdrawal would render the Motion To Dismiss and any other
issues moot, including the Court orders regarding discovery, except Summary
Judgment against Mrs. Bell's counterclaims. However, the Plaintiff stated that the
Plaintiff believed that the Plaintiff could re-file the foreclosure action within 1 year.
Essentially, the Plaintiff was attempting to Judge shop, because the Plaintiff was not
happy with the Discovery orders of the State Court Judge Satter. The State Court Judge
Satter determined that Plaintiff needed the Court's permission to withdraw and the
foreclosure action could not be automatically withdrawn. While the Court was
determining whether the Court would allow the Plaintiff to withdraw, the Co-Defendant
filed an answer, special defenses, and counterclaims. The Plaintiff thereafter sought to
remove the Defendant's Counterclaims to federal court to delay the action. Additionally,

the Plaintiff sought to gain procedural advantage by not removing the existing motions and orders, including motions to compel seeking disciplinary dismissal.[2]

The Plaintiff removed the action using a false premise that the Plaintiff knew was false by alleging that the underlying action had been withdrawn. Using the false premise of withdrawal, the Plaintiff alleged that the Counterclaims filed by the Co-Defendant were essentially an action against the Plaintiff. The Plaintiff contends that the Plaintiff is essentially a Defendant based on the Counterclaims. Therefore, the District Court should realign the parties and the Plaintiff (realigned as Defendant) should be able to remove the Counterclaims based on diversity jurisdictional grounds.

Since the underlying State Court case was still pending when the Plaintiff removed the action to the District Court, the Plaintiff is seeking to have the Co-Defendant's counterclaims removed to the District Court. However, the Plaintiff chose to bring the foreclosure action in State Court and is stuck with his choice of forum and cannot remove Counterclaims to District Court.

Grounds Upon Which Relief Is Sought (Emergency Motion)

The basis for Emergency Relief is based on the documentary evidence and discovery submitted by the Plaintiff that indicates that the Plaintiff is willing and able to alter and fabricate physical evidence and tamper with witnesses. **Plaintiff has admitted to the wrongful conduct through Plaintiff's discovery responses, witness testimony, and documentary evidence in the record.** The Defendants fear that

---

[2] Further, as emergency requests discusses, the Defendant believes that the Plaintiff removed the action to get additional time to continue the pattern of fabricating physical evidence and tampering with witnesses.

4

Plaintiff is seeking to delay the discovery based on its intention to continue said practices.

This belief is supported by the Plaintiff's grossly defective removal procedure. The Plaintiff could not bring forward all of the pending orders, processes, and motions and maintain the falsehood that the underlying case had been withdrawn. Therefore, the Court would be forced to remand the action. Further, the fact that the underlying case had not been withdrawn would also deprive the District Court of subject matter jurisdiction, which would also require the District Court to remand the action back to State Court. The State Court had been very clear with the Plaintiff that the underlying case had not been withdrawn.

Therefore, the Plaintiff has never intended for this case to remain in the District Court. The Plaintiff has never had a good faith belief that this case could remain in District Court. However, the Plaintiff has successfully implemented a stalling strategy. By giving the Plaintiff additional time, the Defendants may not be able to detect the fabricated evidence and witness tampering when presented. Therefore, the Defendant seeks expedited consideration of the Amended Motion To Remand.

Listed below are several examples of the Plaintiff's practices of fabricating physical evidence pursuant to CGS §53a-155[3] and witness tampering CGS §53a-151[4,5]:

---

[3] **Sec. 53a-155. Tampering with or fabricating physical evidence: Class D felony.** (a) A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding.

1.) Schedule A of Assignment and Assumption Agreement

Plaintiff in the Plaintiff's Objection To Motion To Dismiss filed a fabricated Schedule A[6] alleging that Schedule A was attached to an Assignment and Assumption Agreement ("AAA-BNYTC") ("First AAA")[7]. However, the First AAA submitted related to The Bank of New York Trust Company, NA[8] and not the Plaintiff, The Bank of New York ("BNY"), a New York Chartered State Bank. The Plaintiff did not even inform the Court that there were multiple Assignment and Assumption Agreements for the same transaction between The Bank of New York Company, Inc. ("BNY-Holding"), a Bank Holding Company and JPMorgan Chase & Company ("JPM-Holding"), a Bank Holding Company. Without regard that multiple Assignment and Assumption Agreements are known to exist <u>now</u>, the First AAA submitted on February 24, 2009 did not even refer to a Schedule A. The Schedule A that the Plaintiff alleged was attached to the First AAA was not even in the same font as the agreement. It was just clearly a fabricated attachment to the First AAA to convince the State Court that the Plaintiff had standing to foreclose on the Defendant's property.[9]

---

[4] **Sec. 53a-151. Tampering with a witness: Class C felony.** (a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.
[5] Defendant has many other examples of these practices.
[6] Attachment B, Plaintiff's Objection To Motion To Dismiss and Memorandum of Law In Support Thereof at Exhibit A on Last Page of Exhibit A
[7] Attachment B, Plaintiff's Objection To Motion To Dismiss and Memorandum of Law In Support Thereof at Exhibit A
[8] Attachment B, Plaintiff's Objection To Motion To Dismiss and Memorandum of Law In Support Thereof at Exhibit A, Page 1, Paragraph 1
[9] Attachment B, Last Sentence of Page 8 and Last Paragraph of Page 13

Even after the Schedule A was challenged by the Defendant, Sonja Bell and her counsel, the Plaintiff did not withdraw the Schedule A. In fact, the Plaintiff's counsel slipped into evidence a Second Assignment and Assumption Agreement ("Second AAA")[10] on the premise that the Second AAA was the same as the First AAA that had been previously submitted in the case. In fact, the Plaintiff and Plaintiff's counsel did not even inform the Court in the evidentiary hearing that different Assignment and Assumption Agreements existed until Defendant's counsel exposed the switch[11]. **The Plaintiff finally on October 7, 2009 in the responses to the Plaintiff's Responses To Defendants First Interrogatories and Request for Production[12] admits that the Schedule A is fabricated.** Interrogatory 19 and Interrogatory 21 admit the fabrication. The Plaintiff attempted to fabricate evidence to secure standing.

The Plaintiff then alleged, still admitting fabrication, that the Schedule A was attached alleged to be attached to the Resignation and Assumption Agreement ("RAA") submitted on February 24, 2009[13], except the RAA does not refer to a Schedule A <u>attached to</u> the RAA[14]. The RAA refers to a Schedule A attached to the Purchase and Assumption Agreement dated April 7, 2006 by and between The Bank of New York Company, Inc. and JPMorgan

---

[10] Attachment C
[11] Attachment D, 5/29/09 Tr. Excerpt Pg 59, Ln 17 – Pg 66, Ln 7
[12] Attachment E, Interrogatory 19 and Interrogatory 21
[13] Attachment B, Exhibit B
[14] Exhibit E--Paragraph 2

Chase & Company and not the Schedule A filed with the Objection To Motion
To Dismiss.

Schedule A is now an admitted fabrication. Luckily for the Defendants,
Plaintiff was not able to convince the Court of the incompetence of Schedule
A to support the Objection To Motion To Dismiss and the Court required an
evidentiary hearing. However, Defendant fears that additional attempts at
fabrication will be successful given enough time as was the Fabrication of the
Affidavit of China Brown as shown below.

2.) China Brown Affidavit

Another example of the Plaintiff's fabricating physical evidence pursuant to
CGS §53a-155 is the Affidavit of China Brown[15]. The China Brown Affidavit
was false and known to be false when submitted. The China Brown Affidavit
was submitted in support of the Plaintiff's Motion for Summary Judgment and
Memorandum of Law In Support Thereof dated 4/18/2008. The affidavit
amounts to actual and constructive fraud. The Plaintiff received summary
judgment based on Ms. Brown's Affidavit. **However, based on the
procedural posture of the case, Plaintiff continues to rely of this
fraudulently gained Summary Judgment, even though the Plaintiff now
admits that the Affidavit of China Brown is fabricated as well.**

---

[15] Attachment F

This is an example where the Plaintiff's fabricated evidence was successful.

Defendant further fears that the Plaintiff has sought to improperly remove the

case to the Connecticut District Court to receive additional time to fabricate

additional evidence due to pending multiple discovery orders that the Plaintiff

has failed to comply with.

Specifically, Mrs. Brown's affidavit is fabricated based on the following:

A. Paragraph 2 of the China Brown's Affidavit states:

"I am employed as a/an Vice President of Loan Documentation with the Bank
of New York. In my capacity as a Vice President of Loan Documentation, I am
personally a familiar with and have personal knowledge of the books and
records of Sonja V. Bell and the Plaintiff."

   a. China Brown is not an employee of The Bank of New York as the

      Plaintiff now admits based on Plaintiff's Responses To Defendant's

      First Interrogatories and Request for Production dated October 7,

      2009[16]:

         i. Interrogatory 12 on Page 15 – 16

         ii. Interrogatory 39 on Page 35 – 36

         iii. Interrogatory 40 on Page 36 – 37

   b. China Brown is not an employee of the The Bank of New York

      based on the Power of Attorney dated 8/11/2009[17] forwarded by

      Plaintiff as Partial Compliance To Defendant's First Request for

      Production as the Defendant requested in Interrogatory 12iii that

---

[16] Attachment E
[17] Exhibit F

9

Plaintiff describe documents that would tend to indicate or refute any response to Interrogatory 12 which asked whether China Brown was a "Responsible Officer of the Trustee's Corporate Trust Office" and/or bona fide employee and/or Vice President of the Bank of New York and/or the Plaintiff. Request for Production #12 asked that the Plaintiff produce documents identified in Interrogatory #12.

c. In addition to a lack of personal knowledge and/or familiarity regarding the facts of the loan transaction, China Brown is not personally familiar and does not have personal knowledge of the books and records of Sonja V. Bell based on her capacity as Vice President of Loan Documentation as she is not a vice president of the Bank of New York.

d. Plaintiff knew that China Brown was not an employee of The Bank of New York.

   i. However, despite knowledge that China Brown is not an employee of the Plaintiff, Plaintiff on June 26, 2009 submitted a Motion To Quash alleging that China Brown was an employee of the Bank of New York.[18]

   ii. In Interrogatory 39, Plaintiff is specifically asked whether the Plaintiff paid Mrs. Brown any wages and Plaintiff responds that China Brown is an employee of America's Servicing Company.

B. Paragraph 3, Ms. Brown states:

---

[18] Attachment I – Motion To Quash, Paragraph 1

10

"...Also prior to the commencement of this action The Bank of New York acquired the Corporate Trust Business of JPMorgan Chase pursuant to the Purchase and Assumption Agreement by and between The Bank of New York Company, Inc. and JPMorgan Chase & Co. dated April 7, 2006. Through that agreement, the Plaintiff now is the holder of the note.

a. However, China Brown submitted an Affidavit of Debt in *JPMorgan Chase Bank, N.A. f/k/a JPMorgan Chase Bank, as Trustee for BS ALT A 2005-9 v. Diana Marseil, et. al.*, Supreme Court of the State of New York, County of New York, Index No. 07-1-226[19] on November 30, 2007, two months after the commencement of this action and over 12 months after the date the alleged execution of the Purchase Agreement, stating that JPMorgan Chase Bank was trustee of BS ALT A 2005-9 and not the Plaintiff.

b. Even worse, on November 30, 2009 an actual Schedule A[20] to the Purchase Agreement was brought to the attention of the Defendants. However, this Schedule A at Section 1.9 indicates that the Plaintiff never intended to take the necessary steps to properly acquire the Corporate Trust Assets. Section 1.9(a) states:

> Section 1.9 UCC Assignments and Other Documents. (a) BNY will indemnify JPM and any of its Affiliates against any Damages that JPM or any of its Affiliates suffers, incurs or is liable for by reason of or arising out of or in consequence of BNY's request that JPM not file or deliver signed UCC-1 financing statements or UCC-3 assignments of financing statements, endorsed notes,

---

[19] Attachment H
[20] Attachment I – Schedule A to the Purchase and Assumption Agreement by and between The Bank of New York and JPMorgan Chase & Co dated April 7, 2006 and Amended and Restated October 1, 2006

11

> participations and all other documentation necessary to effect the
> assignment of the Corporate Trust Agreements to BNY.

c. This Schedule A was not published with the SEC. However, Section 11.5

of the Purchase Agreement[21] completely contradicts the undisclosed

Schedule A stating:

> Section 11.5 UCC-1 Assignment and Other Documents. (a) [JPM-Holding] shall use commercially reasonable efforts to deliver to
> [BNY-Holding] all signed UCC-1 financing statements and UCC-3
> assignments of financing statements, endorsed notes,
> participations, and all other documentation necessary to effect the
> assignment of the Corporate Trust Agreements to BNY. The out-of-pocket costs and expenses of preparing and filing any such
> documentation shall be paid by BNY."

Hence, the assets were not properly sold. The Plaintiff and JPMorgan

Chase Bank, NA have conducted a fraud on the Court, Defendant, and

many other courts and defendants around the country by fabricating

evidence.

3.) Purchase Agreement

On November 30, 2009, the Plaintiff submitted 805 page Bate Stamped

document that contained, according to the Plaintiff, the Purchase and

Assumption Agreement dated April 7, 2006 and Amended and Restated on

October 1, 2006. This document was alleged to be a complete document.

However, demonstrating the capacity of the Plaintiff to fabricate complete

---

[21] Attachment J

documents, the entry of the table of contents refers to "Page 10" for all but the Definitions section[22].

4.) Witness Tampering

As discussed above, the Plaintiff's counsel in this action has sought to have a subpoena for China Brown quashed based, in part, by falsely alleging that the subpoena was served on the Plaintiff's employee. Ms. Brown is not an employee of the Plaintiff. As shown above, the Plaintiff now admits this. The effort by the Plaintiff has helped to prevent China Brown from testifying in the evidentiary hearing for nearly 1 year. Hence, Plaintiff's efforts indicate the Plaintiff's willingness to tamper with witnesses pursuant to CGS 53a-141.

## Conclusion

As it is abundantly clear based on the Memorandum of Law in the Motion To Remand, Defendant has demonstrated that the Court lack jurisdiction over the removed action. Further, Defendants have shown good cause to demonstrate the need to immediately remand the action back to State Court so that resolution of various discovery motions can be quickly decided and evidence can be preserved.

Plaintiff has been notified of the request for an emergency hearing.

## Relief Requested

Defendant seeks an expedited decision on Plaintiff's Defendant's Motion To Remand. Defendant seeks that the Court remand the action back to the State Court.

_____

[22] Attachment K

13

Defendant

By: Johnathan Bell
54 Main Street
South Glastonbury, CT 06073
860-633-5654 Phone
888-844-2035 Fax
jsblawsoflife@yahoo.com Email

Defendant

By: Sonja Bell
54 Main Street
South Glastonbury, CT 06073
860-633-5654 Phone
888-844-2035 Fax
jbandsonja@yahoo.com Email

14

## CERTIFICATION

THIS IS TO CERTIFY THAT COPIES OF THE FOREGOING WERE MAILED, FAXED, HAND DELIVERED, OR EMAILED WITH PERMISSION OF THE PARTIES APPEARING ON 5-24-2010 TO PLAINTIFF'S COUNSEL AND ALL OTHER PARTIES OF RECORD:

Defendant

By: Johnathan Bell
54 Main Street
South Glastonbury, CT 06073
860-633-5654 Phone
888-844-2035 Fax
jsblawsoflife@yahoo.com Email

Defendant

By: Sonja Bell
54 Main Street
South Glastonbury, CT 06073
860-633-5654 Phone
888-844-2035 Fax
jbandsonja@yahoo.com Email

**ATTACHMENT A**



April 14, 2010


Johnathan Bell, Pro Se
54 Main Street
South Glastonbury, CT 06073
(860) 777-5087 Phone
(888) 844-2035 Fax
jsblawsoflife@yahoo.com


<u>VIA FACSIMILE (860) 240-3211</u>
Melissa Ruocco, Clerk
United States District Court
Abraham Ribicoff Federal Building
450 Main Street
Hartford, CT 06103


        Re: Letter From Geoffrey Milne, Counsel for The Bank of New York regarding
        removal papers allegedly filed on 3/31/2010 of counterclaims by Johnathan Bell
        against The Bank of New York, Trustee for BS ALT-A 2005-9


Dear Ms. Ruocco:

        This letter is intended as a response to the Letter From Geoffrey Milne, Counsel
for The Bank of New York regarding removal papers filed on 3/31/2010 in The Bank of
New York, Trustee for BS ALT A 2005-9 v. Sonja Bell, HHD-CV 07-5013037S, in
Hartford Superior Court ("State Court"). The Defendant hopes this letter will clarify
certain issues and prompt the District Court to remand the action to State Court, *sua
sponte.*

        Mr. Milne's letter is factually incorrect, which will be address in the Motion To
Remand currently being prepared. However, in an effort keep from further wasting the
limited resources of the Defendant and the Court on an over 2 ½ year old wrongful
foreclosure case with approximately 178 or more filings, the Defendant hereby notifies
the Court that the Plaintiff's basis for removing the case is totally without merit and
based on knowingly false and misleading statements to the Clerk and the District Court.
<u>The Bank of New York as Trustee for BS ALT A 2005-9 v Sonja V Bell et. al. case was
not withdrawn.</u> The original plaintiff of the original and current action is attempting to
remove the Co-Defendant's counterclaims to District Court.


        It is true that the Plaintiff filed a withdrawal. However, the State Court determined
that pursuant to Connecticut General Statutes §52-80, the Plaintiff needed the Court's
permission to withdraw upon cause shown. The State Court, to this day, has not

1

granted the Plaintiff permission to withdraw. Therefore, the entire basis for the removal is without merit. This is not conjecture or opinion, but a metaphysical fact. The transcript shows over a dozen times that the Court determined that Plaintiff's withdrawal was not automatic and the State Court must grant leave to withdraw for cause shown. (January 29, 2010 Hearing Tr. 4:11 – 13; Tr. 19:7 – 22:2; Tr. 32:1 – 13; Tr. 33, 4 – 6; Tr. 34: 4 – 11; Tr. 34: 16 – 18; Tr. 63: 8 – 20; Tr. 70: 19 – 27; Tr. 109: 21- 22; Tr. 110: 18 – 114: 4; Tr. 134: 9 – 18, Tr. 139:1 – 12, Tr. 139: 24 – 140:22, Tr. 141:5 – 7)

Furthermore, despite the letter to the Ms. Ruocco as Clerk, the Notice of Removal admits that the Plaintiff has not been granted the right to withdraw (Paragraph 12). In fact, initially, the Plaintiff seeks adjudication of the Defendant's Objection To Withdrawal. Further, Judge Satter was very clear that the Plaintiff needed the State Court's permission to withdraw. The State Court throughout the hearing informs the parties that the case had not been automatically withdrawn. In fact at the end of the hearing, the State Court emphatically states (Tr. 134: 9 – 18) (Exhibit A):

> THE COURT: I don't find this relevant.
>
> MR. BELL: Oh, you don't find it relevant?
>
> THE COURT: I'm sorry. I don't find it relevant to the motion to withdraw…I
>
> believe I said in the beginning that the motion to dismiss intersected with and
>
> implicated the merits of the case and on that basis *I believe this motion to*
>
> *withdraw has to be made by me for cause*…" [Emphasis Added]

Pursuant to CGS §52-80, the Plaintiff could automatically withdraw if there has not been a commencement of a hearing on the merits or the commencement on an issue of fact.

> Sec. 52-80. Nonsuits and withdrawals; costs. If the plaintiff, in any action returned to court and entered in the docket, does not, on or before the opening of the court on the second day thereof, appear by himself or attorney to prosecute such action, he shall be nonsuited, in which case the defendant, if he appears, shall recover costs from the plaintiff. **The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown. [Emphasis Added]**

The Plaintiff has submitted this Notice of Removal in bad faith and made misleading statements in the Notice of Removal (March 31, 2010) and the Letter To Melissa Ruocco, Federal Court Clerk (April 6, 2010) because the Plaintiff knowingly misrepresented that "no state law claims by the Bank of New York, Trustee were

pending" when the Defendant filed the Counterclaims and that "the original action...was withdrawn" (paragraph 1).

In fact, because the Plaintiff has violated multiple court orders on discovery and was facing a potential disciplinary dismissal, the Plaintiff, through its counsel even asks the Court to withhold making decisions on discovery while the Motion To Withdraw is being decided (Tr. 139:24 – 140: 22) (Exhibit B)[1]:

> MR. MILNE: Your Honor, I only have one other question, I just want to make sure, I intend to get the motion to clarify filed next week, I just want to make sure that counsel is not going to press discovery motions in the interim so we don't have a circus going on where they're pressing discovery.
>
> THE COURT: I was intending to rule on the motions that were still pending about compelling and I held off once got this motion.
>
> MR. MILNE: I agree, Your Honor, it makes perfect sense, I just don't want to find out Monday, I get a reclaim slip on a motion to compel and they start trying to win the race to get back here to argue it before we've gone before Judge Freed.
>
> THE COURT: I think we ought to decide this motion to withdraw.
>
> MR. MILNE: Thank you, Your Honor.

Therefore, Plaintiff's counsel is under no illusions that the case continues and has not been withdrawn. Plaintiff is under no illusions that motions are pending, even though he claims that motions are moot (Notice of Pending Motions). The Plaintiff even asks the State Court to withhold making decisions on the motions and thanks the Court for withholding rulings on the pending motions to compel until the Motion To Withdraw is decided. On March 4, 2010, nearly 2 months after he filed the Motion for Withdrawal, the State Court orders that all outstanding motions (Exhibit C) are to be heard and March 11, 2010 grants a commission to allow this Defendant to conduct out of state depositions (Exhibit D)[2].

The Defendant hopes, based on the transcript of the hearing on the Motion To Withdrawal and the Objection thereto and the attached orders the Judge Satter of the

---

[1] The Defendant attaches two sections of the January 29, 2010 hearing and will forward the full transcript (143 pages) upon request.

[2] Oddly, the Plaintiff failed to include those "process, pleadings, and orders" pursuant to 28 USC §1446(a) which would require remand to state court upon timely motion by the parties. Pierpoint v. Barnes, 94 F.3d 813, 65 USLW 2195 C.A.2 (Conn.),1996.

Hartford Superior Court, the District Court will exercise its discretion *sua sponte*[3] and remand this matter back to state court due to a lack of subject matter jurisdiction. The District Court lacks subject matter jurisdiction as the Plaintiff is the current and original Plaintiff and not defendant pursuant to 28 USC 1441(a) and 28 USC 1446(a). Because the right of removal is vested exclusively in true defendants, a plaintiff who has chosen to commence the action in state court cannot later remove to federal court, even to defend against the counterclaim. See 14C Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 3d §3731 (1998).

The "well-established rule is that the plaintiff, who chose the forum, is bound by that choice and may not remove the case." Scott v. Communications Services, Inc., 762 F.Supp. 147, 150 (S.D. Texas 1991). The United States Supreme Court in *Holmes v. Vornado*, 535 U.S. 826, 122 S.Ct. 1889, 153 L.Ed.2d 13, 62 U.S.P.Q.2d 1801, 02 Cal. Daily Op. Serv. 4781, 2002 Daily Journal D.A.R. 6073, 15 Fla. L. Weekly Fed. S 325 discusses whether a counterclaim can serve as the basis for removal to federal court. The Supreme Court determined that based on the "well pleaded complaint" rule that even a counterclaim that established a federal question could not serve as the basis for removal. The *Holmes* Court stated "we decline to transform the longstanding well-pleaded-complaint rule into the "well-pleaded-complaint- or-counterclaim rule" [Internal Quotes Omitted]

Further, in 2006, the Connecticut District Court in *Aetna Health, Inc. v. Kirsher* 415 F.Supp.2d 109, 37 Employee Benefits Cas. 1220 explained that appellate courts have gone beyond the *Holmes* Court in citing the general principle that only defendant can remove the action. The *Aetna Health* Court stated the following[4]:

> *However, in this case the defendant has not sought removal of the plaintiff's complaint. Rather, Aetna seeks removal of Kirshner's counterclaims. This is a crucial distinction that both parties have ignored.*

---

[3] As the Court is likely very aware, the Court cannot remand the case based on a procedural defect without a motion to remand pursuant to 28 USC 1447(c). "[D]istrict courts cannot remand cases on their own motion for defects in removal procedure, but noting that "defect in removal procedure" means failure to comply with § 1446" Pierpoint v. Barnes, *supra*; In re Continental Casualty Co., 29 F.3d 292 (7th Cir.1994) [Internal Quotes Omitted] However, the Court has the obligation to remand the case due to a lack of subject matter jurisdiction at any time upon motion of any party or *sua sponte*.
[4] The Plaintiff's referral to 5th Circuit cases In re Wilson Industries, 886 F. 2d 93, 96 (5th Cir. 1989), Chicago, Rock Island v. Stude 346 US 574 (1954), Texas v. Walker, 142 F. 3d 813, 816 (5th Cir 1998), North Star Capital Acquisitions, LLC v. Krig 2007 U.S. Dist. LEXIS 85660 (M.D. Fla) are without merit as even the Plaintiff's letter makes clear in stating that "[t]he removal petition was filed by a counterclaim defendant that was not a party to the original suit". Quite simply, the fundamental issue in this case is that the original plaintiff was not granted permission to withdraw the case. Therefore, the counterclaims by the Defendant are brought against the original and current Plaintiff based on the original suit. The Plaintiff cannot remove counterclaims to Federal Court. *Aetna*, supra

4

The Supreme Court "decline[d] to transform the longstanding well-pleaded-complaint rule into the well-pleaded complaint- or counterclaim rule"…[T]he well-pleaded complaint rule is quick and easy to administer and would be unnecessarily muddied if federal courts had to examine not only the face of the complaint but counterclaims as well. Id.

If the District Court refuses to dismiss the case, *sua sponte*, hopefully, the Court will exercise its inherent authority to control the proceedings to extend the time to respond to all motions until after it hears the Motion To Remand.

As the attached portions of the transcript show, the Plaintiff is well aware that the State Court has not granted the Plaintiff the right to withdraw and has misrepresented this fact to the District Court. Further, based on the "well pleaded complaint" rule. District Court is without subject matter jurisdiction to hear this matter or the counterclaims. Further, since 28 USC §1447(c) requires "…[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded", the District Court would only be wasting valuable resources examining many of the 178 filings, several thousands of pages of evidence (sealed and unsealed), and transcripts in this case by not remanding the case *sua sponte* or at a minimum extending the time to respond to any motions or court ordered timelines until after the District Court determines its jurisdiction.

Thank you for your assistance in this matter.

DEFENDANT

By: Johnathan Bell
54 Main Street
South Glastonbury, CT 06073
860-633-5654 Phone
888-844-2035 Fax
jsblawsoflife@yahoo.com Email


cc:     G. Milne
        J. Hanson Guest
        S. Bell
        Bendett and McHugh, PC

5

*E, hibit A & B*

COPY

| DOCKET NUMBER CV07-5013037S | : | SUPERIOR COURT |
|---|---|---|
| BANK OF NEW YORK | : | JUDICIAL DISTRICT |
| VS. | : | HARTFORD, CONNECTICUT |
| SONJA BELL, ET AL | : | JANUARY 29, 2010 |

B E F O R E:

THE HONORABLE ROBERT SATTER, JTR

A P P E A R A N C E S:

REPRESENTING THE PLAINTIFF:

GEOFF MILNE
HUNT LEIBERT JACOBSON, PC
50 WESTON STREET
HARTFORD, CONNECTICUT 06120

REPRESENTING THE DEFENDANT:

J. HANSON GUEST
151 NEW PARK AVENUE
HARTFORD, CONNECTICUT 06106

JONATHAN BELL

SELF-REPRESENTED PARTY

Recorded and Transcribed by:
Lori Van Buren

1        MR. BELL:  I'm not going to be selective.  So

2    after he lays out what he's going to have to argue,

3    right, because of the fact that if the Court opens

4    this thing up to a hearing on the merits of the

5    foreclosure, then I'm going to have to argue

6    ratification, he lays them out.  Then what does he

7    do, he gets Ms. Bell on the stand, let me pass this

8    up to the Court, I have another copy.

9        THE COURT:  I don't find this relevant.

10        MR. BELL:  Oh, you don't find it relevant?

11        THE COURT:  I'm sorry.  I don't find it relevant

12    to the motion to withdraw.  I've all ready indicated

13    I'm willing to let you submit anything you want.  I

14    believe I said in the beginning that the motion to

15    dismiss intersected with and implicated the merits of

16    the case and on that basis I believe this motion to

17    withdraw has to be made by me for cause, that's the

18    issues in the case.

19        MR. BELL:  Okay.  Well the last thing about

20    prejudice then, Mr. Milne -- fantastic Your Honor, I

21    won't readdress that again.  I won't say anything

22    else about it.  The last thing Mr. Milne talked about

23    or one of the things he talked about was about the

24    cost, let's talk about the cost.  He said the cost

25    cannot be visited on the plaintiff.  He felt like

26    that what we did was our choice.  We're just

27    defending our home, Your Honor.  We have a right to

1    THE COURT:  But until you get a judgment out of
2    this Court of foreclosure, that property belongs to
3    Mr. Bell.  All right.  Thank you.

4    Now what we're going to do is you are going to
5    make a motion for clarification.  If Judge Freed
6    decides that his decision encompassed the whole
7    motion for summary judgment, included as it related
8    to the counterclaim, then I don't have to hear any
9    more argument, I can rule on this.  If Judge Freed
10   decides that he had not ruled on the counterclaim,
11   then I will allow any of you to revise your motion
12   accordingly.

13   MR. BELL: Your Honor, is it possible that under
14   Convoy the Court is allowed to have hearings on
15   issues if they intertwine with jurisdictional facts.
16   Is it possible, we filed to set aside the judgment of
17   strict foreclosure, would you please allow Judge
18   Freed, if we put forth a brief to Judge Freed showing
19   certain things about the prior order, would you allow
20   that to be heard as well?

21   THE COURT:  I'm not going to decide that, that's
22   up to Judge Freed.

23   MR. BELL:  All right, sir.  Thank you.

24   MR. MILNE:  Your Honor, I only have one other
25   question, I just want to make sure, I intend to get
26   the motion to clarify filed next week, I just want to
27   make sure that counsel is not going to press

1 discovery motions in the interim so we don't have a
2 circus going on where they're pressing discovery.
3   THE COURT:  I was intending to rule on the
4 motions that were still pending about compelling and
5 I held off once got this motion.
6   MR. MILNE:  I agree, Your Honor, it makes
7 perfect sense, I just don't want to find out Monday,
8 I get a reclaim slip on a motion to compel and they
9 start trying to win the race to get back here to
10 argue it before we've gone before Judge Freed.
11   THE COURT:  I think we ought to decide this
12 motion to withdraw.
13   MR. MILNE:  Thank you, Your Honor.
14   MR. BELL:  We intend to do a commission, Your
15 Honor.
16   THE COURT:  What?
17   MR. BELL:  If the case goes forward, we intend
18 to do a commission and call certain witnesses;
19 however the Court's order is for March 1st, depending
20 on how long it takes this --
21   THE COURT:  I may, because of this; I'm going to
22 extend, out of fairness.
23   MR. MILNE:  And Your Honor, just so the record
24 is clear too, we actually sent a Bate stamped index
25 of the documents we produced to counsel, we did that
26 within the last month, I don't remember exactly when,
27 and I actually have another copy as well, so this

```
DOCKET NUMBER CV07-5013037S     :   SUPERIOR COURT

BANK OF NEW YORK                :   JUDICIAL DISTRICT

VS.                             :   HARTFORD, CONNECTICUT

SONJA BELL, ET AL               :   JANUARY 29, 2010
```

C E R T I F I C A T I O N

    I hereby certify the foregoing pages are a true and accurate transcript of the recorded proceedings of the above referenced case, heard before the Honorable Robert Satter, JTR, in the Hartford Superior Court, Hartford, Connecticut, on the 29th day of January, 2010.

    Dated at Hartford, Connecticut this 22nd day of February, 2010.

Dori Van Buren
Court Monitor

Exhibit C

**HHD-CV07-5013037-S    BANK OF NEW YORK v. BELL, SONJA, V ET AL**
Date Sent: 03/05/2010 Sequence #: 1

**Notice Content:**
A HEARING IN THIS CASE WILL BE HELD BEFORE THE
HON. ROBERT SATTER ON 3/18/10 AT 10AM AT 95
WASHINGTON ST. IN HARTFORD. AT THAT TIME, THE
COURT WILL ADDRESS ALL PENDING MOTIONS (M.
232.00, 248.00, 251.00, 252.00, AND 253.00).
THE PARTIES MUST BRING TO THE COURT'S
ATTENTION ANY OTHER MOTIONS THAT THEY WOULD
LIKE HEARD IN THIS CASE BY 3/16/10.


PER ORDER OF SATTER, JTR. 3/4/10

P. VETRO/CC 3/4/10


P00S


**Appearances:**
Attys: BENDETT & MCHUGH PC, 160 FARMINGTON AVE. FARMINGTON CT 06032
Attys: GUEST,J 151 NEW PARK AVENUE HARTFORD CT 06106
Attys: HUNT LEIBERT JACOBSON PC, 50 WESTON STREET HARTFORD CT 06120
SelfRep: BELL,SONJA 54 MAIN ST S GLASTONBURY, CT 06073
SelfRep: JONATHAN BELL HUSBAND FATHER & OWNER BENEFICIARY,' 54 MAIN
ST S GLASTONBURY, CT 06073

DOCKET NO: HHDCV075013037S

ORDER   081084

SUPERIOR COURT

BANK OF NEW YORK ET AL
   V.
BELL, SONJA, V ET AL

JUDICIAL DISTRICT OF HARTFORD
   AT HARTFORD

3/11/2010

## ORDER

ORDER REGARDING:
03/10/10 272.00 MOTION FOR COMMISSION FOR DEPOSITION

Short Calendar Results Automated Mailing Notice Sent On This Order Document.
Short Calendar Results Automated Mailing (SCRAM) Notice was sent on the underlying motion.

The foregoing, having been considered by the Court, is hereby:

ORDER:

Commission - Granted except as to (6).

Contact Information for Service - Granted except as to (6).

081084

Judge: ROBERT SATTER
Processed by: Beth Willett

**ATTACHMENT B**

DOCKET NO. HHD-CV-07-5013037-S    :  SUPERIOR COURT

THE BANK OF NEW YORK, AS TRUSTEE    :  JUDICIAL DISTRICT OF HARTFORD
FOR BS ALT A 2005-9
V.    :  AT HARTFORD

SONJA V. BELL, ET AL.    :  FEBRUARY 24, 2009

## OBJECTION TO MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff in the above captioned action hereby files the following objection and

memorandum of law in response to the Defendant, Sonja Bell's, motion to dismiss

dated February 12, 2009.

## FACTS:

Plaintiff commenced the present foreclosure action by Writ, Summons, and

Complaint dated September 5, 2007 bearing a return date of September 25, 2007.  The

Defendant, Sonja Bell, through counsel, previously pleaded an Answer and Defenses

to this action on or about January 18, 2008.  Plaintiff responded to the pleading by filing

a motion for summary judgment as to liability on or about April 18, 2008.  Said motion

for summary judgment was granted by order of this court on May 5, 2008 (Freed, J.).

No timely motion to reargue, reconsider, or otherwise attempt to overturn that decision

has ever been filed by counsel for the Defendant or the Defendant.   Thereafter the

court acted upon Plaintiff's motion for judgment of strict foreclosure and granted the

ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

THIS LAW FIRM IS A DEBT COLLECTOR.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

same on June 10, 2008 (Freed, J.) setting law days to commence on July 28, 2008 for the Defendant and subsequent days for additional encumbrance holders.  On the first scheduled law day, the Defendant filed a Chapter 13 Bankruptcy petition which stayed the progression of the previously ordered law days.  Thereafter on September 22, 2008 the Bankruptcy was dismissed by order of the United States Bankruptcy Court and Plaintiff moved this court to reset the law days on October 9, 2008.  Said motion to reset the law days was granted on November 10, 2008 (Satter, J.) with law days ordered to commence on February 9, 2009 and subsequent dates for additional encumbrancers.

On or about February 2, 2009 the Defendant filed a motion to extend the law days which motion was heard on February 17, 2009 and absent objection of the Plaintiff granted with the court setting new law days to commence on April 20, 2009. The instant motion to dismiss was filed on or about February 13, 2009 by the Defendant, Sonja Bell, as a pro se party, despite having counsel still appearing for her in this matter.  No in lieu appearance or pro se appearance is on record for the Defendant, Sonja Bell.  The substantive basis for the motion to dismiss is an allegation of lack of subject matter jurisdiction based upon the assignment of the mortgage not

being recorded at the commencement of this action and an additional allegation that

the Plaintiff was not the owner and holder of the Note as alleged within the complaint.

Plaintiff hereby files its objection thereto as without authority and baseless in

light of the following authorities, which are statutory and appellate decisions in nature.

## STANDARD OF REVIEW:

"The standard of review in challenging subject matter jurisdiction is well

established. In ruling upon whether a complaint survives a challenge to subject matter

jurisdiction, a court must take the facts to be those alleged in the complaint, including

those facts necessarily implied from the allegations, construing them in a manner most

favorable to the pleader." *Villager Pond, Inc. v Town of Monroe,* 54 Conn. App. 178,

183, 734 A.2d 1031 (1999); *quoting Mahoney v. Lensink,* 213 Conn. App. 548, 567,

569 A.2d 518 (1990). Furthermore, it is the law in our courts "…that [a] court may

dismiss a complaint only if it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations." *Villager Pond, Inc. v Town of*

*Monroe,* 54 Conn. App. 178, 183, 734 A.2d 1031 (1999); *quoting Pamela B. v. Ment,*

244 Conn. 296, 308, 796 A.2d 1089 (1998). The Court in the matter at bar is to take

the allegations as true, namely that the Plaintiff, Bank of New York, as Trustee for BS

3

ALT A 2005-9, is the owner and holder of the Mortgage and Note. *Complaint*,
Paragraphs 4 and 5.

## LAW AND ARGUMENT:

As primary grounds of objection, the Motion to Dismiss as filed is a
conglomeration of statements and requests for relief that are not available under the
limited scope of a motion to dismiss. The actual text of the motion seeks "...sanctions,
Judicial estoppel and/or waiver to prevent the modification of facts already in
evidence..." and further supports the claim of a lack of subject matter jurisdiction with
the familial situation of the Defendant and requests that "...the court not make any
ruling that would prevent Defendant from pursing [sic] those who violated the law and
Rules of Professional Conduct in an attempt to make her and her homeless." *Motion*, p.
2. The entirety of the pleaded sentiments about the Defendant's family and the
unfounded, speculative, and conclusory allegations as to violations of law and
Professional Conduct are unsupported by any fact or pleading on the record and
cannot reasonably be inferred from the record.

Further, the Defendant has provided no authority, statutory or otherwise, that
would demonstrate that this action should be dismissed in accordance with the
standards of review cited above. The claim of lack of jurisdiction basically falls into two

4

categories.  First, being the claim that the named Plaintiff had no interest in the subject note or mortgage at the time of the commencement of this action; and Second, being that the claims of the Defendant as to the propriety of the entry of summary judgment and other irrelevant non-jurisdictional claims set forth within the memorandum of law in support of the motion are untimely and should be disregarded by the Court.

## I.    THERE IS NO LACK OF SUBJECT MATTER JURISDICTION:

In response to the actual text of the motion, the Defendant has asserted subject matter jurisdiction (lack of standing) as the sole relevant grounds for dismissal in the motion, alleging that the named Plaintiff had no interest in the note and/ or mortgage at the time the action was instituted.  Such a conclusion is false and absent authority for its proposition.  In actuality, the conclusion proffered by the Defendant is contrary to multiple decisions of our Appellate Court and multiple Connecticut statutes directly on point.

The Defendant's motion incorrectly concludes that the Plaintiff had no interest in the note or mortgage at the inception of the action based upon the language of the complaint pertinent to the assignment of mortgage "to be recorded" on the land records and the allegations pertinent to an "Officer's Certificate" outlining the trust acquisition by the Plaintiff of the prior trustee, JP Morgan Chase, that was submitted in support of the

motion for summary judgment.  Below Plaintiff sets forth its exact statutory and appellate authority that guarantees it has standing in this action which authorities unequivocally demand that the motion be denied.

**I.     THE PLAINTIFF, BANK OF NEW YORK, AS TRUSTEE FOR BS ALT A 2005-9, WAS THE HOLDER OF THE NOTE AND MORTGAGE AT THE INCEPTION OF THIS ACTION.**

At the time of the commencement of this action the Plaintiff was in possession of and forwarded the original note and mortgage documents to its counsel for institution of a foreclosure proceeding due to the Defendant's non payment under the terms of the note and mortgage.  It has been stated by the Supreme Court that the best evidence of ownership of loan documents are the instruments themselves. *See Brookfield v. Candlewood Shores Estates, Inc.*, 201 Conn. 1, 10-11 (1986).  Plaintiff, through its counsel, can, will, and has produced the original note at the judgment hearing of this action or at any further request of the court to demonstrate that it indeed has ownership of and holds said note in accordance with the allegations of the complaint, which as recited above are to be taken as true.  Further, this court has already examined the loan documents at the first hearing for judgment of strict foreclosure and entered judgment being satisfied that the proper parties to this controversy were before the court.  Thus the law of this case as demonstrated by the entry of summary judgment

6

and the entry of judgment on two separate occasions clearly denotes that the Plaintiff is the proper party in interest. The Defendant's conclusory allegations and claims within the motion and memorandum allegedly in support thereof are not tantamount to any evidence that Plaintiff does not and has not owned the Note and Mortgage, they are mere conclusory allegations and the speculative beliefs of the position of a party opponent.

More importantly the Defendant is overlooking the key fact that the Trust into which the loan documents were securitized has never changed and has not been alleged to have changed. The BS ALT A 2005-9 Trust has owned the Note and Mortgage since well prior to the commencement of this action. The Defendant's conclusions that result in this motion have been arrived at due to a conflict with the Trustee, however, the Trust itself is the actual owner of the documents as alleged within the complaint. The Trustee that implements the Trust into which the loan documents were collateralized has changed due to the assumption of JP Morgan Chase trust business by Bank of New York. This is not pertinent to the contents, rules, and regulations of the underlying Trust which is the owner of the documents once collateralized.

The Defendant's main claim to allegedly support the premise that the Plaintiff lacks standing relies upon an "Officer's Certificate" that details the essentials of the transaction between JP Morgan Chase and Bank of New York's assumption of the trust assets of JP Morgan Chase, the prior trustee, on April 7, 2006 as restated on October 21, 2006. The certificate and the addendum of trusts assumed were attached to the Plaintiff's previously filed motion for summary judgment as Exhibit A. Unfortunately, via an administrative error, the specific trust at issue was not listed within the abbreviated list submitted as an attachment to the motion for summary judgment. The Defendant has apparently taken that list as previously submitted to be entirely inclusive of each and every trust acquired in the assumption that consisted of multitudes of trusts, not just those enumerated within the "Officer's Certificate." Attached to this memorandum as Exhibits A and B are the Assignment and Assumption Agreement (Exhibit A) and Resignation and Assumption Agreement (Exhibit B) between JP Morgan Chase and Bank of New York which conveyed Bank of New York's interest in this matter on April 7, 2006 and restated the same on October 21, 2006, well prior to the date of this action being served and in fact, well prior to the default that occasioned this action's necessity. The Trust in question is clearly listed on Schedule A to the Assignment and

8

Assumption Agreement attached hereto as <u>Exhibit A</u>. And as set forth in the affidavit in support of the motion for summary judgment, the original note was forwarded by the Plaintiff to its counsel prior to the commencement of this action with specific instruction to commence an action based upon default. Thus the Plaintiff has clearly demonstrated that the entirety of the law of this case has had sufficient evidence not only to sustain its viability, but also for the rendering of summary judgment and the entry of judgment of strict foreclosure.

## <u>Authorities Demonstrating Subject Matter Jurisdiction</u>:

C.G.S. 49-17 provides an avenue for the holder of a note to obtain foreclosure of an accompanying mortgage deed even if not or never formally assigned. The statute reads "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies." The interpretive decisions of 49-17 as set forth below clearly hold, without equivocation, that the holder

of a note is entitled to foreclose an accompanying mortgage whether or not such mortgage was assigned prior to institution of the action or assigned at all.  In this matter, it bears repeating that the owner and holder of the Note is the specific Trust and not merely the Trustee that implements the provisions of that Trust as outlined within the creation documents.

The case of *Fleet v. Nazareth*, 75 Conn. App. 791, 818 A.2d 69 (2003), is indicative of this position and is probably the leading case on point.  In *Nazareth* the Appellate Court held that the holder of a note has standing and the ability to foreclose the subject property through the enforcement of the accompanying mortgage regardless of whether the mortgage is also held.  "[Connecticut] General Statutes §49-17 permits the holder of a negotiable instrument [the note] that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him." *Bankers Trust Company of California, N.A. v. Vaneck*, 95 Conn. App. 390, 899 A.2d 41 cert. denied, 279 Conn. 908, 901 A.2d 1225 (2006) (citing *Fleet National Bank v. Nazareth*, 75 Conn. App. 791, 818 A.2d 69 (2003)).  The *Bankers Trust* Court stated, "The statute [49-17] codifies the common law principle of long standing that 'the mortgage follows the note,' pursuant to which the rightful owner of the note has the right to enforce the mortgage." *Id.* "The holder of a promissory note,

10

whether that holder be a holder in due course or otherwise, has the benefit of the security to secure that note whether actually assigned or not." *Connecticut National Bank v. Marland*, 45 Conn. App. 352, 696 A.2d 374, cert. denied 243 Conn. 907, 701 A.2d 328 (1997).

Furthermore, as applied to Trusts, C.G.S. 42a-3-110 states that if an instrument is payable to "(i) A trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is payable to the trustee, the representative, or a *successor of either*, whether or not the beneficiary or estate is also named;...." (emphasis added).

In this matter, the Note is clearly endorsed payable to "JP Morgan Chase Bank, N.A. as Trustee" and JP Morgan was the trustee of the BS ALT A 2005-9 trust prior to Bank of New York's acquisition of its trust business as set forth in the attachments hereto. Thus it necessarily follows as demonstrated by the legal documentation attached hereto that Bank of New York is, by the literal definition of the words, a "successor trustee" as enumerated in C.G.S. 42a-3-110 and as demonstrated unequivocally by Exhibits A and B hereto. Thus, as a matter of law, by the literal statutory interpretation and application of the same to the facts of this action, Bank of

New York's name does not have to be on the note in order for the instrument to be considered legally held by that entity as a successor trustee.

This Court has had prior occasion to deal with a very similar issue to that presented by the Defendant's motion. In *Bank of America National Trust Co. as Trustee v. David M. Sohn, et al.*, 1999 Conn. Super. LEXIS 1592 (1999) (Satter, J.) (attached hereto as Exhibit C), the issue of a successor trustee's standing was directly addressed by this Court in reference to a motion to substitute and objection thereto sounding in a claim of lack of subject matter jurisdiction. In fact in the above case, all of the same claims were presented as are presented in this matter, including application of C.G.S. 42a-3-110, 42a-3-301, and the interpretations of those statutes. This Court definitively stated in the opinion that, "The one clear fact that establishes the standing of Banker's Trust Company to prosecute this action is that Banker's Trust Company possesses the defendants' note and has presented it in court." *Id.* It was held in that matter that the successor trustee had standing to pursue the foreclosure based upon its being in possession of the note and having negotiated for the same under the definition of the U.C.C., coupled with the assignment of the mortgage and demonstration that the Substituted Trustee was, in fact, the real party in interest to the action.

The only discrepancy between the instant matter and the *Sohn* case was that in the *Sohn* matter the Note was erroneously endorsed to the incorrect party as Trustee, which this court held to be by mistake and did not have a jurisdictional implication on the standing of the Plaintiff or the proposed substituted Plaintiff. Extending the logic of that decision to the instant action, the failure of JP Morgan Chase to endorse the Note prior to its being transferred to Bank of New York was also a mistake of the transferring party, which as clearly demonstrated by the attachments surrounding the purchase agreement between the two entities can be remedied by allonge or other endorsement to the Note. The assignment agreement specifically states that the assignor (JP Morgan) transfers ALL rights, title, and interest in each of the purchased Trusts to the assignee (Bank of New York) of which the trust recited in the name of the Plaintiff was one of those purchased, as demonstrated by the attachments hereto.

The note underlying this claim and action is clearly and unequivocally endorsed to the prior trustee, whose trust assets, including the subject Trust, were assumed by the current Trustee as enumerated within the attachments hereto as Exhibits A and B. As set forth above, by the plain and unambiguous application of the statutory language the Plaintiff is unequivocally the successor trustee and entitled to

receive the benefit of the Note proceeds on behalf of the Trust as such. See *C.G.S.*
*42a-3-104, 42a-3-301, and 42a-3-110 above.*

In short, the Plaintiff, Bank of New York, as Trustee for BS ALT A 2005-9, at all
times relevant has held a legal and equitable interest in the subject note and mortgage
by virtue of being the owner and holder of said documents, even prior to the formal
assignment of the mortgage and commencement of this action, as demonstrated by the
attachments hereto and arguments above which is sufficient to convey its standing to
invoke the Court's jurisdiction under all relevant authority and statutes. Again, the
specific Trust that contains this loan has never changed, solely the name of the Trustee
has changed. Plaintiff has held and owns the loan instruments which convey the ability
to enforce the mortgage deed even if said mortgage had not been assigned prior to the
issuance of the summons and complaint or even at all during the pendency of this
action in accordance with all authorities recited *supra*. As such the Defendant's motion
to dismiss has failed to raise any issue or cause for dismissal since at all times relevant
the Plaintiff has had standing to pursue its chose of action pursuant to C.G.S. 49-17 as
the proper holder of the note and acting on behalf of the Trust at issue.

## II.    CLAIMS FOR RELIEF THAT DO NOT IMPLICATE JURISDICTION:

Embodied within the memorandum in support of the motion to dismiss are

multiple other requests for relief, "...that Summary Judgment and Judgment in Strict

Foreclosure should be vacated in their entirety." *Memorandum in Support*, p. 6. The

Defendant is seeking relief that is unavailable as a matter of law. The ruling rendering

summary judgment as to liability was entered more than nine months prior to the filing

of the motion to dismiss and as such that judgment should not be vacated. As set forth

above, at the time of the rendering of summary judgment as to liability, no objection

thereto was filed, no motion to reargue or reconsider the same was filed, and no motion

to open that judgment was or has been filed. Now the Defendant, in a pro se filing,

believes she can include language that the summary judgment should be "vacated"

more than 10 months after it was rendered, which is relief that is unavailable and

should not be afforded to her as a matter of law.

Further, the inclusion of a request for such relief within the memorandum in

support of a motion to dismiss is improper and should not be considered by this court.

A motion to open or modify any judgment must be submitted in proper form, as an

independent and distinct motion, along with the filing fee demanded by C.G.S. 52-259.

In both respects, the Defendant has sought relief unavailable through the use of an

15

improper vehicle, failed to pay a mandatory fee to seek such relief, and further the requested relief has been waived by the failure of the Defendant or her counsel to take appropriate action timely in accordance with statute and the rules of practice. The attempt to have the summary judgment vacated is nothing more than a collateral attack on a ruling rendered previously in this action that the Defendant does not particularly agree with. As set forth above, there is no basis for the court to dismiss or vacate any order entered within this action as at all times relevant. Bank of New York as Trustee has had the requisite legal and equitable interest in the loan instruments as successor trustee to prosecute this action. As a result, the ancillary requested relief of opening and vacating both the ruling of summary judgment and judgment of foreclosure must be denied.

Similarly, the Defendant seeks to invoke the concept of judicial estopppel and even goes so far as to request that sanctions be entered against the Plaintiff and its counsel for the prosecution of this action. There is no merit nor any factual support for any of these claimed grounds of relief which again, amount to nothing more than a collateral attack on the prior rulings of this court that the Defendant disagrees with, despite having had counsel at the time of the complained of rulings. These matters and rulings are not subject to such a collateral attack. The Defendant, throughout the

16

memorandum, cites to multitudes of cases which are factually distinct from the matter pending at bar and seeks relief that cannot be afforded in this action. The vast majority of the memorandum in support of the motion and requests for varying relief is nothing more than a conglomeration of assorted concepts and rulings of various courts without any factual underpinnings or support. As set forth above, the Defendant had retained counsel, who pleaded an answer and defenses to the Plaintiff's claim. Standing or lack of subject matter jurisdiction was not one of those pleaded. This court ruled that the pleadings did not constitute any issue of material fact for trial as to the Defendant's liability for the execution and subsequent default of the loan obligations. Now, the Defendant seeks to attack the integrity of those rulings using nothing more than speculation, conclusory, and inflammatory language as to the intent or motive of the Plaintiff or its counsel. Simply stated, this court has found jurisdiction to be proper on no less than three occasions and the same is proper under the entirety of the section demonstrating the same above.

The assorted requests to vacate, challenge to standing, and collateral attacks upon proper rulings of this court are also being made at a time that must be considered dilatory in light of the procedural history and involvement of counsel with this matter. The Defendant, who now comes to this court with pro se filings, was represented by

counsel in this matter from at least January of 2008 prior to the entry of summary
judgment and judgment of foreclosure. Said counsel did not object to the summary
judgment motion nor file any motion seeking to reargue the same nor was any defense
of standing or claim lack of jurisdiction ever raised.

## Conclusion:

The law of this case is that the Court has found the Plaintiff to be the proper
party to prosecute this action on no less than three separate occasions, which findings
are legally correct under the announced standards and evidence provided by the
Plaintiff, including but not limited to the original loan documents, recorded assignment
of mortgage, and certificates attached hereto. The Defendant's continued use of the
improper vehicle to request relief from this court, seeking relief unavailable to her, and
speculative, conclusory, and inflammatory language contained within the memorandum
of law as to the intent and motives of the Plaintiff or its counsel are all irrelevant to the
issue of standing. The court does not lack subject matter jurisdiction, as a matter of
law, and the motion must accordingly be denied.

18

WHEREFORE, for the reasons stated above, the Plaintiff respectfully requests that its Objection must be sustained and that the Defendant's Motion to Dismiss must be denied.

Plaintiff

By_____426251_____
      Andrew P. Barsom
      Hunt Leibert Jacobson, P.C.
      Its Attorneys
      50 Weston Street
      Hartford, Ct. 06120
      (860) 808-0606
      Juris No. 101589

19

## <u>ORDER</u>

The foregoing Objection having been presented to the Court is hereby ORDERED:

### SUSTAINED/OVERRULED

THE COURT

By:_____

Judge/Clerk/Ass't Clerk

20

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid,

by first class mail on February 19, 2009 to the following:

Sonja Bell
54 Main Street
South Glastonbury, CT 06073

Bendett & McHugh PC
160 Farmington Avenue
Farmington , CT 06032

_____426251_____
Andrew P. Barsom
Attorney for the Plaintiff

03349-01039

21

# EXHIBIT A

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGMENT AND ASSUMPTION AGREEMENT (this "Agreement"), dated as of October 1, 2006, is by and among Chase Manhattan Bank USA, National Association, J.P. Morgan Trust Company, National Association, and JPMorgan Chase Bank, National Association, each a wholly owned subsidiary of JPM (the "Assignors"), and The Bank of New York Trust Company, National Association, a wholly owned subsidiary of BNY (the "Assignee").

WHEREAS, The Bank of New York, Inc., a New York corporation ("BNY"), and JPMorgan Chase & Co., a Delaware corporation ("JPM") have entered into a Purchase and Assumption Agreement, dated as of April 7, 2006, (as amended, the "Purchase Agreement"); unless otherwise defined herein, capitalized terms shall be used herein as defined in the Purchase Agreement; and

WHEREAS, the parties hereto desire to execute this Agreement to evidence and effect the sale and transfer of the Acquired Corporate Trust Contracts (as defined below) and the assumption of the Assumed Corporate Trust Contract Liabilities (as defined below) as provided for in the Purchase Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants set forth in the Purchase Agreement and hereinafter set forth, Assignors and Assignee hereby agree as follows:

1. <u>Assignment and Acceptance of Assets</u>. Subject to and upon the terms and conditions of the Purchase Agreement, Assignors hereby sell, assign, transfer, convey and deliver, or cause to be assigned, transferred, conveyed and delivered, to Assignee all right, title and interest of each Assignor in, to and under the Contracts that are Purchased Corporate Trust Assets (including the Corporate Trust Agreements and other Corporate Trust Contracts listed as of the date hereof set forth opposite the Assignor's name on Schedule 2.1(a)(3) to the Purchase Agreement, but excluding the Corporate Trust Leases, and Excluded Corporate Trust Assets) as set forth in Section 2.1 of the Purchase Agreement to the extent such Contracts are administered by Assignor in any location other than New York, New Jersey, or Connecticut and do not require a Delaware entity to act in a Corporate Trust Capacity (the "Acquired Corporate Trust Contracts"). Assignee hereby purchases, acquires and accepts Assignors' entire right, title and interest in, to and under the Acquired Corporate Trust Contracts.

2. <u>Assumption of Liabilities</u>. (a) Subject to and upon the terms and conditions of the Purchase Agreement, Assignee hereby assumes, and agrees to pay, perform and discharge when due, all of the Assumed Corporate Trust Contract Liabilities related to the Acquired Corporate Trust Contracts, but not including any Excluded Corporate Trust Liabilities (the "Assumed Corporate Trust Contract Liabilities").

(b)     Notwithstanding the foregoing provisions of paragraph (a), and subject to the terms and conditions of the Purchase Agreement, Assignee does not hereby assume, or agree to pay, perform or discharge when due, any liabilities of Assignors other than the Assumed

Corporate Trust Contract Liabilities including, without limitation, the Excluded Corporate Trust Liabilities.

3. <u>Purchase Agreement</u>. Nothing in this Agreement, express or implied, is intended to or shall be construed to modify, expand or limit in any way the rights of the parties under, and the terms of, the Purchase Agreement. To the extent that any provision of this Agreement conflicts or is inconsistent with the terms of the Purchase Agreement, the Purchase Agreement shall govern, including with respect to the enforcement of the rights and obligations of the parties to this Agreement. This Agreement is intended only to effect the assignment and assumption of the Acquired Corporate Trust Contracts and Assumed Corporate Trust Contract Liabilities described herein as contemplated by the Purchase Agreement.

4. <u>Further Assurances</u>. Subject to the terms and conditions of the Purchase Agreement, Assignors hereby covenant and agree that, at any time and from time to time after the date of this Agreement, at Assignee's request, Assignors will do, execute, acknowledge and deliver, or will cause to be done, executed, acknowledged and delivered, any and all further acts, conveyances, transfers, assignments, and assurances as reasonably necessary to grant, sell, convey, assign, transfer, set over to or vest in Assignee any of the Acquired Corporate Trust Contracts. Assignors shall from time to time pay to Assignee, when received, any amounts that shall be received by Assignors (including amounts received as interest) in respect of any Acquired Corporate Trust Contracts assigned or transferred to Assignee pursuant hereto.

5. <u>Power of Attorney</u>. Assignors hereby constitute and appoint Assignee, its successors and assigns, the true and lawful attorney and attorneys of Assignors, with full power of substitution, in the name of Assignee or in the name and stead of Assignors, but on behalf of and for the benefit of Assignee, its successors and permitted assigns:

(a)     to collect, demand and receive any and all amounts and other rights owing under Acquired Corporate Trust Contracts transferred hereunder and to give receipts and releases for and in respect of the same;

(b)     to institute and prosecute in Assignors' name, or otherwise, at the expense and for the benefit of Assignee, any and all actions, suits or proceedings, at law, in equity or otherwise, which Assignee may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Acquired Corporate Trust Contracts hereby assigned to Assignee or intended so to be, to defend or compromise any and all such actions, suits or proceedings in respect of any of such Acquired Corporate Trust Contracts, and to do all such acts and things in relation thereto as Assignee shall deem advisable for the collection or reduction to possession of any of such Acquired Corporate Trust Contracts; and

(c)     to take any and all other reasonable action designed to vest more fully in Assignee the Acquired Corporate Trust Contracts hereby assigned to Assignee and in order to provide for Assignee the benefit, use, enjoyment and possession of such Acquired Corporate Trust Contracts.

Assignors acknowledge that the foregoing powers are coupled with an interest and shall be irrevocable by it or upon its subsequent dissolution or in any manner or for any

2

reason.  Assignee shall be entitled to retain for its own account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest with respect thereto.

6.  Assignment.  This Agreement and all rights hereunder may not be assigned by any party hereto except by prior written consent of the other party hereto; provided that Assignee may assign its rights hereunder to any wholly owned Subsidiary without the prior written consent of Assignors; provided, further, that no such assignment by Assignee shall relieve Assignee, of any of its obligations hereunder.

7.  No Third Party Beneficiaries.  The parties intend that this Agreement shall not benefit or create any right or cause of action in or on behalf of any Person other than parties hereto.

8.  Amendments.  This Agreement may not be amended or revised except by a writing signed by Assignors and Assignee.

9.  Provisions Severable.  The provisions of this Agreement are independent of and separable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

10. Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

11. Governing Law.  The execution, interpretation, and performance of this Agreement shall be governed by the laws of the State of New York without giving effect to any conflict of laws provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the law of any other jurisdiction other than the State of New York.

[Signature page to follow.]

CHASE BANK USA, NATIONAL ASSOCIATION

By: _____

Name:

Title:

Signature Page to Corporate Trust Assignment and Assumption Agreement

J.P. MORGAN TRUST COMPANY, NATIONAL
ASSOCIATION

By: _____

Name: William H. Berls
Title: Senior Vice President

Signature Page to Corporate Trust Assignment and Assumption Agreement

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION

By:

Name: Steven Patterson
Title: Senior Vice President

Signature Page to Corporate Trust Assignment and Assumption Agreement

THE BANK OF NEW YORK TRUST
COMPANY, N.A.

By: _____
Name: *MICHAEL R. BLUGMAN*
Title: *PRESIDENT*

Signature Page to Corporate Trust Assignment and Assumption Agreement

## SCHEDULE A

Each of the agreements listed on Schedule 2.1(a)(3) of the Purchase and Assumption Agreement between The Bank of New York Company, Inc. and JPMorgan Chase & Co., including the following:

- Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-9

# EXHIBIT B

AGREEMENT OF RESIGNATION AND ASSUMPTION, dated as of October 1, 2006 by and among JPMORGAN CHASE BANK, NATIONAL ASSOCIATION (the "Resigning Trustee") and THE BANK OF NEW YORK (the "Successor Trustee").

### RECITALS:

WHEREAS, pursuant to the Purchase and Assumption Agreement dated as of April 7, 2006 (the "Purchase Agreement") by and between The Bank of New York Company, Inc. ("BNY") and JPMorgan Chase & Co. ("JPM") caused Resigning Trustee to transfer to Successor Trustee its rights, duties and obligations as trustee under various Agreements listed on Schedule A attached thereto (the "Agreements");

WHEREAS, Resigning Trustee and Successor Trustee desire to enter into this Agreement of Resignation and Assumption to evidence the resignation by Resigning Trustee and the assumption by Successor Trustee, as applicable to the Agreements;

NOW, THEREFORE, Resigning Trustee and Successor Trustee, for and in consideration of the premises and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby consent and agree as follows:

1.     Resignation. Resigning Trustee hereby assigns, transfers, delivers and confirms to Successor Trustee all right, title and interest of Resigning Trustee in and to each of the Agreements and all the rights, powers and trusts of the Resigning Trustee, as trustee or otherwise, under each of the Agreements.

2.     Assumption. Successor Trustee hereby assumes all right, title and interest of Resigning Trustee, as applicable, in and to the trust under each of the Agreements, and all rights, powers and trusts of Resigning Trustee, as trustee or otherwise, under each of the Agreements.

3.     Effective Date. This Agreement and resignation, and assumption effected hereby shall be effective as of the opening of business on October 1, 2006.

22.631
EMM-915223_1.DOC

4.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York

5.    Counterparts. This Agreement may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

6.    Purchase Agreement. This Agreement is made in connection with and is subject to the terms and conditions of the Purchase Agreement and the Assignment and Assumption Agreement executed and delivered in connection therewith.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement of Resignation and Assumption to be duly executed and acknowledged and their respective seals to be affixed hereunto and duly attested all as of the day and year first above written.

RESIGNING TRUSTEE:

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By: _____
Name:    Francis J. Grippo
Title:    Vice President

SUCCESSOR TRUSTEE

THE BANK OF NEW YORK

By: _____
Name:
Title:    MELISSA J. ADELSON
          VICE PRESIDENT

1/4/08

PAUL LIVANOS
Notary Public, State of New York
No. 01LI6167628
Qualified in Nassau County
Commission Expires June 4, 2011

- 2 -

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

On the _20th_ day of ~~November~~ *December* in the year 2007 before me, the undersigned, personally appeared __Francis J. Grippo__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

LINDA D'ALESSANDRO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DA6118119
Qualified in Suffolk County
My Commission Expires August 30, 2008

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

On the _____ day of November in the year 2007 before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

# EXHIBIT C

Case 3:10-cv-00508-SRU   Document 22   Filed 05/24/10   Page 65 of 193

Switch Client | Preferences | Sign Out | ? Help

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional A

FOCUS™ Terms [                    ]  Search Within  Original Results (1 - 1)  [  ]  [Go]
Advanced...

Service: **Get by LEXSEE®**
Citation: **1999 Conn. Super. LEXIS 1562**

*1999 Conn. Super. LEXIS 1562, ***

**Bank of America National Trust Co. as Trustee v. David M. Sohn et al.**

**CV 960558368S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD - NEW BRITAIN, AT HARTFORD**

**1999 Conn. Super. LEXIS 1562**

**June 15, 1999, Decided**
**June 16, 1999, Filed**

**NOTICE:  [*1]**  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Plaintiff's motion granted.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff trustee moved to substitute a trust company as plaintiff in its suit against defendants, makers of a promissory note, regarding endorsement and assignment of the note.

**OVERVIEW:** Plaintiff trustee moved to substitute a trust company as plaintiff. Defendants, makers of a promissory note, objected on the grounds the company lacked standing because of an invalid endorsement in the chain of title of its note. The court granted plaintiff's motion and determined that the substitute trust company had standing. Defendants executed a promissory note secured by a mortgage. The note was endorsed to a bank as trustee under a pooling and servicing agreement, while the mortgage was assigned to a trust company as trustee. The endorsement to the bank was a mistake as the note was intended to be endorsed to the trust company to which the mortgage was assigned. Therefore, there was never a valid endorsement to the bank. When the mistake was discovered, the endorsement was voided and the note was validly negotiated to the substitute trust company's predecessor. As holder of defendants' note, the predecessor endorsed it to the substitute trust company. The substitute trust company was in physical possession of the note and the named final endorsee. Accordingly, it was entitled to enforce the note pursuant to Gen. Conn. Stat. § 42a-3-301 and had standing as a party plaintiff.

**OUTCOME:** The court granted plaintiff trustee's motion to substitute a trust company as party plaintiff because the substitute trustee was entitled to enforce the note and had standing.

Get a Document - by Citation - 1999 Conn. Super. LEXIS 1562    Page 2 of 6

Case 3:10-cv-00508-SRU   Document 22   Filed 05/24/10   Page 66 of 193

**CORE TERMS:** mortgage, holder, endorsement, negotiation, endorsed, assigned, endorse, voided, transferred, physically, nonholder, mistaken, entity, naming

## LEXISNEXIS® HEADNOTES                                                    ⊟**Hide**

Commercial Law (UCC) > General Provisions (Article 1) > General Overview 🔲
Commercial Law (UCC) > Negotiable Instruments (Article 3) > General Provisions & Definitions >
Characteristics > Payable to Order or Bearer 🔲
    Commercial Law (UCC) > Negotiable Instruments (Article 3) > Negotiation, Transfer & Indorsement >
Indorsement 🔲

*HN1* ⚓ The U.C.C., Conn. Gen. Stat. § 42a-1-101 et seq. at 42a-3-110(a) provides: The person to whom an instrument is initially payable is determined by the intent of the person signing the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not of the intended person. More Like This Headnote

Commercial Law (UCC) > General Provisions (Article 1) > General Overview 🔲
Commercial Law (UCC) > Negotiable Instruments (Article 3) > Negotiation, Transfer & Indorsement >
Negotiation 🔲
    Contracts Law > Negotiable Instruments > Negotiation > General Overview 🔲

*HN2* ⚓ Conn. Gen. Stat. § 42a-3-20(a) defines negotiation as a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes the holder. Subsection (b) provides if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. Negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent. UCC Official Comment, Conn. Gen. Stat. § 42a-3-201, par. 1. More Like This Headnote

Commercial Law (UCC) > Negotiable Instruments (Article 3) > Negotiation, Transfer & Indorsement >
Negotiation 🔲

*HN3* ⚓ Conn. Gen. Stat. § 42a-3-202 clearly provides that a negotiation may be rescinded. More Like This Headnote

Commercial Law (UCC) > General Provisions (Article 1) > Definitions & Interpretation > Holder 🔲
    Commercial Law (UCC) > Negotiable Instruments (Article 3) > Enforcement > Person Entitled to Enforce 🔲
    Contracts Law > Negotiable Instruments > Enforcement > Duties & Liabilities of Parties >
General Overview 🔲

*HN4* ⚓ Conn. Gen. Stat. § 42a-3-301, provides: Person entitled to enforce instrument means: (i) the holder of the instrument, (ii) a nonholder in possession who has the rights of a holder. Section 42a-1-201(20) defines a holder as the person in possession of the instrument if payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. Thus, a holder of a note is one (a) who is in possession of a note; and (b) to whom the note is endorsed. More Like This Headnote

Estate, Gift & Trust Law > Trusts > Trustees > Duties & Powers > General Overview 🔲

*HN5* ⚓ A stranger to a trust, when sued by the trustee, cannot set up as a defense a violation of the rights of the trust by the trustee. More Like This Headnote

Commercial Law (UCC) > Negotiable Instruments (Article 3) > Enforcement > General Overview
HN6✤ Conn. Gen. Stat. § 42a-3-306 provides a nonholder in due course may be subject
   to claims of another person but 42a-3-305(c) provides the obligor may not assert
   such claim as a defense unless such person is joined in the
   action. More Like This Headnote

   Estate, Gift & Trust Law > Trusts > Trustees > Duties & Powers > General Overview
   Real Property Law > Financing > Secondary Financing > Assignees & Priority
HN7✤ The trustee can maintain such actions at law or suits in equity against a third
   person as he could maintain if he held the trust property free of trust. Subsection
   (h) of the comments to this motion state, in an action brought by trustee it is
   unnecessary for the trustee in the pleadings or other proceedings to describe
   himself as trustee. He can proceed in the action as though the owner of the claim
   which he is enforcing. If he does describe himself as trustee, the description is
   treated as surplusage. More Like This Headnote

**JUDGES:** Robert Satter, Judge Trial Referee.

**OPINION BY:** ROBERT SATTER

**OPINION**

MEMORANDUM OF DECISION

Plaintiff moves to substitute Bankers Trust Company as plaintiff in this suit and defendants
object on the grounds that Bankers Trust Company lacks standing. Technically, defendants'
objection goes not to plaintiff's motion to substitute, but, after the motion is granted, to
dismissing the action for want of jurisdiction. The parties have briefed and argued the
pending motion in that vein and the court will so address it.

Recognizing jurisdiction was implicated, the court held an extended hearing. Based on that
hearing, the court finds the following facts:

On December 30, 1986 defendants executed a promissory note to the order of Citicorp ▾
Person-to-Person Financial Center of Connecticut, Inc. ▾ in the principal amount of $ 94,000,
secured by a mortgage on property at 8 Charing Road, South Windsor, Connecticut. The note
was endorsed and the mortgage assigned to Citicorp ▾ Homeowners, Inc. On or **[*2]** about
September 30, 1987 Citicorp ▾ Homeowners, Inc. changed its name to
Citicorp Mortgage, Inc. ▾ Thereafter, an allonge was appended to the note endorsing it to
Security Pacific National *Bank* (hereafter SPN Bank) as Trustee under a Pooling and Servicing
Agreement with Citicorp ▾ mortgage Securities, Inc., without recourse. That endorsement
was executed by Sandra Hudson, an assistant secretary of Citicorp Mortgage, Inc. ▾ The
mortgage, however, was assigned to Security Pacific National *Trust* Company (Hereinafter
SPN Trust), as Trustee.

It was the intention of Sandra Hudson, as she testified, to endorse the note to SPN *Trust*
because it was the customary practice of Citicorp ▾ Mortgage to endorse the note and assign
the mortgage to the same entity. Further evidence that the note and mortgage were to pass
to SPN *Trust* Company, rather than SPN *Bank*, was that the Pooling and Servicing Agreement
naming SPN *Trust* Company as Trustee included defendants' mortgage as an asset of that
trust, and the Pooling and Servicing Agreement naming SPN *Bank* as Trustee did not.

At all times Citicorp Mortgage, Inc. ▾ retained custody of the defendants' note which was never physically **[\*3]** delivered to Security Pacific National *Bank*.

When the mistaken endorsement of the note to SPN *Bank* was discovered, it was voided by an officer of Citicorp Mortgage, Inc. ▾ and the note was endorsed to SPN *Trust* Company, Trustee under a Pooling and Servicing Agreement with Citicorp ▾Mortgage Securities, Inc.

On January 1, 1993 SPN Trust Company changed its name to BankAmerica ▾National Trust Company. Subsequently, Bankers Trust Company purchased the trust division of BankAmerica ▾National Trust Company. On or about September 1, 1996 the latter company merged with and into BankAmerica ▾National Trust & Savings Association, which company endorsed and assigned defendants' note and mortgage to Bankers Trust Company, the entity seeking to be the substituted plaintiff in this action.

Defendant argues that the chain of title of defendants' note does not run to Bankers Trust Company because an endorsement was made to SPN *Bank* and that endorsement was not validly voided. There is no merit to this claim.

*HN1*The Uniform Commercial Code, C.G.S. 42a-1-101 et seq. at 42a-3-110(a) provides:

> The person to whom an instrument is initially payable is determined by the **[\*4]** intent of the person signing the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not of the intended person.

Here the court finds Sandra Hudson, an officer of Citicorp Mortgage, Inc. ▾, mistakenly endorsed defendants' note to SPN *Bank* when she intended to endorse the defendants' note to SPN *Trust* to which she had assigned defendants' mortgage and which was the trustee of the Pooling and Servicing Agreement listing defendants' note and mortgage as an asset. Thus, there was never a valid endorsement to SPN Bank.

Further, the evidence is the defendants' note was never negotiated to SPN Bank. *HN2* Section 42a-3-20(a) defines negotiation as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes the holder."

Subsection (b) provides, ". . . if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder."

The UCC Official Comment to this section states: "Negotiation always requires **[\*5]** a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent." *UCC Official Comment*, C.G.S. 42a-3-201, par. 1.

Defendants' note was never physically delivered to SPN Bank. Thus, no negotiation was effectuated to SPN Bank.

When Citicorp Mortgage, Inc. ▾ discovered the mistaken endorsement it voided it. Consequently, even if there had been a negotiation to SPN Bank, which there was not, *HN3* 42a-3-202 clearly provides that a negotiation may be rescinded. Citicorp Mortgage, Inc. ▾ did that by a duly authorized officer.

It then endorsed the note to SPN *Trust*, as it had intended to do and, effectively transferred possession of the note to SPN Trust by acknowledging it was retaining it as custodial agent for SPN Trust. Thus there was a valid negotiation to SPN Trust.

The one clear fact that establishes the standing of Bankers Trust Company to prosecute this action is that Bankers Trust Company possesses the defendants' note and has presented it in court. *HN4*Section 42a-3-301, provides: " 'Person entitled to enforce instrument' means: (i) the holder of the instrument, (ii) a nonholder in possession **[\*6]** who has the rights of a holder, . . ."

Section 42a-1-201(20) defines a "holder" as "the person in possession of the instrument if payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession."

Thus, a holder of a note is one (a) who is in possession of a note; and (b) to whom the note is endorsed.

Here, Bankers Trust Company is in physical possession of the note and the named final endorsee. Accordingly, Bankers Trust Company is entitled to enforce the note, pursuant to 42a-3-301.

Defendant claims that no evidence was presented that Bank of America National Trust & Savings Association (hereinafter BANTSA) the predecessor in interest to Bankers Trust Company qualified as a trustee of the trust created by the pertinent Pooling and Servicing Agreement by having the required "combined capital and security of at least $ 30,000,000."

The facts are that BANTSA, the holder of defendants' note, endorsed it to Bankers Trust and did not act as Trustee under the Pooling and Servicing Agreement. Moreover, defendants are not entitled to raise the Trustee's eligibility as a defense in this action. Under the **[\*7]** terms of that agreement, the only person who can challenge the Trustee's status are the settlor, Citicorp ˅Mortgage Securities, Inc., or the certificate holder beneficiaries. Furthermore, trust law prohibits such claims. *HN5*"A stranger to a trust, when sued by the Trustee, cannot set up as a defense a violation of the rights of the Trust by the Trustee." 90 C.J. S. Trusts, 363 (a).

Finally, *HN6*42a-3-306 provides a nonholder in due course may be subject to claims of another person but 42a-3-305(c) provides the obliger may not assert such claim as a defense unless such person is joined in the action. This defendant has failed to do.

As its last defense, defendants assert Bankers Trust Company is not a proper plaintiff because defendants' note and mortgage were transferred to Bankers Trust Company as Trustee. The short answer to this claim is that, as the Restatement Second of Trusts, at 280, provides, *HN7*"The Trustee can maintain such actions at law or suits in equity . . . against a third person as he could maintain if he held the trust property free of trust." Subsection (h) of the comments to this motion state,

How Trustee sues. In an action brought by Trustee . . . it **[\*8]** is unnecessary for the Trustee in the pleadings or other proceedings to describe himself as Trustee. He can proceed in the action as though the owner of the claim which he is enforcing. If he does describe himself as Trustee, the description is treated as surplusage.

Thus, this court grants plaintiff's motion to substitute Bankers Trust Company as party plaintiff in this action and determines that Bankers Trust Company has standing as such.

Robert Satter

Judge Trial Referee

Service: **Get by LEXSEE®**
Citation: **1999 Conn. Super. LEXIS 1562**
View: Full
Date/Time: Tuesday, February 24, 2009 - 11:36 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Out | Help

 **LexisNexis®**   About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**ATTACHMENT C**

EXECUTION COPY

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGMENT AND ASSUMPTION AGREEMENT (this "<u>Agreement</u>"), dated as of October 1, 2006, is by and among Chase Manhattan Bank USA, National Association, J.P. Morgan Trust Company, National Association, and JPMorgan Chase Bank, National Association, each a wholly owned subsidiary of JPM (the "<u>Assignors</u>"), and The Bank of New York, a wholly owned subsidiary of BNY (the "<u>Assignee</u>").

WHEREAS, The Bank of New York, Inc., a New York corporation ("<u>BNY</u>"), and JPMorgan Chase & Co., a Delaware corporation ("<u>JPM</u>") have entered into a Purchase and Assumption Agreement, dated as of April 7, 2006, (as amended, the "<u>Purchase Agreement</u>"); unless otherwise defined herein, capitalized terms shall be used herein as defined in the Purchase Agreement; and

WHEREAS, the parties hereto desire to execute this Agreement to evidence and effect the sale and transfer of the Acquired Corporate Trust Contracts (as defined below) and the assumption of the Assumed Corporate Trust Contract Liabilities (as defined below) as provided for in the Purchase Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants set forth in the Purchase Agreement and hereinafter set forth, Assignors and Assignee hereby agree as follows:

1. <u>Assignment and Acceptance of Assets</u>. Subject to and upon the terms and conditions of the Purchase Agreement, Assignors hereby sell, assign, transfer, convey and deliver, or cause to be assigned, transferred, conveyed and delivered, to Assignee all right, title and interest of each Assignor in, to and under the Contracts that are Purchased Corporate Trust Assets (including the Corporate Trust Agreements and other Corporate Trust Contracts listed as of the date hereof set forth opposite the Assignor's name on Schedule 2.1(a)(3) to the Purchase Agreement, but excluding the Corporate Trust Leases and Excluded Corporate Trust Assets) as set forth in Section 2.1 of the Purchase Agreement to the extent such Contracts are administered by Assignor in New York, New Jersey or Connecticut and do not require a Delaware entity to act in a Corporate Trust Capacity (the "<u>Acquired Corporate Trust Contracts</u>"). Assignee hereby purchases, acquires and accepts Assignors' entire right, title and interest in, to and under the Acquired Corporate Trust Contracts.

2. <u>Assumption of Liabilities</u>. (a) Subject to and upon the terms and conditions of the Purchase Agreement, Assignee hereby assumes, and agrees to pay, perform and discharge when due, all of the Assumed Corporate Trust Liabilities related to the Acquired Corporate Trust Contracts, but not including any Excluded Corporate Trust Liabilities (the "<u>Assumed Corporate Trust Contract Liabilities</u>").

(b)     Notwithstanding the foregoing provisions of paragraph (a), and subject to the terms and conditions of the Purchase Agreement, Assignee does not hereby assume, or agree to pay, perform or discharge when due, any liabilities of Assignors other than the Assumed

JUDICIAL DISTRICT OF
HARTFORD

2009 JUN - 3   A  11: 00

COPY CERTIFIED

*Maureen Brennan*
signature Clerk


PLAINTIFF'S EXHIBIT
CV0750 13057
NO. 3

Corporate Trust Contract Liabilities including, without limitation, the Excluded Corporate Trust Liabilities.

3. **Purchase Agreement.** Nothing in this Agreement, express or implied, is intended to or shall be construed to modify, expand or limit in any way the rights of the parties under, and the terms of, the Purchase Agreement. To the extent that any provision of this Agreement conflicts or is inconsistent with the terms of the Purchase Agreement, the Purchase Agreement shall govern, including with respect to the enforcement of the rights and obligations of the parties to this Agreement. This Agreement is intended only to effect the assignment and assumption of the Acquired Corporate Trust Contracts and Assumed Corporate Trust Contract Liabilities described herein as contemplated by the Purchase Agreement.

4. **Further Assurances.** Subject to the terms and conditions of the Purchase Agreement, Assignors hereby covenant and agree that, at any time and from time to time after the date of this Agreement, at Assignee's request, Assignors will do, execute, acknowledge and deliver, or will cause to be done, executed, acknowledged and delivered, any and all further acts, conveyances, transfers, assignments, and assurances as reasonably necessary to grant, sell, convey, assign, transfer, set over to or vest in Assignee any of the Acquired Corporate Trust Contracts. Assignors shall from time to time pay to Assignee, when received, any amounts that shall be received by Assignors (including amounts received as interest) in respect of any Acquired Corporate Trust Contracts assigned or transferred to Assignee pursuant hereto.

5. **Power of Attorney.** Assignors hereby constitute and appoint Assignee, its successors and assigns, the true and lawful attorney and attorneys of Assignors, with full power of substitution, in the name of Assignee or in the name and stead of Assignors, but on behalf of and for the benefit of Assignee, its successors and permitted assigns:

(a)    to collect, demand and receive any and all amounts and other rights owing under Acquired Corporate Trust Contracts transferred hereunder and to give receipts and releases for and in respect of the same;

(b)    to institute and prosecute in Assignors' name, or otherwise, at the expense and for the benefit of Assignee, any and all actions, suits or proceedings, at law, in equity or otherwise, which Assignee may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Acquired Corporate Trust Contracts hereby assigned to Assignee or intended so to be, to defend or compromise any and all such actions, suits or proceedings in respect of any of such Acquired Corporate Trust Contracts, and to do all such acts and things in relation thereto as Assignee shall deem advisable for the collection or reduction to possession of any of such Acquired Corporate Trust Contracts; and

(c)    to take any and all other reasonable action designed to vest more fully in Assignee the Acquired Corporate Trust Contracts hereby assigned to Assignee and in order to provide for Assignee the benefit, use, enjoyment and possession of such Acquired Corporate Trust Contracts.

Assignors acknowledge that the foregoing powers are coupled with an interest and shall be irrevocable by it or upon its subsequent dissolution or in any manner or for any

2

reason. Assignee shall be entitled to retain for its own account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest with respect thereto.

6.  <u>Assignment</u>.  This Agreement and all rights hereunder may not be assigned by any party hereto except by prior written consent of the other party hereto; <u>provided</u> that Assignee may assign its rights hereunder to any wholly owned Subsidiary without the prior written consent of Assignors; <u>provided, further,</u> that no such assignment by Assignee shall relieve Assignee, of any of its obligations hereunder.

7.  <u>No Third Party Beneficiaries</u>.  The parties intend that this Agreement shall not benefit or create any right or cause of action in or on behalf of any Person other than parties hereto.

8.  <u>Amendments</u>.  This Agreement may not be amended or revised except by a writing signed by Assignors and Assignee.

9.  <u>Provisions Severable</u>.  The provisions of this Agreement are independent of and separable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

10.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

11.  <u>Governing Law</u>.  The execution, interpretation, and performance of this Agreement shall be governed by the laws of the State of New York without giving effect to any conflict of laws provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the law of any other jurisdiction other than the State of New York.

[Signature page to follow.]

3

J.P. MORGAN TRUST COMPANY, NATIONAL
ASSOCIATION

By: _____

Name: William H. Berls
Title: Senior Vice President

Signature Page to Corporate Trust Assignment and Assumption Agreement

CHASE BANK USA, NATIONAL ASSOCIATION

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION

By: _____

Name: Steven Patterson

Title: Senior Vice President

Signature Page to Corporate Trust Assignment and Assumption Agreement

THE BANK OF NEW YORK

By: _____

Name:
Title:

Signature Page to Corporate Trust Assignment and Assumption Agreement

**ATTACHMENT D**

```
DOCKET NUMBER CV07-5013037S     :  SUPERIOR COURT

BANK OF NEW YORK                :  JUDICIAL DISTRICT

VS.                             :  HARTFORD, CONNECTICUT

SONJA BELL, ET AL               :  MAY 29, 2009
```

B E F O R E:

        THE HONORABLE ROBERT SATTER, JTR

A P P E A R A N C E S:

    REPRESENTING THE PLAINTIFF:

    GEOFF MILNE
    HUNT LEIBERT JACOBSON, PC
    50 WESTON STREET
    HARTFORD, CONNECTICUT 06120

    REPRESENTING THE DEFENDANT:

    J. HANSON GUEST
    151 NEW PARK AVENUE
    HARTFORD, CONNECTICUT 06106

                    Recorded and Transcribed by:
                     Lori Van Buren

1          raised is that possibility that no probative value.

2          That question has no probative value to say something

3          or ask if something is --

4               MR. MILNE:  Well I objected that it was

5          hypothetical.

6               THE COURT:  No.

7               MR. MILNE:  Speculative is the word I used.

8               THE COURT:  In any event, the subjection is

9          sustained as to form.

10    BY MR. GUEST:

11    Q    Mr. Mitchell, would you normally be notified in the

12    event that the purchase and assumption agreement is

13    modified?

14    A    No.

15    Q    So then that means you would not know?

16               MR. MILNE:  Objection to characterization of the

17          testimony.

18               MR. GUEST:  I'll accept his answer.

19               THE COURT:  He answered the question.

20               MR. GUEST:  I'll go on to the next question.

21    BY MR. GUEST:

22    Q    Now, there the plaintiff has submitted several

23    documents in connection with this litigation and those

24    documents, the objection to the motion to dismiss, which was

25    in response to the motion to dismissed filed by the

26    defendant, which is the subject of this litigation, that

27    document included an --

1           THE COURT:  What document?  What document?

2           MR. GUEST:  Let me just, okay, it's in the file,

3     but I will show you a copy of it, is it -- here we

4     go.

5           THE COURT:  You mean my decision?

6           MR. GUEST:  No.  The objection that was filed by

7     the defendants and the memorandum of law in support

8     thereof and it was filed on February 24th of 2009.

9           THE COURT:  Whatever that is, we're trying the

10    case today, so whatever that is not part of the case.

11          MR. GUEST:  But there are statements that are

12    made by the plaintiff in that document.

13          THE COURT:  In a document of yours?

14          MR. GUEST:  A document of theirs.  And so I wish

15    to ask, inquire about a document --

16          THE COURT:  You said the defendant, you mean the

17    plaintiff?

18          MR. GUEST:  No.  I'm sorry that I was confusing,

19    what I said was that the defendant filed the motion

20    to dismiss and the plaintiff filed the objection to

21    the motion to dismiss.

22          THE COURT:  Yes, yes.

23          MR. GUEST:  And the plaintiff's objection was

24    dated February 24, 2009 and it included both the

25    motion to dismiss and a memorandum of law in support

26    thereof.

27  BY MR. GUEST:

```
1    Q    And I would just like to ask you about statements
2    that were made in this document or attachments thereto,
3    first of all, on page 8 of the document.
4                THE COURT:    What document?   What document?
5    BY MR. GUEST:
6    Q    On page 8 of well let me get this precisely here.
7    Attached to that document --
8                THE COURT:    What are you referring to?
9                MR. GUEST:    Okay.  Page of --
10               THE COURT:    What?
11               MR. GUEST:    The objection to motion to dismiss
12        and memorandum of law in support thereof.
13               THE COURT:    Dated --
14               MR. GUEST:    Dated February 24, 2009.
15               THE COURT:    All right.  Yes.  What about it.
16   BY MR. GUEST:
17   Q    Now on page 8 of that document it reads as follows.
18   Attached to this memorandum as Exhibits A and B are the
19   assignment and assumption agreement, Exhibit A, and
20   resignation and assumption agreement, Exhibit B, between JP
21   Morgan Chase and Bank of New York, which conveyed Bank of
22   New York's interest in this matter on April 7, 2006 and
23   restating the same on October 21, 2006, well prior to the
24   date of this action being served.  And in fact, well prior
25   to the default that occasioned this actions necessity.  And
26   I will, you don't mind if I show him that page, counsel?
27               MR. MILNE:    Go right ahead.
```

1              MR. GUEST:  Okay.  You can read it, that is in
2         that objection.
3   **BY MR. GUEST:**
4     Q   Now, why did it require both the assignment and
5   assumption agreement and the resignation and assumption
6   agreement to convey Bank of New York's -- to convey JP
7   Morgan Chase's interest to the Bank of New York?
8     A   The assignment and assumption agreement conveyed the
9   interest to the Bank of New York and also as stated before
10  for ministerial purposes an additional document was
11  prepared, the resignation and assumption agreement post-
12  closing which effected the transfer, which had all ready
13  occurred on October 1, 2006.  The purpose was to have a
14  document that could be recorded in various jurisdictions, it
15  was ministerial.  So the transfer under the assignment and
16  assumption agreement on October 1, 2006 affected the
17  transfer and the transfer was complete at that point in time
18  whether or not a resignation and assumption agreement was
19  done later.
20    Q   May I just ask for a bit of clarification, when you
21  say that it was complete, the transfer was complete, what
22  did the assignment and assumption agreement transfer?
23    A   In the document --
24              THE COURT:  It's Exhibit 3.  We've gone over
25         that about twelve times.
26              MR. GUEST:  I'm sorry.  I'm sorry.
27  **BY MR. GUEST:**

1    Q    Did it include the right to become successor trustee?

2    A    It did.

3    Q    All though does it mention successor trustee?

4              MR. MILNE:  Objection.

5              THE COURT:  No.  That's a legitimate cross-

6         examination question.  I said fourteen times in this

7         case where in Exhibit 3; do you see a mention of a

8         transfer of trusteeship and answer's been its not

9         there in Exhibit 3, that's what he's asking.  But

10        we've gone over this fourteen times.

11             MR. GUEST:  I didn't think he had answered it.

12        If he has, then a simple it's not there.

13             THE COURT:  Show him Exhibit 3, I thought I

14        asked him this four times.

15             MR. GUEST:  Did he answer it?

16             THE COURT:  Yes.

17             MR. GUEST:  Okay.  All right.

18             THE COURT:  If you want to show it to him again,

19        do it.  I showed him Exhibit 3.

20             MR. GUEST: Okay.  Let me show it to just to --

21        well he's reviewed it a few times all ready, so I

22        thought -- you need more time, that will be fine.

23             THE WITNESS:  No.  Actually, I don't need any

24        more time.

25             MR. GUEST:  All right.

26             THE WITNESS:  This transfers --

27    BY MR. GUEST:

1   Q   No.   I was asking if it affected the transfer of the
2   trusteeship, you said it had --
3              THE COURT:   That's not the question.   Don't ask
4              --
5              MR. GUEST:   He answered that it did and then my
6              next question was whether or not the successor
7              trusteeship is mentioned in the assignment and
8              assumption agreement, so that's the question that's
9              before you?
10             THE WITNESS:   The assignment and assumption
11             agreement does not mention the succession as a
12             trustee.
13             THE COURT:   Yes.   Exhibit 3 does not mention it.
14             MR. GUEST:   Okay.
15  **BY MR. GUEST:**
16  Q   Now, I'd like to ask you then Defendant's Exhibit A,
17  you indicated that this document the agreement of
18  resignation and assumption was for purely ministerial
19  purposes?
20  A   Yes.
21  Q   And what ministerial purposes would that be?
22  A   As I mentioned before, at times post-closing there
23  would be a need to have a document that could be recorded in
24  a particular jurisdiction and there was a desire to have a
25  manageable document and not a very large document to file,
26  and that's the purpose that this document serves.
27  Q   And so that document was required in order to prove

1  to the particular jurisdiction that the trusteeship had been
2  effectively transferred?
3              MR. MILNE:  Objection, that's a
4          mischaracterization of his testimony.  I think it's
5          also argumentative, but other then that I think it's
6          fine.
7              THE COURT:  I'll allow the question.
8  **BY MR. GUEST:**
9  Q    Is that why?
10 A    I would not necessarily say required in that it could
11 have been -- we could have filed the full assignment and
12 assumption agreement.  It was a means to accomplish using
13 this document was a means to accomplish the recording of the
14 sale.
15 Q    And what was it about the recordation process that
16 required that you prepare and file a resignation and
17 assumption agreement rather then the agreements that had all
18 ready been executed?
19             MR. MILNE:  Your Honor, I'm just going to
20         object.  This is really closing argument.  What
21         counsel wants to argue is that the resignation
22         agreement means that that's the only way to convey
23         the trustee rights, that's a closing argument.
24             THE COURT:  He is not arguing.  He has a right
25         to inquire about that.  Objection overruled.
26             THE WITNESS:  It was used for the purposes of
27         providing a document so that that particular

54

```
 1              jurisdiction would have something that would document
 2              the sale that occurred, had all ready occurred, and
 3              the succession to trustee by the Bank of New York
 4              that had occurred on October 1, 2006.
 5    BY MR. GUEST:
 6       Q    This document then, resignation and assumption
 7    agreement, it's your testimony that that document did not
 8    transfer assets or transfer the trusteeship to the Bank of
 9    New York?
10       A    This document does not -- the sale of the entire
11    corporate trust business and the rights and the accounts to
12    be trustee, if you're referring to this document as the
13    assignment and assumption agreement?
14       Q    The resignation and assumption agreement.
15       A    The transfer of the business of Chase to the Bank of
16    New York was done with the assignment and assumption
17    agreement.  This is further documentation of the --
18              THE COURT:  This is the resignation.
19              THE WITNESS:  The resignation and assumption
20         agreement further documents what all ready occurred.
21    BY MR. GUEST:
22       Q    But it was unnecessary, is that your testimony?  Was
23    the resignation and assumption agreement unnecessary except
24    for filing purposes?
25       A    I don't have my own opinion about that.
26       Q    Now the resignation and assumption agreement in
27    addition refers to schedules, are those schedules attached
```

1   to the document?

2   A   The resignation and assumption agreement?

3   Q   Yes.

4   A   The one that is in evidence does not have anything

5   attached to it, otherwise I would not know, I can only know

6   what I have in my hand.

7               MR. MILNE:   Your Honor, I had made --

8   BY MR. GUEST:

9   Q   Schedule, let me ask this now.   The assignment and

10  assumption agreement has a schedule A that is attached to

11  it?

12              MR. MILNE:   I'm sorry, which exhibit are we

13          referring to, are you trying to argue from a document

14          that is not in evidence yet?

15  BY MR. GUEST:

16  Q   No. I apologize, I forgot that this was put in as a

17  defendant's exhibit; this is Defendant's Exhibit B.   And we

18  established yesterday that that document had been attached

19  to the assignment and assumption agreement.

20              MR. MILNE:   Your Honor, I'm going to object to

21          the characterization of his testimony, first of all

22          we weren't here yesterday, and secondly, the fact

23          that he's attempting argue was established wasn't

24          established, not based on my recollection, so I want

25          the record to reflect that objection, but we can

26          proceed.   I am going to also say though, I want an

27          opportunity for redirect because my client is a New

1    Jersey resident, it's Friday afternoon, and this

2    cross-examination is approaching five hours going

3    back to the last day, so this becoming outrageous.

4         MR. GUEST:   I think I'm entitled to ask the

5    witness the questions and I would just like to know

6    and I believe it was established that schedule A had

7    been attached to the assignment and assumption

8    agreement.

9         MR MILNE:   Objection.   The exhibit in evidence

10    doesn't have that schedule and it hasn't been

11    established except apparently in your perception, but

12    the record doesn't show that.

13         THE COURT:   Why don't you --

14         MR. MILNE:   The exhibit doesn't have it.

15         MR. GUEST:   I will -- okay.

16   **BY MR. GUEST:**

17   Q    I just showed you Defendant's Exhibit B, which is

18   schedule A and I believe that we established at the last

19   hearing that this schedule A is a copy, a true and correct

20   copy of the schedule A that was attached to the assignment

21   and assumption agreement when it was submitted by the

22   plaintiff in this court?

23         MR. MILNE:   Objection.   The exhibit came in

24    because counsel asked for the Court to take judicial

25    notice of the document in the court file is my

26    recollection of how that exhibit came to be.

27         THE COURT:   And then he's asking, that's exactly

1          what he's asking, was that exhibit A attached to the

2          assignment and assumption agreement, which was filed

3          in opposition to the motion to dismiss.  And look,

4          let's agree it was because it's in the file, so go on

5          please.

6  **BY MR. GUEST:**

7     Q    Now does that schedule A make that assignment and

8  assumption agreement complete?

9               MR. MILNE:  I'm going to object on a parole

10         evidence ground because the evidence that came in on

11         Exhibit, and I don't remember the number, so I need

12         to refer, Exhibit 3 has all ready come in.  Exhibit 3

13         is an exhibit and it does not contain that schedule,

14         so I'm going to argue because counsel didn't object

15         when it was offered original, he could have but he

16         didn't --

17              MR. GUEST:  Object --

18              MR. MILNE:  Let me finish my argument, counsel.

19              MR. GUEST:  What did you just say?

20              MR. MILNE:  Exhibit 3 came into evidence and

21         there was no objection to the authenticity of that

22         document when it came into the court record, so to

23         the extent that he wants to now argue that it's an

24         incomplete document, he waived that objection when it

25         came into evidence because he never objected on that

26         basis.

27              MR. GUEST:  I believe I did object.

1            MR. MILNE: Let me finish my argument, sir.

2            You've had five hours of cross-examination, okay.

3            MR. GUEST: I just don't want you to say

4            anything inaccurate.

5            MR. MILNE: The Court can take judicial notice

6            of the schedule, that's fine. The Court, I think,

7            has all ready done that and the schedule is in

8            evidence. But the document that came in, came in

9            without that schedule and on that basis I'm going to

10            object to his question because he can't not change

11            the document retroactively, he should have put a

12            foundational objection in at the time and he didn't

13            do it.

14            THE COURT: We marked as Exhibit 4a for

15            Identification the entire schedule of all the assets

16            transferred, 4a is that bulky document. And this,

17            his Exhibit B is your, as I understand it, your

18            extraction of 4a for Identification alluded only to

19            this specific asset.

20            MR. MILNE: Right.

21 **BY MR. GUEST:**

22    Q    Well, let me ask another question. The assignment

23 and assumption agreement, which Bank of New York entity is

24 named in that document?

25    A    The Bank of New York.

26            MR. MILNE: Your Honor, we've all ready been

27            down this line of questioning and I had to object

1    because counsel is trying to limit the entities in
2    there.  The document is in evidence, it speaks for
3    itself.  And again, I want an opportunity for
4    redirect on this endless cross-examination.
5        THE COURT:  I'm not going to allow time to
6    tyrannize the full explanation of this case, if it
7    goes on beyond today, I can't control it.  It's a
8    very important case.
9        MR. MILNE:  And equally important is my
10   opportunity to redirect examination.
11       THE COURT:  Absolutely.  And you're going to
12   have all the time in the world and if it's not today,
13   it will be next week, but please move on.  You
14   certainly are repeating.
15       MR. GUEST:  I'm trying to.
16   **BY MR. GUEST:**
17   Q   Now, would you just read the agreement?  In the first
18   paragraph of the assignment and assumption agreement, which
19   is Exhibit 3, Plaintiff's Exhibit 3.
20   A   I don't have it anymore.
21   Q   Oh, you don't have it anymore.  Would you just read
22   that introduction, please?
23   A   The first paragraph?
24   Q   First paragraph.
25   A   This assignment and assumption agreement, this
26   agreement, dated as of October 1, 2006 is by and among Chase
27   Manhattan Bank USA National Association, JP Morgan Trust

1   Company National Association, and JP Morgan Chase Bank
2   National Association, each a wholly owned subsidiary of JPM,
3   the assigners, and the Bank of New York, a wholly owned
4   subsidiary of BNY, the assignee.
5       Q    Let me must ask you a question, sir.  Just take a
6   look at that agreement, does it say and the Bank of New York
7   Trust Company National Association a wholly owned subsidiary
8   of BNY?
9       A    No.  It does not.
10      Q    It does not?
11      A    I don't believe so.  The Bank of New York National
12  Association.
13              MR. MILNE:  I'm sorry; can you put the document
14          here?
15              MR. GUEST:  Your Honor, the document has been
16          changed from what was submitted into the -- by the
17          plaintiffs in support of the objection to --
18              THE COURT:  You mean Exhibit 3 is different?
19              MR. GUEST:  Yes.  It is different.
20              THE COURT:  Different from what?
21              MR. MILNE:  Different from what?
22              MR. GUEST:  Well, their motion -- objection to
23          motion to dismiss memorandum of law, which I'm sure
24          is in the Court's records.  If you look at the
25          exhibit attached to that, it has been altered.
26              THE COURT:  That's a pretty serious -- let me
27          see that, here's the Court's copy, here's what was

1           filed, let me see Exhibit 3?

2                   MR. GUEST:  The Judge is asking for a copy, for

3           the exhibit.

4                   THE WITNESS:  Oh, sorry.

5                   THE COURT:  All right.  Now you want to inquire?

6                   MR. GUEST:  Yes.

7                   THE COURT:  I think you should put this exhibit

8           into evidence.

9                   MR. GUEST:  Yes.  I would like to introduce that

10          exhibit now, Your Honor.  Just give me one second,

11          Your Honor.  Now let me --

12                  THE COURT:  Just a minute.  Here's your exhibit

13          that was filed.  That's the exhibit that was in the

14          file submitted by the plaintiff.

15                  MR. GUEST:  And where is the exhibit?

16                  THE CLERK:  It's right there.

17                  MR. GUEST:  Okay.

18   **BY MR. GUEST:**

19      Q   Now, let me -- this is Defendant's Exhibit C, now sir

20      --

21                  THE COURT:  You want to show it to him?

22                  MR. MILNE:  Just so I'm clear, Exhibit C is

23          what?  Is it a copy from the court file?

24                  MR. GUEST:  It's a copy from the court's file --

25                  MR. MILNE:  Would you please have it stapled?

26                  MR. GUEST:  It was attached to the -- let me

27          just take a look, yes.

```
 1                    MR. MILNE:  Now you're offering that as a full
 2            exhibit?
 3                    MR. GUEST:  Yes.  I am.
 4                    MR. MILNE:  Okay.  No objection.
 5                    MR. GUEST:  Okay.
 6   BY MR. GUEST:
 7     Q    Now I'd like for you to take a look at these two
 8   documents.  Now this Plaintiff's Exhibit 3 was introduced in
 9   connection with this proceeding and this is the one that you
10   were formerly reading from?
11     A    Right.
12     Q    That said Bank of New York.
13     A    Right.
14     Q    And I'd just like for you to look at the signature
15   page and what does it say on the signature page?
16     A    The Bank of New York.
17     Q    Okay.  Now let's take a look at what --
18                    THE COURT:  Which one says that?
19                    MR. GUEST:  This is Plaintiff's Exhibit 3, the
20            assignment and assumption agreement.
21   BY MR. GUEST:
22     Q    Now, I would like you to take a look at this
23   document.
24                    MR. MILNE:  What exhibit?
25                    MR. GUEST:  Defendant's Exhibit C.
26                    MR. MILNE:  Okay.
27   BY MR. GUEST:
```

1    Q    The assignment and assumption agreement. Now I would
2    like for you just to read the lead into that, does this name
3    Bank of New York or another entity?

4    A    This names the Bank of New York Trust Company
5    National Association.

6    Q    Thank you. Now I'd you to look at the signature page
7    of Defendant's Exhibit C, and does it say Bank of New York
8    or the Bank of New York Trust Company?

9    A    The Bank of New York Trust Company, NA.

10   Q    So, can you explain to me why the document that was
11   submitted into court in connection with the objection to
12   motion to dismiss, which is Defendant's Exhibit C, is
13   different from the document that was submitted as
14   Plaintiff's Exhibit 3?

15   A    I cannot explain why that one is different.

16   Q    But they're both executed and both the signature page
17   and the lead in paragraph of Defendant's Exhibit C has been
18   changed in Plaintiff's Exhibit 3?

19              MR. MILNE: I'm going to object to that
20         characterization, changed. Clearly, apparently, two
21         different designations of the parties to the
22         agreement based on the documents and there may be
23         legitimate reasons for that, but to say that the
24         document was changed.

25              MR. GUEST: I asked him to explain.

26              MR. MILNE: I'm just going to object to the
27         characterization of the question, that's all.

1        MR. GUEST: Okay. I'll change the question.
2   **BY MR. GUEST:**

3   Q   Can you explain to me why these two documents are
4   different?

5   A   I can explain that the Bank of New York and the Bank
6   of New York Trust Company NA are two different banking
7   entities, subsidiaries of the holding company, the Bank of
8   New York Company, Inc. I'm an employee of the Bank of New
9   York and this document is in reference to the assumption
10  from the Bank of New York of assets and this is the one
11  document that I've been speaking to, since it has to do with
12  the Bank of New York becoming the successor trustee under
13  the pooling and servicing agreement for BS ALT A 2005-9. I
14  don't have knowledge of whether or not another Bank of New
15  York entity, that one in particular, the Bank of New York
16  Trust Company NA, which is separate from the Bank of New
17  York entered into a similar agreement.

18  Q   For the same assets?

19  A   For a portion -- for the assets. I don't -- that's
20  why I can't explain it entirely except that that is a
21  legitimate entity.

22  Q   Let me just, now, the assignment and acceptance of
23  assets provision appears to me to be completely identical,
24  would you just look at it please, at both Defendant's
25  Exhibit C and Plaintiff's Exhibit 3?

26  A   Sure. There is a -- having familiarity with the
27  list, the large list of assets, I believe that -- could it

1   put it this way? Possible explanation is that list it does
2   have the name of various Bank of New York entities, anyway,
3   that's what I believe.
4            THE COURT:  Are you saying, sir, that those two,
5         Exhibit 3 and Exhibit C, may be referring to
6         different schedule of assets?
7            THE WITNESS:  May refer to parts of the same
8         schedule and it's a may.
9   **BY MR. GUEST:**
10  Q    But I thought you just a few minutes ago indicated
11  all of the assets had been transferred pursuant to the
12  assignment and assumption agreement?
13  A    That is my belief, yes.
14  Q    But now you're saying that --
15           THE COURT:  He didn't say that.  He said that
16        some of the assets were not transferred because there
17        are conditions on them so that some of the assets
18        were not transferred as of that date.
19           MR. GUEST:  I think that -- he may have said
20        that yesterday, Your Honor, but today he said that
21        they were all transferred.  And when I asked just
22        now, he said that is what he believed.
23           THE COURT:  All right.  Now he's saying that
24        each of those agreements may have referred to a
25        portion of the assets.  I thought he just said that.
26           MR. GUEST:  That's what he's saying now that
27        maybe they each had a portion of the assets.  But

1          they have both been submitted as pertaining -- as
2          transferring this pool.
3               THE COURT:  You have a question?
4               MR. GUEST:  If you don't have an answer for it,
5          I will --
6               THE WITNESS:  I thought that was a declarative
7          statement.
8   **BY MR. GUEST:**
9   Q   Well you said maybe, I guess what the maybe means is
10  that you have no personal knowledge of it, is that what
11  you're saying?
12  A   I have no personal knowledge -- well, could you
13  repeat the question, please?
14  Q   I had asked you why -- to explain why those two
15  documents differ?  They've both been submitted into court at
16  different times according to transfer the assets named a BS
17  ALT A 2005-9, and I asked whether or not you had an
18  explanation for why?
19  A   And it's a possible explanation, yes.
20  Q   And so when you say it's a possible explanation, I
21  simply -- my next question is does that mean that you don't
22  have any personal knowledge?
23  A   Personal knowledge of what in particular?
24  Q   Why they differ?
25  A   I don't, because I'm not familiar with this
26  particular document.
27               THE COURT:  Which one?  Exhibit 3 or Exhibit C?

1              THE WITNESS:  Exhibit C.

2    **BY MR. GUEST:**

3        Q    So Defendant's Exhibit C you're not familiar with?

4        A    I'm employed by the Bank of New York and I'm familiar

5    with the contract that the Bank of New York has entered

6    into.

7        Q    One last question, you had indicated that you

8    reviewed the file.  When you reviewed the file --

9        A    Which file, I'm sorry?

10       Q    You reviewed the file of BS ALT A 2005-9 specifically

11   the file that relates to Sonja Bell's loan, was there an

12   assignment and assumption agreement included in that file

13   when you picked up the file?

14       A    We don't have the assignment and assumption agreement

15   as a part of the file that is maintained for BS ALT A 2005-

16   9.  Part of my files in general for the Bank of New York is

17   the assignment and assumption agreement.

18       Q    What does that mean?  Does that mean, I mean on one

19   hand you say you don't have them in general, but part of

20   your files include the assignment and assumption agreement?

21       A    That means for each -- for BS ALT A 05-9, there is a

22   file that contains documents relating to that trust.  And we

23   have many of those for -- each trust has it's own file.

24              THE COURT:  Who is we?

25              THE WITNESS:  The Bank of New York.  And each

26        file does not contain a copy of the assignment and

27        assumption agreement.

1  BY MR. GUEST:

2    Q    But did you not testify previously that all of the BS

3  ALT A 2005-9 assets were transferred on October 1st?

4    A    That is correct.

5    Q    But two documents have been submitted, both

6  purporting to contain Sonja Bell's loan transaction and you

7  don't have any idea how that happened?

8    A    I could only speculate how that happened.

9    Q    Okay.  Now in addition I'd like to -- now plaintiff

10  submitted a motion for summary judgment in connection with

11  this foreclosure, that summary judgment was granted and in

12  connection therewith plaintiff submitted an officer's

13  certificate, which should be in the file, in the court's

14  file, now I have a copy of it here, I'd like to ask you to

15  identify that, do you recognize it?

16              THE COURT:  Mark it Exhibit D for

17          Identification.

18              THE WITNESS:  Do I recognize it?

19              MR. GUEST:  Yes.

20              THE WITNESS:  I have seen it before, yes.

21  BY MR. GUEST:

22    Q    And when did you see it before?

23    A    Approximately a week ago.

24    Q    A week ago.  So this is Defendant's Exhibit D, now

25  Diane Pickett, Vice President --

26              THE COURT:  For identification.

27              MR. GUEST:  For identification.

```
DOCKET NUMBER CV07-5013037S     :   SUPERIOR COURT

BANK OF NEW YORK                :   JUDICIAL DISTRICT

VS.                             :   HARTFORD, CONNECTICUT

SONJA BELL, ET AL               :   MAY 29, 2009
```

## C E R T I F I C A T I O N


    I hereby certify the foregoing pages are a true
and accurate transcript of the recorded proceedings of
the above referenced case, heard before the Honorable
Robert Satter, JTR, in the Hartford Superior Court,
Hartford, Connecticut, on the 29th day of May, 2009.

    Dated at Hartford, Connecticut this 2nd day of
July, 2009.


Lori Van Buren
Court Monitor

**ATTACHMENT E**



DOCKET NO.: HHD-CV-07-5013037-S      :      SUPERIOR COURT

THE BANK OF NEW YORK, AS TRUSTEE      :      J.D. of HARTFORD

V.      :      at HARTFORD

SONJA BELL, ET AL      :      October 7, 2009

### PLAINTIFF'S RESPONSES TO
### DEFENDANT'S FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION

Pursuant to the provisions of Conn. Practice Book Sec. 13-6, et seq. and 13-9, et seq., the Defendant serves the following interrogatories and request for production of documents on the Plaintiff, and request that they be answered fully, completely, and in good faith within 30 days of the date of these interrogatories and request for production.

### INSTRUCTIONS AND DEFINITIONS

A.      Answers to the Interrogatories must be furnished upon service of these Interrogatories and Requests for Production

B.      Each Interrogatory should be answered based upon your entire knowledge from all sources and all information in your possession or otherwise available to you, including information from your officers, employees, agents, representatives or consultants and information which is known by each of them. An incomplete or evasive answer is a failure to answer.

C.      If any answer is qualified, state specifically the terms of each qualification and the reasons for it. If an Interrogatory cannot be answered in full, state the part which can be answered and answer the same in full to the extent possible; state further and specifically

the reason(s) why the remainder cannot be answered.

D.      Unless otherwise specified in a particular paragraph, provide the information and documents requested for the period of three years prior to the date of filing the complaint to the present. Each Interrogatory is considered continuing, and if Plaintiff obtains information which renders its answers or one of them, incomplete or inaccurate, Plaintiff is obligated to serve amended answers on the undersigned.

E.      The terms "document" or "documents" in these Interrogatories and request for production shall refer to all writings and recorded materials, of any kind, that are or have been in the possession, control or custody of Plaintiff of which Plaintiff has knowledge, whether originals or copies. Such writings or recordings include, but are not limited to, contracts, agreements, documents, notes, rough drafts, email, interoffice memoranda, memoranda for the files, letters, research materials, correspondence, logs, diaries, forms, bank statements, tax returns, card files, books of account, journals, ledgers, invoices, diagrams, drawings, computer files, records, documents, data, print-outs or tapes, reports, statistical computations, studies, graphs, charts, minutes, manuals, pamphlets, or books of all nature and kind whether handwritten, typed, printed, mimeographed, photocopied or otherwise reproduced, all tape recordings (whether for computer, audio, or visual replay) or other written, printed, and recorded matter or tangible things on which words, phrases, symbols or information are recorded.

F.      In addition to the request in the actual interrogatory or request for production. A request to identify a document also is a request to state as applicable:

1. The date of the document;
2. The type of document;
3. The names and present addresses of the person or persons who prepared the document and of the signers and addressers of the document;
4. The name of the employer or principal whom the signers, addressers and preparers were representing;
5. The present location of the document;
6. The name and current business and home addresses of the present custodians of the original document, and any copies of it;
7. A summary of the contents of the document; and
8. If the original document was destroyed, the date and reason for or circumstances under which it was destroyed.
9. The name, address, and telephone number of each and every person who has personal knowledge such statements or documents.

G.     If any Interrogatory may be answered fully by a document, the document may be

attached in lieu of an answer if the document is marked to refer to the Interrogatory to

which it responds and a summary is provided that adequately indicates the location of the

answer of the interrogatory including page number(s), paragraphs, and appropriate

references.

H.     Whenever Defendant requests admissions or disclosure or production of

documents from Plaintiff, the responses shall be required to made on behalf of each or

both, as applicable, of the Plaintiff," as alleged and named in the complaint and/or the

party or entity named on Schedule A of the Assignment and Assumption Agreement

attached as Exhibit A of the Plaintiffs "Objection To Motion To Dismiss Due To Subject

Matter Jurisdiction" dated February 24, 2009.

I.     The term "Mortgage Documents" refers to the note and mortgage that are the

subject of the complaint and any and all documents ancillary thereto, if any.

J.       The term "Purchase Agreement" refers to the Amended and Restated Purchase and Assumption Agreement dated as of October 1, 2006 by and between The Bank of New York Company, Inc, a New York corporation, and JPMorgan Chase & Co., a Delaware corporation.

K.       The term "Assignment Agreement" refers to that agreement attached as Exhibit A to the Plaintiffs "Objection To Motion To Dismiss Due To Subject Matter Jurisdiction" dated February 24, 2009.

L.       The term "Resignation Agreement" refers to that agreement attached as Exhibit B to the Plaintiffs "Objection To Motion To Dismiss Due To Subject Matter Jurisdiction" dated February 24, 2009

M.       The term "PSA" refers to the current Pooling and Servicing Agreement or where applicable, the Pooling and Servicing Agreement in effect at the time of said event or steps taken referred to in the Admission Request.

N.       The term "the Trust" refers to the Trust or Trust Fund as defined in the PSA designated "Structured Asset Mortgage Investments II, Inc., Bear Steams ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-9" and "BS ALT A 2005-9", the alleged Plaintiff. Please provide answers for each individually when admissions regarding "the Trust" are propounded.

O.       The term "Action", when used herein, shall mean the above-captioned matter, unless the context otherwise requires.

**Special Notice**

"Sec. 13-14. Order for Compliance; Failure to Answer or Comply with Order (a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Section 13-13, or has failed to comply with the provisions of Section 13-15, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

(b) Such orders may include the following: (1) The entry of a nonsuit or default against the party failing to comply; (2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee; (3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the Action in accordance with the claim of the party obtaining the order; (4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence; (5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed."

5

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

## INTERROGATORIES

1. Did the Plaintiff have standing to commence the foreclosure action against the Defendant at the time Plaintiff commenced suit? Please state the following:

    i. Each and every reason for your responses;

    ii. Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii. limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradict or tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory above. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Yes, the Plaintiff has standing, and had standing when suit was filed. Plaintiff's suit was filed when the original note was in the possession of Plaintiff's counsel. The original note has an endorsement to JPMorgan Chase Bank, N.A., as Trustee, which was the original Trustee. Under CGS 42a -3-110, a successor trustee may enforce the instrument, without further endorsement.

In addition, the Plaintiff became the successor trustee to BS ALT A 2005-9, when Chase sold its corporate trust assets to the Plaintiff, The Bank of New York, now known as The Bank of New York Mellon. The Purchase and Assumption Agreement, [Exhibit 2], details this transaction. The assets acquired flowed into at least two corporate entities: (1) The Bank of New York, now known as The Bank of New York Mellon and (2) The Bank of New York Trust Company, N.A., now known as The Bank of New York Mellon Trust Company, N.A. The BS ALT A 2005-9 assets were acquired by Plaintiff.

Further evidence of Plaintiff acting as a Trustee for BS ALT A 2005-9 is the

schedule of loans to Exhibit 2, which are Exhibits 4 and 4A, which identifies BS
ALT A 2005-9

Additional evidence of Plaintiff acting as successor trustee to JPMorgan Chase
Bank, N.A., is the certification [Exhibit 5] by the Master Servicer, Wells Fargo,
which final certification is required by the Pooling and Servicing Agreement,
[Exhibit 8], at section 2.02(b).

Further evidence of Plaintiff acting as Trustee for BS ALT A is the testimony of
Glenn Mitchell, at which the Defendants were present.

The persons with information regarding standing are Glenn Mitchell, Employee of
The Bank of New York Mellon, formerly known as The Bank of New York.

No documents have been received by counsel for the Plaintiff which show that
any other entities have standing to prosecute this action except the Plaintiff in
this case.

2.
**RESPONSE:** There is no Interrogatory #2.

3.      The complaint indicates that Plaintiff the Holder of the note, as "holder" is defined
        by Section 42a-1-201(21)(A) of the Connecticut General Statutes. Was Plaintiff
        the "holder", as defined by Section 42a-1-201(21)(A) of the Connecticut General
        Statutes and is Plaintiff now the "holder", as defined by Section 42a-1-201(21)(A)
        of the Connecticut General Statutes? Please state the following:

        i.      Each and every reason for your responses;

        ii.     Identify each and every witness who has or may have, or knows or may
                know, any information that supports, tends to support, contradicts, tends to
                contradict, refutes or tends to refute any or all of your responses, including
                the name, address, title, telephone number, and address for service of legal
                process;

        iv.     Describe each and every document either (1) in your possession or control,
                or (2) which you have authority to obtain that either (a) supports or tends to
                support your responses or (b) contradicts or refutes or tends to contradict
                your responses. Your answer must include, without limitation, all such
                documents that, you believe or know exist or previously existed, whether
                or not such documents are or were (1) in your possession or control, or (2)

you had or have authority to obtain them, that support, tend to support, contradict, tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See answer to Interrogatory #1

4.     Was Plaintiff the holder of the mortgage, as stated in its complaint, prior to the Commencement of this Action? Please state the following:

    i.     Each and every reason for your responses;

    ii.     Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.     Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradicts or refutes or tends to contradict or refute your responses. Your answer must include, without limitation, all such documents that you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradict tor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This Interrogatory does not make sense. Plaintiff holds the Note. A plaintiff in a Connecticut mortgage foreclosure does not need title to the mortgage to enforce the mortgage. C.G.S. 49-17. Plaintiff is the holder of the note, for the reasons set forth in the answer to Interrogatory #1.

5.    Is Plaintiff the owner of the note? Please state the following:

    i.    Each and every reason for your responses;

    ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    ii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradict or tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
The Pooling & Servicing Agreement, Exhibit 8, states that: "The Trustee acknowledges the sale, transfer and assignment of the Trust Fund to it...by the Depositor and receipt of....and declares that it holds, the documents (or certified copies thereof) delivered to it or the Custodian, as its agent, pursuant to Section 2.01, and declares that it...will continue to hold those documents and any amendments...and all other trust assets of the Trust Fund delivered to it as Trustee in trust for the use and benefit of all present and future Holders of the Certificates."

In addition, the Bell Loan is identified in the Schedule of Loans to BS ALT A 2005-9, as set forth in Exhibit 4 & 4A.

6.    Is Defendant's mortgage the property of a trust? Please state the following:

i.      Each and every reason for your responses; Response:

iii.    Identify each and every witness who has or may have, or knows or may
        know, any information that supports, tends to support, contradicts, tends to
        contradict, refutes or tends to refute any or all of your responses, including
        the name, address, title, telephone number, and address for service of legal
        process;

iv.     Describe each and every document either (1) in your possession or control,
        or (2) which you have authority to obtain that either (a) supports or tends to
        support your responses or (b) contradict or refute or tend to contradict your
        responses. Your answer must include, without limitation, all such
        documents that, you believe or know exist or previously existed whether or
        not such documents are or were (1) in your possession or control, or (2)
        you had or have authority to obtain them, that support, tend to support,
        contradict or tend to contradict, or refute or tend to refute, your responses.
        Further, your response should include any information that may lead to the
        discovery of such document including, but not limited to, any information
        requested above in ii. of this interrogatory. Your answer must also include
        the last date, time, and place of your last contact with or knowledge of the
        existence of said documents.

v.      Describe each and every document required by law required in the
        implementation of the securitization and the management of the Trust assets
        including, but not limited to, documents required to solicit, sell, monitor,
        service, report and otherwise manage the securitization, securities or
        certificates of the Trust, or the Trust assets, which contain the Defendant's
        mortgage documents or information related thereto including such
        documents which may have been revised, amended, otherwise updated, or
        have multiple versions.

vi.     Describe each and every document that is listed in the PSA, Prospectus,
        Indenture, Trust Agreement, Custodian Agreement, Master Servicing
        Agreement, Securities Administrator Agreement, or any side agreements,
        compensation agreements, insurance Agreements, CAP contracts,
        indemnity agreements, swap agreements, synthetic swap agreements
        between any of the parties related to the assets of the Trust containing the
        mortgage documents of the Defendant including such documents which
        may have been revised, amended, otherwise updated, or have multiple
        versions.

vii.    Describe each and every document including, but not limit to, documents capitalizing, depositing assets in, replacing assets in, disposing assets in, managing, administrating, servicing, insuring, hedging risk of, and investing assets and excess or residual profits of the Trust the holding the mortgage documents of the Defendant including any side agreements between the parties related to servicing, document storage and retention, risk hedging, insurance, excess and residual profits, compensation of the parties, payment to the certificate (securities) holders, and ownership interest, past and present, of the organization and parties that handle the individual responsibilities of the Trust.

viii.   Describe each and every witness that can verify the authenticity through his or her own personal knowledge of the documents asked to be described in iii - vi herein, including the name, address, title, telephone number, and address for service of legal process;

**RESPONSE:**
See Exhibits introduced into evidence which are incorporated by reference.


7.      Did the Plaintiff have actual knowledge of all of the facts in the complaint or did it rely solely on the statements of others? Please state the following: Response specifically stating which facts the Plaintiff had actual knowledge of:

i.      Each and every reason for your responses;

ii.     Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradict or tend to contradict, or refute or tend to refute, your responses.

Further, your response should include any information that may lead to the discovery of such document, including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents. ·

**RESPONSE:**
The referral in this case came from Wells Fargo. Wells Fargo is defined under the pooling and servicing agreement, Section 3.01, as the Master Servicer, with the power to administer loans. Wells Fargo, in its capacity as the Master Servicer, provided various data to the law firm, involving identification of the trustee of BS ALT A 2005-9. Other data was gleaned from a title search. Counsel for the Plaintiff was in possession of the original note on 8/21/07. Plaintiff relied on Wells Fargo pursuant to and in connection with its role and obligations under the pooling and servicing agreement.

8.   Had the Plaintiff ever been in physical possession of Defendant's Mortgage Documents prior to the commencement of this Action? Please state the following:

   i.   Each and every reason for your responses;

   ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradict or tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Plaintiff's counsel was in possession of the original note as of 8/21/07.

9.      If Plaintiff is in possession of the note, was the Plaintiff forwarded the note from
        then Custodian of the Trust documents as identified under the PSA in effect before
        the commencement of this Action? Please state the following:

        i.      Each and every reason for your responses;

        ii.     Identify each and every witness who has or may have, or knows or may
                know, any information that supports, tends to support, contradicts, tends to
                contradict, refutes or tends to refute any or all of your responses, including
                the name, address, title, telephone number, and address for service of legal
                process;

        iii.    Describe each and every document either (1) in your possession or control,
                or (2) which you have authority to obtain that either (a) supports or tends to
                support your responses or (b) contradict or refute or tend to contradict your
                responses. Your answer must include, without limitation, all such
                documents that, you believe or know exist or previously existed whether or
                not such documents are or were (1) in your possession or control, or (2)
                you had or have authority to obtain them, that support, tend to support,
                contradict or tend to contradict, or refute or tend to refute, your responses.
                Further, your response should include any information that may lead to the
                discovery of such document including, but not limited to, any information
                requested above in ii. of this interrogatory. Your answer must also include
                the last date, time, and place of your last contact with or knowledge of the
                existence of said documents.

**RESPONSE:**
Plaintiff's counsel received the original note from Wells Fargo, the Custodian and
Master Servicer, on 8/21/07.

10.     Does the allonge of the note indicate all of the transfers and/or assignments of the
note made since the issuance of the note? Please state the following: Response including
listing any and all transfers and/or assignments including the dates of such transfers and/or
assignments of the note from its inception to the present:

        i.      Each and every reason for your responses;

ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
To the best of our knowledge at this time, yes.

11.   Did Plaintiff have the authority to pursue this Action at the commencement of this Action?

i.   Each and every reason for your responses;

ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or

have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Yes. See responses to Interrogatory #7 and #1.

12.    Was China Brown a "Responsible Officer of the Trustee's Corporate Trust Office" and/or bona fide employee and/or Vice President of the Bank of New York and/or the Plaintiff (i) on April 8, 2009 or when on the date that Plaintiffs counsel submitted her affidavit in support of the Plaintiffs Motion for Summary Judgment, on or about April 18, 2009 and (ii) on the date that the mortgage and note were allegedly forwarded to the Plaintiffs counsel prior to the commencement of this action? Please state the following:

      i.    Each and every reason for your responses;

      ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

      iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

      iv.    Describe and list the employment history of China Brown with the Plaintiff, Master Servicer, the Trust, Custodian, or any other party that

       manages, administers, services, or provides services any other capacity to
       the Trust over last 4 years.

v.     Describe and list each and every time that China Brown has served as a
       witness in a foreclosure action or other legal proceeding related to
       servicing, administering, or managing real estate or real estate mortgage or
       any interest therein over the last 4 years.

vi.    Describe and list each and every time that China Brown has submitted
       affidavits and appeared as a witness in a legal proceeding related to
       servicing, administering, or managing real estate or real estate mortgage or
       any interest therein over the last 4 years.

vii.   Describe and list each and every time including date, court, location of the
       court, Judge hearing the case, case citation, contact information of the
       counsel for the defendant that an affidavit of China Brown has been found
       to contain factual errors related to information that she has stated that she is
       familiar or has personal knowledge in a legal proceeding related to
       servicing, administering, or managing real estate or real estate mortgages or
       any interest therein over the last 4 years.

viii.  Fully describe the factual errors related to each affidavit identified in vii
       above.

**RESPONSE:**
See Response to Interrogatory #39.


13.   Does BS ALT 2005-9, exist as a legal entity that can buy, sell, or manage real
      estate, real estate mortgages, or any interest therein or as an entity that can sue or be
      sued or as a Statutory Trust or a Foreign Statutory Trust under the Connecticut
      Statutory Trust Act, or a Real Estate Mortgage Investment Conduit defined by the
      USC Section 860D of the United States Internal Revenue Code of 1986? Please
      state the following:

i.     Please list the true legal name of the trust that contains the mortgage
       documents of the Defendant here including the series if any or sub REMIC
       or other such legal description required by law to identify the trust under
       the laws of the state of its organization and the statute of its governance;

ii.    Each and every reason for your responses in both 13. and 13. i.;

iii.   Identify each and every witness who has or may have, or knows or may
       know, any information that supports, tends to support, contradicts, tends to
       contradict, refutes or tends to refute any or all of your responses, including
       the name, address, title, telephone number, and address for service of legal
       process for your responses in 13. and 13. i. above;

iv.    Describe each and every document either (1) in your possession or control,
       or (2) which you have authority to obtain that either (a) supports or tends to
       support your responses or (b) contradict or refute or tend to contradict your
       responses. Your answer must include, without limitation, all such
       documents that, you believe or know exist or previously existed whether or
       not such documents are or were (1) in your possession or control, or (2)
       you had or have authority to obtain them, that support, tend to support,
       contradictor tend to contradict, or refute or tend to refute, your responses.
       Further, your response should include any information that may lead to the
       discovery of such document including, but not limited to, any information
       requested above in ii. of this interrogatory. Your answer must also include
       the last date, time, and place of your last contact with or knowledge of the
       existence of said documents for your responses in 11. and 11. i. above.

**RESPONSE:**
Plaintiff is the holder of the note, as set forth in the PSA. In addition, Plaintiff is in
possession of the original note, and was in possession of the original note when
suit was filed. The tax status of the trust is not relevant to the mortgage
foreclosure as it relates to standing. Finally, the PSA is in evidence [Exhibit 8],
and speaks for itself.

14.   Did the Purchase Agreement effectively convey to the Plaintiff the authority to act
      as, and the role and status of, successor trustee with respect to all of the assets
      allegedly included as part of BS ALT 2005-9 on October 1, 2006? Please state the
      following:

      i.    Each and every reason for your responses;

      ii.   Identify each and every witness who has or may have, or knows or may
            know, any information that supports, tends to support, contradicts, tends to
            contradict, refutes or tends to refute any or all of your responses, including
            the name, address, title, telephone number, and address for service of legal
            process;

      iii.  Describe each and every document either (1) in your possession or control,
            or (2) which you have authority to obtain that either (a) supports or tends to

support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

## RESPONSE:

Yes, see documents produced and marked as Exhibits, plus testimony of Glenn Mitchell, which is incorporated by reference.

15. Does the the Purchase Agreement give the Plaintiff the authority over the Trust on October 1, 2006. Please state the following:

    i.    Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the

existence of said documents.

**RESPONSE:**
This action was filed in September 2007. At that time, Plaintiff was the successor Trustee of BS ALT A 2005-9. See Testimony of Glenn Mitchell, incorporated by reference, and response to Interrogatory #1.

16.    Did Plaintiff know before the commencement of this Action that the the Purchase Agreement did not give the Plaintiff the authority over BS ALT 2005-9 on October 1, 2006? Please state the following:

    i.    Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This action was filed in September 2007, at which time Plaintiff was the successor trustee to JPMorgan Chase Bank, N.A. The facts supporting this are contained in the answer to Interrogatory #1. In addition, Plaintiff was in possession of the original note prior to filing the action. The Purchase Agreement is in evidence as Exhibit 2.

17. Was the Assignment Agreement executed on October 1, 2006? Please state the following:

    i.   Each and every reason for your responses;

    ii.  Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii. Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
The "Assignment Agreement" was dated as of October 1, 2006 and is in evidence as Exhibit 3. The Assignment Agreement, between JP Morgan and The Bank of New York Trust Company, National Association did not transfer the BS Alt A 2005-9 assets to the Plaintiff. The Assignment Agreement, between JP Morgan and The Bank of New York, transferred the BS Alt A 2005-9 assets to Plaintiff, which acts as trustee under the PSA. (Exhibit C).

18. Did the Assignment Agreement convey, assign, or otherwise transfer to The Bank of New York rights as successor trustee to the TRUST prior to the commencement of this Action? Please state the following:

    i.   Each and every reason for your responses;

    ii.  Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

the name, address, title, telephone number, and address for service of legal process;

iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See Answers to #1 and # 17.

19.    Was Schedule A of the Assignment Agreement attached to the Assignment Agreement prior to the commencement of this Action? Please state the following:

i.    Each and every reason for your responses;

ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information

requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
No. The Schedule was prepared for this case, but was attached to the wrong document. The schedule "A" was a part of the Resignation Agreement. However, the schedule of all loans acquired from JPMorgan by The Bank of New York, which is referenced in paragraph 1 of the Assignment Agreement is in evidence as Exhibits 4 and 4A, which are schedules to Exhibit 2.

20.   Did the Plaintiff know that the Schedule A of the Assignment Agreement was not attached to the Assignment Agreement prior to the commencement of this Action? Please state the following:

i.    Each and every reason for your responses;

ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.  Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
The transfer of assets was accomplished by Exhibits 2, 4, and 4A, as well as by operation of law.

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

21.    The execution and delivery of the Resignation Agreement was necessary and required in order to convey rights as successor trustee to The Bank of New York?

    i.    Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Not true. See testimony from Glenn Mitchell, and the exhibits in evidence.

22.    Were the signatories of the Assignment Agreement informed by the Plaintiff or his counsel that the Schedule A of the Assignment Agreement was attached thereto prior to its submission in court? Please state the following:
    i.    Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control,

or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Upon information and belief, Schedule "A" was created for use in this case. To be clear, Schedule "A" refers to all assets acquired under the Purchase Agreement [Exhibit 2], between JP Morgan Chase and The Bank of New York Company, Inc. These assets then flowed into various subsidiaries of the holding company.

23.   Was the Resignation Agreement executed and delivered on or before October 1, 2006? Please state the following:

   i.   Each and every reason for your responses;

   ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include

the last date, time, and place of your last contact with or knowledge of the
existence of said documents.

**RESPONSE:**
The document speaks for itself, as well as Glenn Mitchell's testimony regarding
the agreement. "Delivery" is a legal term, not a fact.

24.  Was the Resignation Agreement executed or delivered on or before September 5,
2007? Please state the following:

  i.  Each and every reason for your responses;

  ii.  Identify each and every witness who has or may have, or knows or may
know, any information that supports, tends to support, contradicts, tends to
contradict, refutes or tends to refute any or all of your responses, including
the name, address, title, telephone number, and address for service of legal
process;

  iii.  Describe each and every document either (1) in your possession or control,
or (2) which you have authority to obtain that either (a) supports or tends to
support your responses or (b) contradict or refute or tend to contradict your
responses. Your answer must include, without limitation, all such
documents that, you believe or know exist or previously existed whether or
not such documents are or were (1) in your possession or control, or (2)
you had or have authority to obtain them, that support, tend to support,
contradictor tend to contradict, or refute or tend to refute, your responses.
Further, your response should include any information that may lead to the
discovery of such document including, but not limited to, any information
requested above in ii. of this interrogatory. Your answer must also include
the last date, time, and place of your last contact with or knowledge of the
existence of said documents.

**RESPONSE:**
See answer to Interrogatories #1 and #23.

25.  Why the Resignation Agreement not executed and delivered until on or before
December 15, 2008? Please state the following:

  i.  Each and every reason for your responses;

  ii.  Identify each and every witness who has or may have, or knows or may
know, any information that supports, tends to support, contradicts, tends to
contradict, refutes or tends to refute any or all of your responses, including

the name, address, title, telephone number, and address for service of legal process;

iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See answer to Interrogatories #1 and #23.

26.   Does Assignment Agreement convey interest in real estate under the New York Real Property laws of the State of New York? Please state the following:

i.   Each and every reason for your responses;

ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information

HUNT LEIBERT JACOBSON, P.C.  ●  ATTORNEYS AT LAW
50 WESTON STREET  ●  HARTFORD, CONNECTICUT 06120  ●  (860) 808-0606  ●  JURIS NO. 101589

requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This asks for a legal conclusion and the document speaks for itself.

27. Could the Assignment Agreement be read into evidence to prove the proper execution and acknowledgment of a purported conveyance of an interest in real estate under the Real Property Laws of the State of New York.? Please state the following:

   i.   Each and every reason for your responses;

   ii.  Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii. Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This asks for a legal conclusion and the document speaks for itself.

28. Is the Plaintiff aware that courts in the State of New York have determined that agreements relating to interests in real estate only become effective on or after the date upon which such agreements are executed and properly acknowledged, regardless of any attempts to back date such agreements? Please state the

following:

i.  Each and every reason for your responses;

ii.  Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.  Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This note and mortgage are enforceable as between the parties. New York law does not apply to a Connecticut foreclosure.

29.  Have State and/or Federal Courts, during the period spanning from January 1, 2004 through the date of your response, ruled, in other actions or proceedings, that the Plaintiff or the Bank of New York as Trustee for other trusts lacked standing to bring a foreclosure action for reasons including, but not limited to, improper documentation which was back dated or improper in other ways? Please state the following:

i.  Each and every reason for your responses;

ii.  Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including

the name, address, title, telephone number, and address for service of legal process;

iii.     Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Connecticut courts have permitted the prosecution of foreclosures by Plaintiff. What occurred with other trusts in other cases is not relevant and is a fishing expedition.

30.     Have State and/or Federal Court(s), during the period spanning from January 1, 2004 through the date of your response, ruled, in other actions or proceedings, that the Plaintiff and/or the Bank of New York as Trustee lacked standing to bring a foreclosure action  involving one or more of the assets allegedly conveyed to The Bank of New York, as Trustee through the alleged acquisition of the trust business of JP Morgan Chase, NA. Please state the following:

   i.     Each and every reason for your responses;

   ii.     Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.     Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such

documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date/time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Upon information and belief, Plaintiff is unaware of any cases, but has not conducted research on this topic.

31.    Did Plaintiff receive a copy of the complaint filed in the Action herein prior to or shortly after the complaint was filed with the court? Please state the following:

   i.    Each and every reason for your responses;

   ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
At some point in this case, the Plaintiff received a copy of the complaint.

32. Did the Plaintiff, in writing, orally, or otherwise, inform the counsel in this matter that it was the holder of the mortgage note? Please state the following:

    i.    Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Yes. See Exhibits introduced into evidence and Testimony of Glenn Mitchell.

33. Did the Plaintiff know that the mortgage note was not assigned to it, prior to the commencement of this Action? Please state the following:

    i.    Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your

responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
No. The Plaintiff is the successor trustee, as set forth in response to Interrogatory #1. See also Connecticut G.S. 42a-3-110, enacted by the Connecticut legislature.

34.    Did the Plaintiff, written, orally, or otherwise, inform his counsel in this matter that it was the holder of the mortgage. Please state the following:

   i.    Each and every reason for your responses;

   ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See response to Interrogatory #32.

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

35.   Did Plaintiff inform its counsel in accordance with the method prescribed by the PSA the need, right, and reason for foreclosing Defendant's home. Please state the following:

    i.   Each and every reason for your responses;

    ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
The servicer, Wells Fargo, identified a payment default on the Bell Loan. See Default Letter and the Payment History.

36.   Plaintiff made no attempt to have the note assigned to it, prior to the commencement of this Action. Please state the following:

    i.   Each and every reason for your responses;

    ii.   Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, titled telephone number, and address for service of legal process;

    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This is not a proper question and Plaintiff therefore cannot properly respond.


37.    How does and/or did the Plaintiff enjoy, enjoyed, or expects to enjoy direct or indirect financial benefit from the prosecution and/or success of the foreclosure action against the Plaintiffs home?

    i.    Each and every reason for your responses;
    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;
    iii.    Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Plaintiff will lose thousands of dollars in this case. The debt has accrued since 2007 without any payments, and there is no equity in the property. The Defendants will likely file for bankruptcy to discharge the debt in this case, so the total losses on this loan will be significant.

38.     How does and/or did the Master Servicer enjoy, enjoyed, or expects to enjoy direct or indirect financial benefit from the prosecution and/or success of the foreclosure action against the Plaintiffs home Please state the following:

   i.     Each and every reason for your responses;

   ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
A loan servicer is paid a fee to service all loans, performing and non-performing.

39.     Has China Brown ever received any wages from the Plaintiff? Please state the following:

   i.     Each and every reason for your responses;

   ii.    Identify each and every witness who has or may have, or knows or may

know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.  Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
China Brown is an Employee of America Servicing, a Wells Fargo Company, and is authorized to execute affidavits for investors for whom it services loans, in accordance with a power of attorney.

40.  Did Plaintiff know that China Brown is and was an employee of the Master Servicer's wholly owned, unincorporated division, department or line of business known as America's Servicing Company for Norwest Home Improvement Please state the following:

i.  Each and every reason for your responses;

ii.  Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii.  Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or

not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See Answer to Interrogatory #39.

41.   Plaintiff knew that it had not been assigned the mortgage prior to the commencement of this Action. Please state the following:

   i.     Each and every reason for your responses;

   ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

   iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
This is not a proper question and Plaintiff therefore cannot properly respond. However, in the interest of judicial economy and without waiving our objections hereto, Plaintiff states it was the holder of the Note at the time the foreclosure was commenced.

42. The Resignation Agreement was necessary to convey rights as successor trustee to the Bank of New York dated October 1, 2006 submitted with the Plaintiffs Objection To Motion To Dismiss and Memorandum of Law In Support Thereof was not drafted on October 1, 2006. Please state the following:

    i. Each and every reason for your responses;

    ii. Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii. Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See Response to Interrogatories #19 and #22.

43. Were the signatories of the Assignment Agreement informed by the Plaintiff or his counsel that the Schedule A of the Assignment Agreement was attached thereto prior to its submission in court. Please state the following:

    i. Each and every reason for your responses;

    ii. Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal

process;

iii. Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
See Response to Interrogatory #22.

44. Has the Plaintiff, The Bank of New York, and/or The Bank of New York Co., Inc. has been informed directly or indirectly by a court, agency, tribunal, and/or regulatory body that the (i) Purchase Agreement and/or (ii) Assignment Agreement did not convey ALL of the right, title, and interest of JP Morgan Chase Bank, NA to the Plaintiff on (a) October 1, 2006 and/or (b) prior to the commencement of this Action.

i. Each and every reason for your responses;

ii. Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

iii. Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses.

Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
To the best of Plaintiff's knowledge, no.

45. Have the Plaintiff and/or the Trust been determined to lack standing during foreclosure proceedings in other courts.

    i.     Each and every reason for your responses;

    ii.    Identify each and every witness who has or may have, or knows or may know, any information that supports, tends to support, contradicts, tends to contradict, refutes or tends to refute any or all of your responses, including the name, address, title, telephone number, and address for service of legal process;

    iii.   Describe each and every document either (1) in your possession or control, or (2) which you have authority to obtain that either (a) supports or tends to support your responses or (b) contradict or refute or tend to contradict your responses. Your answer must include, without limitation, all such documents that, you believe or know exist or previously existed whether or not such documents are or were (1) in your possession or control, or (2) you had or have authority to obtain them, that support, tend to support, contradictor tend to contradict, or refute or tend to refute, your responses. Further, your response should include any information that may lead to the discovery of such document including, but not limited to, any information requested above in ii. of this interrogatory. Your answer must also include the last date, time, and place of your last contact with or knowledge of the existence of said documents.

**RESPONSE:**
Upon information and belief, no cases have held that Plaintiff does not or cannot act as successor trustee for BS ALT A.

46. Does the Plaintiff through his counsel intend to bring any witnesses to testify to its standing or to testify to any matter in the Action. Response to the Interrogatory including the names and contact information as requested below in ii. for other witnesses. Please also describe the material facts to be presented in their potential testimony:

i.      Each and every reason for your responses;

ii.     Identify each and every witness who has or may have, or knows or may
        know, any information that supports, tends to support, contradicts, tends to
        contradict, refutes or tends to refute any or all of your responses, including
        the name, address, title, telephone number, and address for service of legal
        process;

iii.    Describe each and every document either (1) in your possession or control,
        or (2) which you have authority to obtain that either (a) supports or tends to
        support your responses or (b) contradict or refute or tend to contradict your
        responses. Your answer must include, without limitation, all such
        documents that, you believe or know exist or previously existed whether or
        not such documents are or were (1) in your possession or control, or (2)
        you had or have authority to obtain them, that support, tend to support,
        contradictor tend to contradict, or refute or tend to refute, your responses.
        Further, your response should include any information that may lead to the
        discovery of such document including, but not limited to, any information
        requested above in ii. of this interrogatory. Your answer must also include
        the last date, time, and place of your last contact with or knowledge of the
        existence of said documents.

**RESPONSE:**
Glenn Mitchell has testified for 3 ½ days.


                                    **RESPECTFULLY SUBMITTED**
                                    **THE PLAINTIFF,**

                                    By:
                                         Geoffrey K. Milne, Esq.
                                         Hunt Leibert Jacobson, P.C.
                                         50 Weston Street
                                         Hartford, CT 06120
                                         Phone: (860) 240-9149
                                         Fax: (860) 240-9240
                                         gmilne@huntleibert.com

| DOCKET NO.: HHD-CV-07-5013037-S | : | SUPERIOR COURT |
|---|---|---|
| THE BANK OF NEW YORK, AS TRUSTEE | : | J.D. of HARTFORD |
| V. | : | at HARTFORD |
| SONJA BELL, ET AL | : | October 7, 2009 |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S
## FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION

I, Glenn E. Mitchell, Vice President of The Bank of New York Mellon f/k/a The Bank of New York, hereby certify that I have reviewed the above Interrogatories and Responses thereto and that they are true and accurate to the best of my knowledge and belief.

Glenn E. Mitchell
Vice President
The Bank of New York Mellon

OCTOBER 7, 2009
Date

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, of even date herewith to the following:

Guest & Associates
151 New Park Avenue
Hartford, CT 06106

Sonja V. Bell
54 Main Street
South Glastonbury, CT 06073

Jonathan Bell
54 Main Street
South Glastonbury, CT 06073

Bendett & McHugh P.C.
160 Farmington Avenue
Farmington, CT 06032

_____
Geoffrey K. Milne, Esq.

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

**ATTACHMENT F**



**DOCKET NO. HHD-CV-07-5013037-S**     **: SUPERIOR COURT**

**THE BANK OF NEW YORK, AS TRUSTEE**     **: JUDICIAL DISTRICT OF HARTFORD**
**FOR BS ALT A 2005-9**
**V.**     **: AT HARTFORD**

**SONJA V. BELL, ET AL.**     **:**

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

STATE OF SOUTH CAROLINA   :

                :    ss.               2008

COUNTY OF YORK           :

The undersigned, being duly sworn, hereby deposes and says as follows:

1.   I am over the age of 18 years and understand the meaning and obligation of an oath. I hereby depose, state, and swear that the foregoing facts are true and accurate to the best of my knowledge and belief.

· 2.   I am employed as a/an Vice President of Loan Documentation with The Bank of New York. In my capacity as a Vice President of Loan Documentation, I am personally familiar with and have personal knowledge of the books and records of Sonja V. Bell and the Plaintiff, as they apply to the account of the Defendants, Sonja V. Bell, including but not

THIS LAW FIRM IS A DEBT COLLECTOR. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

limited to payment histories, loan histories, servicing records, and default notices. The books and records of Americas Servicing Company for Norwest Home Improvement, and the Plaintiff are made and kept in the ordinary course of business and said books and records were made at or about the time described.

3. On June 17, 2005 the Defendant, Sonja V. Bell, executed and delivered a Note in the original principal amount of $650,000.00 (the "Note") to Altara Home Mortgage, LLC ("Altara"). A true and accurate copy of the Note is attached as Exhibit A. Prior to the commencement of this action, Altara endorsed the Note to Ohio Savings Bank. Ohio Savings Bank then endorsed the Note to JP Morgan Chase, N.A., as Trustee. Also prior to the commencement of this action The Bank of New York, acquired the corporate trust business of JP Morgan Chase pursuant to the Purchase and Assumption Agreement by and between The Bank of New York Company, Inc., and JPMorgan Chase & Co., dated as of April 7, 2006, as amended and restated as of October 1, 2006. Through that agreement, the Plaintiff is now the holder of the Note. Prior to the commencement of the action, the Plaintiff provided the Note to its counsel (Hunt Leibert Jacobson, P.C.).

4. On June 17, 2005 the Defendant, Sonja V. Bell, conveyed by Mortgage Deed (the "Mortgage") her interest in certain real property known as 54 Main Street, So. Glastonbury, Connecticut to Mortgage Electronic Registration Systems, Inc. as Nominee for

2

Altara. The mortgage was recorded on June 23, 2005 in Volume 2205 at Page 298 in the Glastonbury Land Records. A true and accurate copy of the Mortgage is attached hereto as Exhibit B. On January 17, 2008, Mortgage Electronic Registration Systems, Inc. as Nominee for Altara assigned (the "Assignment") the mortgage to the Plaintiff.   The Assignment was recorded on January 24, 2008, in Volume 2523 at Page 279 of the Glastonbury Land Records.  A true and accurate copy of the assignment is attached hereto as Exhibit C.

5.    Pursuant to the terms of the Note and Mortgage, the Defendants were to make principal and interest payments on the first day of each month beginning on August 1, 2005, and each and every month thereafter until the maturity date of July 1, 2035.

6.    The Defendants have failed to make monthly mortgage payments as required by the loan documents since the payment due for June 01, 2007 and for each and every month thereafter.

7.    The Defendants are in default under the loan documents for failure to make payments as required by the terms of the Note and Mortgage.

8.    The Defendants were duly notified in writing by the Plaintiff in accordance with the terms of the Note and Mortgage of the default and that the failure to cure the default may result in acceleration of the debt.  The Defendants have failed and neglected to

3

cure the default. A true and accurate copy of the default letter is attached hereto as <u>Exhibit</u> <u>D</u>.

9. Thereafter the Note was accelerated and the remaining unpaid principal balance, plus interest, attorney's fees and costs are due and owing to the Plaintiff.

10. Based upon my review of the books and records of this account, the following sums are due and owing from the Defendants to the Plaintiff:

| | |
|---|---|
| Principal Balance | $650,000.00 |
| Interest from May 01, 2007 to 4/28/2008 @ 6.875 % APR | 44,565.03 |
| Hazard Insurance | 0.00 |
| Mortgage Insurance Premium | 0.00 |
| Escrow – Taxes | 26,028.30 |
| Pre-Acceleration Late Charges | 744.80 |
| Other (BPO and Inspections) | 395 |
| TOTAL: | $721,733.13 |

12. The interest rate as of the date of the Affidavit is calculated at 6.875 % APR.

13. The Per Diem rate of interest after 4/28/2008 is $122.43.

4

14.     Plaintiff is the owner and holder of the Note and Mortgage.

15.     Plaintiff has been forced to incur attorney's fees and costs to collect this indebtedness.

16.     Plaintiff has satisfied any and all conditions precedent to enforcing this instrument.

17.     The Defendant has alleged special defenses and counterclaims, but none of them have any merit. The first alleges that the Fair Debt Collection Practices Act (the "FDCPA") required a validation of the debt prior to the commencement of the action. It does not. The borrower did send a letter, which is attached at Exhibit E. According to 15 USC § 1692g(b) "If the consumer notifies the debt collector in writing **within the thirty-day period** described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." (Emphsis added.). The letter at Exhibit E references a letter the Defendant received in July, but the Defendant did not send her letter until September, well outside of any thirty day window. Thus, there is no

5

violation of the FDCPA. The Borrower also claims that she was not provided with notice of the default, however, the document at Exhibit D establishes that the Plaintiff complied with the notice provision of the Note and Mortgage. The Defendant further claims that she made all of her payments. Simply put, she did not. Further, she sates she is willing to tender payments. However, our records show that she has not requested a reinstatement figure.

18.     I submit this Affidavit in support of the Plaintiff's Motion for Summary Judgment.

19.    I hereby swear and state that the foregoing facts are true and accurate to the

best of my knowledge and belief.

Subscribed and sworn to me this 8day of April, 2008.

The Bank of New York, as Trustee for BS
ALT A 2005-9

By: China Brown,
Its: Vice President of Loan Documentation.

STATE OF SOUTH CAROLINA    )
                                          SS;_____
COUNT OF YORK              )

Subscribed and sworn to before me on this 8 day of April, 2008, before me, the
undersigned officer, personally appeared, China Brown who acknowledged himself/herself
to be the Vice President of Loan Documentation of The Bank of New York, as Trustee for
BS ALT A 2005-9, and that s/he, as such officer, being authorized to do, executed the
foregoing instrument for the purposes therein contained and subscribed, swore and
acknowledged the same to be his/her free act and deed and the free act and deed of The
Bank of New York, as Trustee for BS ALT A 2005-9.

IN WITNESS THEREOF, I hereunto set my hand.

Notary Public
My Commission Expires: July 6, 2016


OFFICIAL SEAL
Notary Public
State of South Carolina
MARY J. TRAMBLE
My Commission Expires July 06 2016

7

**ATTACHMENT G**

To: File
Indicate Date d
Receipt to
First Day - June 26, 2009
in Court

DOCKET NO.: HHD-CV-07-5013037-S : SUPERIOR COURT

THE BANK OF NEW YORK, AS TRUSTEE : J.D. of HARTFORD

V. : at HARTFORD

SONJA BELL : JUNE 25, 2009

## MOTION TO QUASH

The Plaintiff, The Bank of New York, as Trustee, hereby Moves this Court to quash the

subpoena issued by the defendant, Sonja Bell (the "Defendant"), to China Brown, Vice President,

The Bank of New York Mellon (the "Proposed Witness"), dated June 23, 2009 (the "Subpoena").

In support of this Motion, the Plaintiff represents the following:

1. The Defendant issued the Subpoena commanding the Proposed Witness to attend a

continued hearing regarding the Defendant's Motion to Dismiss, scheduled for this Friday,

June 26, 2009 at 10:00 a.m. (the "Hearing"), and to bring a listed schedule of documents with her

at that time.

2. Service of the subpoena is defective. First, the subpoena appears to command a

specific employee of The Bank of New York, Mellon, to appear at the hearing. In order to have

valid service, the subpoena needs to be served in the manner provided by CGS 52-57-

(c) In actions against a private corporation, service of process shall be made either
upon the president, the vice president, an assistant vice president, the secretary, the
assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant
cashier, the teller or the assistant teller or its general or managing agent or manager
or upon any director resident in this state, or the person in charge of the business of
the corporation or upon any person who is at the time of service in charge of the office
of the corporation in the town in which its principal office or place of business is
located. In actions against a private corporation established under the laws of any

other state, any foreign country or the United States, service of process may be made upon any of the aforesaid officers or agents, or upon the agent of the corporation appointed pursuant to section 33-922.

Conn. Gen. Stat. § 52-57

The subpoena in this case was never served in compliance with CGS 52-57 or CGS 33-922.

3.    The Hearing has been scheduled to hear a fourth day of evidence on the Defendant's pending Motion to Dismiss, which Motion to Dismiss **solely** addresses this Court's subject matter jurisdiction. To date, there have been three full days of testimony from Glenn Mitchell of the Bank of New York Mellon regarding ownership of this loan, and the vast majority of that time was devoted to cross-examination by the Defendant's counsel.

4.    In addition, the Plaintiff has served omnibus discovery objections to written discovery filed by the Defendant, because the Defendant has already had the benefit of three full days of testimony from a witness from the Plaintiff, along with the production of a series of documents, including but not limited to the Pooling and Servicing Agreement and schedule of loans, the original note with endorsements, the purchase and sale agreement between the Bank of New York and JP Morgan Chase.

5.    As stated previously, the Defendant's pending Motion to Dismiss addresses this Court's jurisdiction only.  Additionally, on May 5, 2008, this Court (Freed, J.) granted the

Plaintiff's Motion for Summary Judgment as to liability. As a result, the only issues outstanding in the case are: (a) jurisdiction, which is the subject of the Hearing. Therefore, no matter what collateral issues the Defendant intends to challenge by calling the Proposed Witness, such challenge is irrelevant, moot and should not be permitted.

6. The Defendant's subpoena is clearly calculated to prolong these proceedings indefinitely and further seeks evidence which can only be deemed to be cumulative.

THE BANK OF NEW YORK, TRUSTEE

By:

Geoffrey K. Milne, Esq.
Nicole L. Barber, Esq.
Hunt Leibert Jacobson, P.C.
50 Weston Street
Hartford, CT 06120
Phone: (860)240-9140
Fax:    (860)240-9240
gmilne@huntleibert.com

**SUBPOENA/CIVIL**
JD-CI-42 Rev. 2-09
C.G.S. § 52-143, 52-144
Pr. Bk. Secs. 7-19, 24-22

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov



Court Use Only
**SUBISSU**

**Instructions:**
1 Do Not use this subpoena if the witness is being summoned by the state or by the attorney general or an assistant attorney general or by any public defender or assistant public defender acting in his/her official capacity.

2 The person being subpoenaed and the items they are ordered to bring as listed below must be identical to the names and items as ordered on the Application for issuance of Subpoena, form JD-CV-62.

| Name of Case | Docket Number |
|---|---|
| The Bank of New York as Trustee for BS ALT A 2005-9 v. Sonja V. Bell, et al | HHD-CV-07-5013037S |

| | Geographical | Small | Address of Court (Number, street and town) |
|---|---|---|---|
| ☒ Judicial District | Housing Session | Area Number | Claims Area |

95 Washington Street, Hartford, CT 06105

To: (Name and address)

China Brown, Vice President, The Bank of New York Mellon, c/o its Attorneys
Hunt Leibert Jacobson, PC, 50 Weston Street, Hartford, CT 06120

| Date and time you are to appear | Time | Report to |
|---|---|---|
| 6/26/2009 | 10:00 ☐ a.m. ☐ p.m. | ☐ Clerk's office ☐ Courtroom number _____ ☒ Person requesting subpoena |

By Authority of The State of Connecticut, you are commanded to come to the court at the Address of Court above on the Date and Time indicated above or to another day after (within 60 days of the Date indicated above) when the case will be tried; you must come to the court to testify what you know in the case.

**You Are Further Commanded To Bring With You And Produce:**

See Attached

Hereof Fail Not, Under Penalty Of The Law.
To any proper officer or indifferent person to serve and return.

| Name of person requesting subpoena | Telephone number |
|---|---|
| Attorney J. Hanson Guest | (860) 231-6250 |

| Signed (Clerk, Commissioner of Superior Court) | Higher type name | Date | At |
|---|---|---|---|
| J. Hanson Guest | 6/23/09 | Hartford, CT |

**Notice To The Person Summoned**
If you do not come to court on the day and at the time stated, or on the day and at the time which your appearance may have been postponed or continued to by order of an officer of the court, the court may order that you be arrested. Also, if one day's attendance and traveling fees have been paid to you and you do not come to court and testify, without reasonable excuse, you will be fined not more than $25.00 (twenty-five dollars) and pay all damages to the aggrieved party. **The party requesting the subpoena is responsible for paying the witness fees.**

Any questions regarding this subpoena should be directed to the person who requested it.

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact the clerk of the court at the Address of Court shown above.

Telephone number: 860-548-2700

**Return Of Service**

| Judicial District of _____ | ss. | | Date |
|---|---|---|---|

Then and there I made service of the within subpoena not less than eighteen hours prior to the time designated for the person summoned to appear, by reading the same in the presence and hearing/leaving a true and attested copy hereof in the hands/at the last usual place of abode of each of the within-named persons, viz:

| | Fees |
|---|---|
| | Copy |
| | Endorsement |
| | Service |
| | Travel (Show miles & amount) |

| Attest (Signature of proper officer or indifferent person) | Title (if applicable) | Total |
|---|---|---|

**Distribution:** Original - Return to clerk after making service    Copy 1 - Witness    Copy 2 - Court file

| | |
|---|---|
| 1 | The Bank of New York as Trustee for BS ⟩ SUPERIOR COURT |
| 2 | ALT 2005-9 ⟩ J.D OF HARTFORD AT HARTFORD |
| 3 | ⟩ |
| 4 | v. ⟩ DOCKET NO: CV-07-5013037-S |
| 5 | ⟩ |
| 6 | ⟩ |
| 7 | Sonja V. Bell, ET AL. ⟩ June 23, 2009 |
| 8 | ⟩ |
| 9 | ⟩ |

## REQUESTED ITEMS TO BRING TO HEARING

*The* Plaintiff in this action has, among other things, alleged that the transaction between The Bank of New York Company, Inc. and JP Morgan Chase & Company was completed on October 1, 2006. Plaintiff has introduced multiple documents to that effect. You have submitted an affidavit in this matter.

Please bring with you to court any and all documents that tend to support or refute (or which may be otherwise relevant to) your testimony and the statements made in your affidavit.

DEFINITIONS

A. Unless otherwise specified in a particular paragraph, provide the information and documents requested to the extent they pertain to, or relate to, concern, the period of April 7, 2005 (one year prior to initial Purchase Agreement as defined below) to the present (the "Period"). Include also any and all documents that are in your possession or control that concern the negotiation and execution of any documents that relate to the alleged closing that occurred between JPMorgan Chase & Co. (and/or any of its affiliates) and The Bank of New York (and/or any of its affiliates).

B. The terms "document" or "documents" shall refer to all writings and recorded materials, of any kind, that are or have been in the possession, control or custody of

1

1  Plaintiff (or yourself) of which either you an/or Plaintiff has knowledge, whether
originals or copies. Such writings or recordings include, but are not limited to,
2  contracts, agreements, documents, notes, rough drafts, email, interoffice
3  memoranda, memoranda for the files, letters, research materials, correspondence,
logs, diaries, forms, bank statements, tax returns, card files, books of account,
4  journals, ledgers, invoices, diagrams, drawings, computer files, records, documents,
data, print-outs or tapes, reports, statistical computations, studies, graphs, charts,
5  minutes, manuals, pamphlets, or books of all nature and kind, whether handwritten,
typed, printed, mimeographed, photocopied or otherwise reproduced, all tape
6  recordings (whether for computer, audio, or visual replay) or other written, printed,
7  and recorded matter or tangible things on which words, phrases, symbols or
information are recorded.
8

9  C. In addition to the request to produce a document, a request to identify a
document is a request to state as applicable:
10

11  1. The date of the document:
2. The type of document;
12  3. The names and present addresses of the person or persons who prepared the
document and of the signers and addressers of the document;
13  4. The name of the employer or principal whom the signers. addressers and
14  preparers were representing;
5. The present location of the document;
15  6. The name and current business and home addresses of the present custodians of
the original document, and any copies of it;
16  7. A summary of the contents of the document; and
17  8. If the original document was destroyed, the date and reason for or circumstances
under which it was destroyed.
18  9. The name, address, and telephone number of each and every person who has
personal knowledge of such statements or documents.
19

20  D. In each document produced, please identify which request it responds to and a
summary that adequately indicates the location of the answer of the request
21  including page number(s), paragraphs, and appropriate references.

22  E. The term "Purchase Agreement" refers to the Amended and Restated Purchase
23  and Assumption Agreement dated as of October 1, 2006 by and between The Bank
of New York Company, Inc. a New York corporation, and JPMorgan Chase & Co., a
24  Delaware corporation

25  F. The term "Action", when used herein, shall mean the above-captioned matter,
unless the context otherwise requires.


Please produce the following documents for the hearing:


2

JUN. 24. 2009  1:38PM    WELLS    RGO                    NO. 405    P. 5

1.) Any documents signed by you in support of the Purchase Agreement, including, but not limited to, assignment agreements, resignation agreements, status reports, or other similar documents.

2.) Any Transition Agreements between the parties authorized and approved by the Purchase Agreement.

3.) Any subsequent agreement including, but not limited to, Transition Agreements between the parties signed by you related to the Purchase Agreement

4.) Any subsequent agreements between the parties in your possession including, but not limited to, Transition Agreements related to the Purchase Agreement

5.) Any documents in your possession that would tend to support or refute the contention by any party to the transaction that it was complete on October 1, 2006

6.) Any documents in your possession that would tend to support or refute the contention that any party to the transaction acquired "all or substantially all" of the corporate trust business of the subsidiaries of JP Morgan Chase & Co. on October 1, 2006.

7.) Any documents related to any IRS or other agency, government entity foreign or domestic, or foreign, federal, state, or municipal investigation, inquiry, review, or other action related to the asset swap implemented under the Purchase Agreement.

8.) Any articles or statements released or received by you, The Bank of New York, The Bank of New York Trust Company, NA, or The Bank of New York Company, Inc. to or from any party regarding the status, level of completion, or update regarding the Purchase Agreement and any actions taken or required in the furtherance of the Purchase Agreement.

9.) Any documents that provide evidence of your Employment history over the last three years.

3

1    10.)      Any documents that support the statements attributed to you in your
affidavit of April 8, 2008 in this action.
2    11.)      Any documents by any court, agency, or other governmental entity that
has determined that one or more statements in any affidavit filed by you, or by
3    any other individual connected with the Bank of New York or Wells Fargo, to
be inaccurate, false, or misleading.
4
5
6    Thank you in advance for your cooperation in this matter.
7
8                                              DEFENDANT
9
10
11                                             By:  J. Hanson Guest Esq.
                                               Counsel to Defendant
12                                             151 New Park Avenue
13                                             Hartford, CT 06106
                                               (860) 231-6250
14                                             (860) 231-6252 fax
15                                             Juris No.: 309938
16
17
18
19
20
21
22
23
24
25

                                       4

## ORDER

The foregoing Motion to Quash having been duly noticed and heard, it is hereby ORDERED:

GRANTED / DENIED

_____
Judge

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via electronic mail and first class United States mail, postage prepaid, on even date herewith to the following:

Guest & Associates
151 New Park Avenue
Hartford, CT 06106

Bendett & McHugh PC
160 Farmington Avenue
Farmington, CT 06032

_____
Geoffrey K. Milne

**ATTACHMENT H**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____

JPMorgan Chase Bank, N.A. f/k/a JPMorgan Chase
Bank, as Trustee for BS ALT A 2005-9,

INDEX NO. 07-10226

Plaintiff,

**AFFIDAVIT OF DEBT**

- against -

Diana Marseil, et al,

Defendants.

_____

STATE OF South Carolina   )
                          )  ss.
COUNTY OF York         )

_____China Brown_____, being duly sworn, deposes and says:

1)     I am the _____Vice President Loan Documentation_____ of the servicing agent of Plaintiff. I am fully familiar with all of the facts contained herein, and make this Affidavit to aid the Referee in computing the sums due on the Note and Mortgage.

2)     That JPMorgan Chase Bank, N.A. f/k/a JPMorgan Chase Bank, as Trustee for BS ALT A 2005-9 is the holder and the owner of that certain mortgage originally given by Diana Marseil to Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC D/B/A No Red Tape Mortgage, dated June 27, 2005, recorded December 2, 2005, at CRFN: 2005000668310 of Mortgages, in the office of the Clerk of the County of New York, State of New York. Plaintiff became the owner of this mortgage as a result of a purchase thereof for valuable consideration. The Assignment of Mortgage memorializing Plaintiff's interest has not yet been recorded; however, Plaintiff has standing to prosecute the foreclosure action in its capacity as beneficial owner and holder of the mortgage.

3)    The instant loan is due for the November 1, 2006 installment and all subsequent installments, and by reason thereof, the Mortgage and Note are in default.

4)    That the amount presently due upon said Mortgage Note and Mortgage as of February 28, 2007, is as follows:

PRINCIPAL DUE ON NOTE AND MORTGAGE                                $1,000,000.00

INTEREST at 6.875% due from 10/1/06 to 2/28/07                            *28,441.76
(5 months @ $5,729.17 per month = $28,645.85)

ADVANCES BY PLAINTIFF:

|  | | | |
|---|---|---|---|
| Hazard/Flood Ins. | $ | 4,728.98 | |
| Maintenance | $ | 39.00 | |

Total Advances:                                                                                4,767.98

TOTAL:                                                                                     $1,033,209.60

*interest requested is lower than allowed by the note shown in the above computations*

5)    Accordingly, as of February 28, 2007, there is due and owing the sum of $1,033,209.60, plus a per diem interest for each day thereafter. That by reason of the aforesaid default in the payment of the installments due under terms of the Note and Mortgage, Plaintiff has elected to accelerate the payment of the entire principal sum, together with accrued interest, all of which is declared to be due and payable to Plaintiff.

6)    That Plaintiff has expended and will expend during the pendency of this suit certain necessary costs to protect its security, all of which are secured by the lien of the aforesaid Mortgage.

7)    The mortgage states that the borrower must keep the property in good repair and allows the holder of mortgage to protect its rights in the property. As such, Plaintiff, during

the foreclosure action, has had the property inspected monthly to determine if repairs are necessary and to determine if the property is occupied or vacant. By virtue of service of the Summons and complaint upon the defendant, the owner/defendant has been put on notice that they are in default and that the Plaintiff would be exacting compliance of its rights under the mortgage.

8)      Upon review of the description of the premises involved in this action, it has been determined that the aforesaid property may be sold in one (1) parcel.



China Brown, Vice President Loan Documentation

Sworn to and subscribed before me this
02    day of     July     , 2007.

Notary Public

OFFICIAL SEAL
Notary Public
State of South Carolina
RANDY P. JONES
My Commission Expires Sept. 1, 2016

FILED

NOV 3 0 2007

COUNTY CLERK'S OFFICE
NEW YORK

2009 JUL

817

11/30/07

**ATTACHMENT I**

## SCHEDULE A

Section 1.1    Arrangements Regarding Custodial Assets and Index Rate Deposits. (a)  BNY and JPM agree that, if and when requested by BNY, they will cooperate with each other, and use commercially reasonable efforts as described in Section 11.9 of the Agreement, consistent with Applicable Law and any legal obligations to customers of the Corporate Trust Business, to cause the transfer, at the Closing or as soon as reasonably practicable thereafter, of the Corporate Trust Money Fund Balances (which are approximately $26,000,000,000 as of the Original Execution Date) invested in JPM Money Market Funds to comparable BNY Money Market Funds or money market funds of other institutions; provided that neither BNY nor JPM shall be required to take any action in connection with the foregoing that would reasonably be likely to contravene any Applicable Law, any contractual commitment in effect as of the Closing applicable to, or any fiduciary duty of, BNY or JPM and its Affiliates. JPM shall pay to BNY an amount (the "Balance-Related Payment") equal to:

(1)  for each of the first three years after the Closing Date, the product of (i) 10 basis points multiplied by (ii) the lesser of (A) the average daily net Corporate Trust Money Fund Balances invested in JPM Money Market Funds during such year and (B) (1) during the first year after the Closing Date, $29,000,000,000; (2) during the second year after the Closing Date, $22,000,000,000; and (3) during the third year after the Closing Date, $16,000,000,000; and

(2)  for each of the fourth and fifth years after the Closing Date, the product of (i) 5 basis points multiplied by (ii) the lesser of (A) the average daily net Corporate Trust Money Fund Balances invested in JPM Money Market Funds during such year and (B) (1) during the fourth year after the Closing Date, $13,000,000,000; and (2) during the fifth year after the Closing Date, $10,000,000,000.

Except as provided in this Section 1.1(a) of Schedule A, JPM shall not be required to compensate BNY or any of its Subsidiaries for any Balance-Related Payments in respect of periods subsequent to the Closing. The Balance-Related Payments will be in addition to the revenue share payments that (i) JPM Asset Management currently pays to JPM Corporate Trust in respect of Corporate Trust Money Fund Balances in JPM Money Market Funds and (ii) the relevant third-party fund advisor or distributor pays to JPM Corporate Trust in respect of the investments of Custodial Assets in the applicable third-party money market funds, which payments shall be transferred to BNY Corporate Trust.

(b)    BNY and JPM will cooperate with each other, and use commercially reasonable efforts, consistent with Applicable Law and any legal obligations to customers of the Corporate Trust Business, to cause, at the Closing or as soon as reasonably practicable thereafter, the funds held as of the Closing (the "Index Rate Funds") in the corporate trust client cash accounts, a schedule of which JPM shall provide to BNY as promptly as practicable after the Closing (such accounts, the "Index Rate Deposit Accounts"), to be withdrawn from such Index Rate Deposit Accounts and deposited in a permitted investment as defined in the relevant Contract. Until the fifth anniversary of the Closing Date, JPM shall pay to BNY, on a monthly basis in arrears, an amount (the "Index Rate Payment") equal to the sum of:

BNY As Trustee v Bell
Production 11/30/09
0165

(1) the product of (x) the Non-Converted Amounts for such month (up to a cap equal to the product of $6,500,000,000, multiplied by the Adjustment Fraction (such cap, the "Threshold")), *multiplied by* (y) the Rate Difference for such month; *and*

(2) for any full calendar month during the period commencing on the Closing Date and ending on December 31, 2006, the product of the the Non-Converted Amounts for such month in excess of the Threshold (but such excess not to be greater than the product of $325,000,000, multiplied by the Adjustment Fraction), *multiplied by* (y) the Adjusted Rate Difference for such month; *and*

(3) the product of (x) the Converted Amounts for such month, *multiplied by* (y) LIBOR for such month;

provided, however, that in no event shall the Average Daily Balance during any calendar month exceed the Balance Cap for such month. If the Index Rate Payment shall be a negative number for any month, then BNY shall pay to JPM the absolute value of the amount of such Index Rate Payment for such month (and JPM shall not pay any amount to BNY in respect of the Index Rate Payment for such month). Except as provided in this Section 1.1, JPM shall not be required to compensate BNY or any of its Subsidiaries for any Index Rate Payment in respect of periods subsequent to the Closing.

(c)     Without limiting BNY's obligations pursuant to the first sentence of Section 1.1(b) of Schedule A, after the Closing, BNY may add to the Index Rate Deposit Account or Accounts solely custodial assets of the corporate trust business of BNY; provided that in no event shall there be maintained in such Account or Accounts more than, nor shall JPM be obligated to accept any deposit if doing so would cause the balance of Index Rate Funds in the Index Rate Deposit Accounts to exceed, in the aggregate: (i) at any time during the period commencing on the Closing Date and ending on the 10th Business Day following the Closing Date, $7,250,000,000; (ii) at any time during the period commencing immediately after the 10th day following the Closing Date and ending on the earlier of March 31, 2007 and the date on which a Corporate Trust Conversion occurs with respect to any Index Rate Deposit Account, $6,825,000,000; and (iii) at any time after the termination of the period contemplated by the immediately preceding clause (ii), the then applicable Balance Cap. BNY will maintain all Converted Amounts with JPM subject to Section 1.1(b) of this Schedule A in a single account at JPM and, if JPM accepts any deposit that would cause the balance of Index Rate Funds in the Index Rate Deposit Accounts to exceed the then applicable Balance Cap, then the rate on the balance in excess of such Balance Cap shall be mutually agreed at the time between JPM and BNY.

(d)     For purposes of this Section 1.1 of Schedule A:

(1) "Adjusted Rate Difference" means, for any particular month, an amount, expressed in percentage points, equal to (x) the Rate Difference for such month *minus* (y) the monthly equivalent of 0.05% per year, with such 0.05% converted into a monthly rate based on the number of calendar days in such month and a 365-day year.

BNY As Trustee v Bell
Production 11/30/09
0166

(2) "Adjustment Fraction" means, for any particular month, a fraction, the numerator of which is the Non-Converted Amounts for such month and the denominator of which is the aggregate Average Daily Balance for such month.

(3) "Average Daily Balance" means, for any particular month, the average daily balance of Index Rate Funds in the Index Rate Deposit Accounts during such month; provided, however, that, in calculating the Average Daily Balance, the daily balance of Index Rate Funds in the Index Rate Deposit Accounts during any day of such month shall be deemed to equal the lesser of (i) the actual daily balance during such day and (ii) the Balance Cap applicable for such month (it being understood that this proviso shall not affect the proportion of Converted Amounts or Non-Converted Amounts for such day).

(4) "Balance Cap" means (i) with respect to any full calendar month during the period commencing on the Closing Date and ending on December 31, 2006, $6,825,000,000; (ii) with respect to any full calendar month following the period referred to in clause (i) of this definition and ending on or before the first anniversary of the Closing Date, $6,500,000,000; (iii) with respect to any full calendar month commencing after the first anniversary of the Closing Date and ending on or before the second anniversary of the Closing Date, $5,000,000,000; (iv) with respect to any full calendar month commencing after the second anniversary of the Closing Date and ending on or before the third anniversary of the Closing Date, $4,000,000,000; (v) with respect to any full calendar month commencing after the third anniversary of the Closing Date and ending on or before the fourth anniversary of the Closing Date, $3,000,000,000; and (vi) with respect to any full calendar month commencing after the fourth anniversary of the Closing Date and ending on or before the fifth anniversary of the Closing Date, $2,000,000,000.

(5) "Converted Amounts" means, for any particular month, that portion of the Average Daily Balance attributable to Index Rate Deposit Accounts for which a Corporate Trust Conversion has occurred prior to such month; provided, however, that if a Corporate Trust Conversion shall occur during such month with respect to any Index Rate Deposit Account, then the portion of the Average Daily Balance attributable to such Index Rate Deposit Account will be pro-rated between Converted Amounts and Non-Converted Amounts based on the number of days in such month prior to and after such Corporate Trust Conversion.

(6) "LIBOR" means, for any particular month, the average of the 30-day London Interbank Offered Rate for U.S. dollars, as published in the *Wall Street Journal*, for each calendar day of such month, with such average converted into a monthly rate based on the number of calendar days of such month and a 365-day year and with the London Interbank Offered Rate for U.S. dollars for any non-Business Day being equal to the London Interbank Offered Rate for U.S. dollars on the immediately preceding Business Day.

BNY As Trustee v Bell
Production 11/30/09
0167

(7) "Non-Converted Amounts" means, for any particular month, the excess of the Average Daily Balance for such month over the Converted Amounts for such month.

(8) "Rate Difference" means, for any particular month, an amount, expressed in percentage points, equal to (i) LIBOR for such month *minus* (ii) the aggregate interest expense for such month in respect of the Index Rate Funds in the Index Rate Deposit Accounts, expressed as a percentage of the Average Daily Balance for such month.

(e)     For the avoidance of doubt, for purposes of this Section 1.1 of Schedule A, upon the occurrence of a Corporate Trust Conversion with respect to any Index Rate Deposit Account, BNY shall have the obligation to pay the interest rate paid to the corporate trust client in respect of such Index Rate Deposit Account.

(f)     As a normal business practice, BNY and its Subsidiaries shall continue to refer cash deposits to JPM Money Market Funds consistent with the past practices of BNY and its Affiliates; provided, however, that (i) none of BNY or any of its Subsidiaries shall be required to take any action in connection with the foregoing that would reasonably be likely to contravene any Applicable Law, any contractual commitment in effect as of the date hereof applicable to, or any fiduciary duty of, BNY or any of its Subsidiaries; and (ii) the obligations of BNY and its Subsidiaries under this Section 1.1 of Schedule A shall be subject to BNY's reasonable determination that such JPM Money Market Funds would be a leading provider of such services, giving due consideration to all appropriate factors, including experience, reputation, availability, service levels and pricing.

(g)     The parties agree that the Balance-Related Payment and the Index Rate Payment were the result of arm's length negotiations. JPM will use its reasonable best efforts to provide to BNY account level information regarding the Index Rate Deposit Accounts reasonably requested by BNY on a weekly basis. Each of JPM and BNY shall provide the other with reasonable supporting documentation for calculating the Balance-Related Payment and the Index Rate Payment, and JPM shall deliver to BNY an invoice, by no later than 15 days after the end of the applicable period with respect to which payment is due (along with data reasonably requested by BNY to verify the amounts shown in such invoice), and all payments of undisputed amounts shall be made by wire transfer of immediately available funds by no later than 15 days after receipt of the applicable invoice; provided, however, that the portion of the Index Rate Payment set forth in clause (3) of Section 1.1(b) of Schedule A shall be paid by JPM to BNY after the end of the applicable period in accordance with JPM's current practice with respect to corporate trust client cash accounts.

Section 1.2.     Preferred Provider Relationship. (a) During the Corporate Trust Non-Competition Period:

(1)     if JPM or any of its Affiliates shall require any services for its own account within the scope of clause (1) of the definition of "Corporate Trust Business," then JPM shall, or shall cause its Affiliate to, negotiate with BNY in good faith to engage BNY or one of its Affiliates to provide such services where (x) neither JPM nor any of its

BNY As Trustee v Bell
Production 11/30/09
0168

Affiliates has any existing relationship with a service provider, such as for new products, or (y) JPM or its Affiliate has decided to change the provider of such services; provided that, in each case, (A) none of JPM or any of its Affiliates shall be required to take any action in connection with the foregoing that would reasonably be likely to contravene any Applicable Law, any contractual commitment in effect as of the Closing applicable to, or any fiduciary duty of, JPM or any of its Affiliates; and (B) the obligations of JPM and its Affiliates under this clause (1) of Section 1.2 of Schedule A shall be subject to JPM's reasonable determination that BNY or its Affiliate would be a leading provider of such services, giving due consideration to all appropriate factors, including experience, reputation, availability, service levels and pricing;

(2)     if JPM or any of its Affiliates is engaged by a client or customer, and JPM recommends a corporate trust service provider to such client or customer to provide services within the scope of clause (1) of the definition of "Corporate Trust Business," then JPM shall include or have its Affiliate include BNY among a "short list" of those that it recommends to such client or customer; provided that (A) none of JPM or any of its Affiliates shall be required to take any action in connection with the foregoing that would reasonably be likely to contravene any Applicable Law, any contractual commitment in effect as of the Closing applicable to, or any fiduciary duty of, JPM or any of its Affiliates; and (B) the obligations of JPM and its Affiliates under this clause (2) of Section 1.2 of Schedule A shall be subject to JPM's reasonable determination that BNY or its Affiliate would be a leading provider of such services, giving due consideration to all appropriate factors, including experience, reputation, availability, service levels and pricing;

(3)     JPM and BNY will establish corresponding contacts within their respective organizations to effect the clauses (1) and (2) of this Section 1.2 of Schedule A, and such corresponding contacts shall send, or cause to be sent, once every six months, a reminder to applicable employees that BNY is one of three providers that JPM recommends to clients who ask for a referral about a corporate trust service provider; and

(4)     JPM shall not, and shall cause its Affiliates not to, enter into any agreement that requires JPM or any of its Affiliates to make any commitment of the type specified in clause (1) or (2) of this Section 1.2 of Schedule A in favor of any person (including a Competing Corporate Trust Business described in Section 1.2(b) of Schedule A) other than BNY or any of its Affiliates.

(b)     Notwithstanding anything to the contrary set forth in Section 1.2(a) of Schedule A, if any JPM Entity shall acquire or maintain ownership of any entity with a Competing Corporate Trust Business in compliance with Section 10.11(a)(4) of the Agreement, such Competing Corporate Trust Business (regardless of whether such Competing Corporate Trust Business shall be operated within JPM or any of its Affiliates or as a separate entity) shall not itself be bound by the terms of clause (1) or (2) of this Section 1.2 of Schedule A.

Section 1.3     Sale of DR Business. If, during the Corporate Trust Non-Competition Period, JPM conducts an auction to sell, transfer or otherwise dispose of all or

Schedule A - 5

BNY As Trustee v Bell
Production 11/30/09
0169

substantially all of its DR Business, JPM will invite BNY to participate as a potential purchaser or bidder in such auction process. The "DR Business" means the business of providing services with respect to DRs, including depositary, transfer agent/registrar, issuance and cancellation, corporate action or dividend services on behalf of non-U.S. issuers operating a DR cross-book or DR pre-release program.

Section 1.4    Private Banking Earn Out. (a) Within three months after the Closing Date, JPM and BNY shall mutually select and hire a reasonably qualified third party (the "Third Party") to assist in making the calculations required to determine the Private Banking Earnout. The fees and expenses of the Third Party incurred pursuant to this Section 1.4 of Schedule A shall be borne equally by JPM and BNY.

(b)    No later than 30 days after the hiring of the Third Party, BNY shall provide the Third Party with a tape or other usable data file with a mutually selected unique identifier for each Transferred BNY Client and each BNY Private Banking Client, which JPM's customer identification system can also produce, and with respect to each such BNY Private Banking Client, the Balances and Revenues for the Base Measurement Period.

(c)    No later than 30 days after the first anniversary of the Closing Date, (i) BNY shall provide the Third Party with such a tape or other usable data file with the Balances and Revenues for each BNY Private Banking Client and each client who establishes an account with BNY during the one-year period commencing on the Closing Date, in each case with respect to the Post-Closing Measurement Period, and (ii) JPM shall provide the Third Party with such a tape or other usable data file listing each client who has established a new account at any JPM bank branch in Connecticut, New Jersey or New York during the one-year period ending on the first anniversary of the Closing Date, and the Balances and Revenues for such period relating to such client's relationship with JPM branches.

(c)    No more than 30 days after the date the information contemplated by Section 1.4(c) of Schedule A has been provided to the Third Party, the Third Party shall determine the identity of the Overlapping Clients and of the Returning BNY Clients and shall make, and shall notify each of JPM and BNY in writing that the Third Party has made, all of the calculations contemplated by this Section 1.4 of Schedule A. Upon receipt of such written notice from the Third Party, each of JPM and BNY shall have 30 days to review and provide any comments to the Third Party regarding its determinations and calculations. After such 30-day review period, the Third Party shall notify each of JPM and BNY in writing of the calculations contemplated by this Section 1.4 of Schedule A, and such calculation shall be final and binding on both JPM and BNY.

(d)    No later than 30 days after receipt of the final written notice of calculation contemplated by Section 1.4(c) of Schedule A, JPM shall pay to BNY an amount equal to the Private Banking Earnout by wire transfer of immediately available U.S. dollar funds.

(e)    This Section 1.4 of Schedule A is subject to Applicable Law, including federal and state privacy laws and regulations to the extent applicable. To ensure compliance with the foregoing, JPM and BNY shall ensure that the Third Party agrees in writing (i) to keep confidential all customer identities and information and (ii) not to disclose to JPM customer

BNY As Trustee v Bell
Production 11/30/09
0170

identities and information provided by BNY and vice versa, unless otherwise permitted under Applicable Law.

(f)     For purposes of this Section 1.4 of Schedule A:

"Annualization Factor" shall mean 4.0.

"Attributable Revenues" shall mean, with respect to specified clients during a particular period, in the aggregate for such clients over such period, the sum of net interest income on deposits of such clients, deposit fees paid by such clients and trust fees and any other fees for services paid by such clients.

"Balances and Revenues" shall mean, with respect to a specified period, (x) average deposit balances for such period and net interest income by product (calculated in a manner consistent with the FTP methodology used by JPM and BNY during their due diligence investigations in connection with the transactions contemplated hereby), (y) deposit fees for such period and (z) trust fees for such period.

"Base Measurement Period" shall mean the period ending on the Closing Date and commencing three months prior to the Closing Date.

"Capital Charge" shall mean the product of (i) 0.05 and (ii) the average deposit balances during the Post-Closing Measurement Period as used for purposes of determining the Balances and Revenues for the Overlapping Clients.

"Marginal Cost Factor" shall mean 0.85.

"Multiple" shall mean 11.5.

"Overlapping Clients" shall mean BNY Private Banking Clients who establish new deposit accounts at JPM bank branches in Connecticut, New Jersey or New York (including any branch acquired by JPM from BNY pursuant to this Agreement) during the one-year period ending on the first anniversary of the Closing Date.

"JPM Increased Business" shall mean the Attributable Revenues to JPM derived from the Overlapping Clients during the Post-Closing Measurement Period; provided, however, that for Overlapping Clients who were banking clients of JPM as well as BNY as of the Closing, "JPM Increased Business" shall refer only to the excess of such Attributable Revenues to JPM for the Post-Closing Measurement Period over Attributable Revenues to JPM from such Overlapping Clients for the Base Measurement Period; and provided, further, that the "JPM Increased Business" shall in no event be greater than the BNY Private Banking Attrition.

"Private Banking Earnout" shall mean (a) the amount equal to (i) JPM Increased Business less the BNY Increased PBC Business, multiplied by (ii) the Annualization Factor, multiplied by (iii) the Marginal Cost Factor, multiplied by (iv) the Tax Factor, multiplied by (v) the Multiple, less (b) the Capital Charge; provided,

BNY As Trustee v Bell
Production 11/30/09
0171

however, that the Private Banking Earnout shall not be less than $25 million nor greater than $75 million.

"Post-Closing Measurement Period" shall mean the period commencing on the nine-month, and ending on the 12-month, anniversary of the Closing Date.

"Returning BNY Clients" shall mean a Transferred BNY Client who establishes an account with BNY during the one-year period commencing on the Closing Date.

"Tax Factor" shall mean 0.605.

"Transferred BNY Client" shall mean any BNY Private Banking Client prior to the Closing with respect to whom a relationship is transferred in connection with the transactions contemplated by this Agreement.

"BNY Increased PBC Business" shall mean the Attributable Revenues to BNY derived from Returning BNY Clients during the Post-Closing Measurement Period.

"BNY Private Banking Attrition" shall mean the excess, if any, of the Attributable Revenues to BNY derived from BNY Private Banking Clients during the Base Measurement Period over the Attributable Revenues to BNY derived from BNY Private Banking Clients, other than Returning BNY Clients, during the Post-Closing Measurement Period.

"BNY Private Banking Clients" shall mean individuals who are clients of BNY's private banking business as of the Closing.

Section 1.5    Facilities at Certain Excluded Banking Premises. After the date hereof and until the Closing, JPM and BNY shall negotiate in good faith to reach an agreement pursuant to which JPM may establish retail banking facilities at the following Excluded Banking Premises: (a) 1 Wall Street, New York, New York and (b) 10 Mason Street, Greenwich, Connecticut.

Section 1.6    Japanese Corporate Trust Payment. If, on or prior to the Closing, (a) JPM has not received a Corporate Trust Government Consent in Japan that JPM is required to apply for and obtain to effect the transfer of the Corporate Trust Business in Japan from JPM to BNY as contemplated by this Agreement because of the Japanese sanction; (b) BNY has complied in all material respects with its obligations under Section 10.3 of the Agreement with respect to obtaining any required Corporate Trust Government Consent in Japan; and (c) the parties are unable to effect an alternative mechanism of transferring the economic benefits and burdens of substantially all the Corporate Trust Business in Japan pursuant to Section 10.9 of the Agreement, notwithstanding material compliance therewith, then JPM shall pay to BNY an amount per month equal to the greater of (1) $300,000 and (2) JPM's pre-tax net earnings from the Japanese Corporate Trust Business not so transferred during such month, reduced to reflect any partial transfer to BNY of the Japanese Corporate Trust Business to the extent it has occurred prior to or during such month (the "Japanese Payments"). The Japanese Payments shall be due with respect to each month in the period commencing on the Closing Date and ending on

BNY As Trustee v Bell
Production 11/30/09
0172

the earlier of (1) the six-month anniversary of the Closing and (2) the date on which any of the conditions set forth in clauses (a), (b) or (c) shall cease to be true (such period, the "Japanese Payment Period"), and if the Japanese Payment Period shall end other than on the last business day of a month, the payment for such month shall be pro-rated for such partial month. The Japanese Payment with respect to a month shall be paid to BNY on or before the 15th day of the next month.

Section 1.7    Deposit Transfer.  BNY and JPM will cooperate with each other, and use reasonable best efforts, consistent with Applicable Law, to cause the transfer on the Applicable Transfer Date (as defined below) of the Custodial Assets (i) that consist of U.S. dollar cash deposits (foreign), by a single transfer; (ii) as described in further detail below, that consist of U.S. dollar cash deposits (domestic) (other than Index Rate Funds), by conversion of such deposits to U.S. Treasury securities prior to the Closing and the transfer of such securities to a designated account of BNY (provided that such deposits will transfer only to the extent of the value of such U.S. Treasury securities on the Closing Date, and, if the amount of the deposit exceeds such value, the parties shall effect the transfer of excess deposits as soon as practicable after the Closing Date using the mechanism provided in Section 1.8 of Annex A); and (iii) that consist of non-U.S. dollar cash deposits outside of the United States, to accounts at JPM, held for the benefit of BNY, in the respective currencies. "Applicable Transfer Date" means the Closing Date or, with respect to deposits held in a jurisdiction outside of the United States, a later date on which the parties mutually agree to effect the transfer of the deposits and other assets and liabilities associated with the Corporate Trust Business in such jurisdiction.

Section 1.8    Treasuries Payment.  In order to effect the transfer of the Custodial Assets at the Closing:

(a)    Prior to the Closing, JPM shall acquire U.S. Treasury securities in an amount ("Treasuries Purchase Amount") greater than the estimated aggregate amount of domestic dollar deposits (other than the Index Rate Funds) of all customers that are parties to a Corporate Trust Agreement (the "Affected Customers") included in the Custodial Assets. Immediately prior to the Closing, the Parties shall determine the actual amount of balances of domestic dollar deposits (other than the Index Rate Funds) of the Affected Customers ("Actual Balance Amount").

(b)    Immediately prior to the Closing, JPM shall hold, for the account of each customer who is a party to a Corporate Trust Agreement (the "Affected Customers") but not for JPM's own account, U.S. Treasury securities in an amount greater than the Actual Balance Amount ("Treasury Delivery Amount"). Concurrently with or as soon as practicable after the Closing, JPM shall deliver to BNY, U.S. Treasury securities in an amount equal to the Treasury Delivery Amount, which U.S. Treasury securities are to be held for the account of each of the Affected Customers (the "Transferred Treasury Securities").

(c)    On the Closing Date, or as soon as practicable after the Closing, JPM shall purchase the Transferred Treasury Securities at a price equal to the Actual Balance Amount.

(d)    As soon as practicable after JPM's purchase of the Transferred Treasury Securities pursuant to Section 1.8(c) of Schedule A, JPM shall unwind the Treasuries Purchase

BNY As Trustee v Bell
Production 11/30/09
0173

Amount; provided that (1) any gain realized or loss incurred on such liquidation shall be for the account of BNY and (2) BNY shall reimburse JPM for the difference between the Federal Funds Effective rate and the interest rate earned on the U.S. Treasury securities acquired pursuant to this Section 1.8. BNY will indemnify JPM for any costs or damages required to be paid to any Affected Customer (including by way of settlement effected with BNY's reasonable consent) by JPM or its Affiliates for any claim asserting that JPM's compliance with this Section 1.8 of Schedule A constituted a violation of law or a breach by JPM or its Affiliates of the related Corporate Trust Agreement.

      Section 1.9    UCC Assignments and Other Documents.  (a)  BNY will indemnify JPM and any of its Affiliates against any Damages that JPM or any of its Affiliates suffers, incurs or is liable for by reason of or arising out of or in consequence of BNY's request that JPM not file or deliver signed UCC-1 financing statements or UCC-3 assignments of financing statements, endorsed notes, participations and all other documentation necessary to effect the assignment of the Corporate Trust Agreements to BNY.

      (b)    JPM will indemnify BNY and any of its Affiliates against any Damages that BNY or any of its Affiliates suffers, incurs or is liable for by reason of or arising out of or in consequence of JPM's request that BNY not file or deliver signed UCC-1 financing statements or UCC-3 assignments of financing statements, endorsed notes, participations and all other documentation necessary to effect the assignment of the Assigned Banking Loans and the Assumed Letters of Credit to BNY.

BNY As Trustee v Bell
Production 11/30/09
0174



Hunt Leibert Jacobson, P.C.
*Attorneys at Law*
*Hartford & Fairfield, Connecticut*

50 Weston Street
Hartford, CT 06120
Telephone: (860) 241-1650
Facsimile: (860) 808-0623

Geoffrey K. Milne
Direct Dial: (860) 240-9140
gmilne@hlcj.com

April 6, 2010

**VIA FACSIMILE (860)240-3211**
Melissa Ruko, Clerk
United States District Court
Abraham Ribicoff Federal Building
450 Main Street
Hartford, CT 06103

Re:    **Removal papers filed on 3/31/10 of claims by Jonathan Bell against the Bank
of New York, Trustee for BS Alt A 2005-9**

Dear Ms. Ruko:

The purpose of this communication is to identify the grounds upon which the removal of
the claims filed by Jonathan Bell are appropriate in this case.

The claims currently pending were filed by Jonathan Bell on March 4, 2010. At the time
of their filing, the state court foreclosure action was the subject of a withdrawal filed in January,
2010. Accordingly, no state law claims by the Bank of New York, Trustee were pending at that
time. Significantly, the Bank of New York, Trustee never sued Jonathan Bell in the state court,
as he did not sign the loan documents and does not own the property. Rather, the original action
was filed against Sonja Bell only, and was withdrawn before the current claims were filed by her
husband, Jonathan Bell. The original parties in the foreclosure were the Bank of New York,
Trustee and Sonja Bell, not Jonathan Bell.

Federal law does allow removal in this context. In re Wilson Industries, 886 F. 2d 93, 96
(5th Cir. 1989). In construing the removal statute, federal law determines who is a plaintiff and
who is a defendant. Chicago, Rock Island v. Stude 346 U.S. 574 (1954). In Texas v. Walker, 142
F. 3d 813, 816 (5th Cir. 1998), a removal petition by a third party defendant on a counterclaim
was permitted. The removal petition was filed by a counterclaim defendant that was not a party
to the original suit. In the current case, because the Bank of New York withdraw its action in the
Superior Court two plus months before the existing claims were filed, no claims were pending by
Bank of New York at the time Mr. Bell's claims were filed. Because the bank never sued
Jonathan Bell in the first instance, the Bank of New York is not an "original plaintiff to the
action," as its original action never alleged any claims against Mr. Bell. Removal by a

Melissa Ruko
April 6, 2010
Page 2

"counterclaim defendant" was also allowed in <u>North Star Capital Acquisitions, LLC v. Krig</u>, 2007 U.S. Dist. LEXIS 85660 (M.D. Fla.).

Thank you for your assistance in this matter.

Very truly yours,

Geoffrey K. Milne

GKM/tl
cc: Jonathan Bell
Hanson Guest, Esq.

**ATTACHMENT J**

BNY reasonably requests on a bi-weekly basis. BNY and JPM shall meet at least twice a month to review the performance of the Corporate Trust Business during the prior two-week period, including reviewing the mix and volumes of business.

(b) From and after the date hereof until the Closing and subject to Applicable Law, BNY and JPM shall consult with each other on products and services not currently offered by JPM that BNY would expect to make available to corporate trust customers of BNY after the Closing, as well as on procedures and practices not currently undertaken by JPM that BNY would expect to use after the Closing.

(c) Nothing herein shall require JPM to assist BNY in marketing to or soliciting any business from any customer of the Corporate Trust Business if JPM determines that to do so would violate any Contract which is an Excluded Corporate Trust Asset.

Section 11.5   UCC-1 Assignment and Other Documents.   (a) JPM shall use commercially reasonable efforts to deliver to BNY all signed UCC-1 financing statements and UCC-3 assignments of financing statements, endorsed notes, participations and all other documentation necessary to effect the assignment of the Corporate Trust Agreements to BNY. The out-of-pocket costs and expenses of preparing and filing any such documentation shall be paid by BNY.

(b) JPM shall make, by no later than June 30, 2006, all filings of continuation statements in the applicable offices necessary as a result of Revised Article 9 of the Uniform Commercial Code to maintain perfection of security interests related to the Corporate Trust Agreements proposed to be transferred to BNY. The out-of-pocket costs and expenses of preparing and filing any such documentation shall be paid by JPM.

Section 11.6   Use of JPM's Names and Forms.   (a) Except for the Intellectual Property set forth on Schedule 11.6 and as otherwise provided in Section 11.6(b), (i) following the Closing, BNY shall not use JPM's names, forms, marketing materials and similar items included in the Purchased Corporate Trust Assets, for any purpose whatsoever; and (ii) BNY expressly agrees that it is not purchasing or acquiring any right, title or interest in the name of JPM or its Affiliates or any tradenames, trademarks or service marks of JPM or its Affiliates as JPM or such Affiliates have used prior to the date of this Agreement, or will use or own thereafter, in connection with the Purchased Corporate Trust Assets (collectively, the "JPM's Marks"). BNY acknowledges that JPM and its respective Affiliates exclusively own the JPM's Marks and all goodwill related thereto and symbolized thereby. BNY will not make use of the JPM's Marks in any manner that will disparage or damage such marks or the reputation of JPM or its Affiliates, or diminish the goodwill of JPM or their Affiliates.

(b) On the Closing Date, JPM shall grant BNY a non-exclusive, non-transferable, non-sublicensable, royalty-free license to use, in connection with the purchase, operation and conduct of the Corporate Trust Business, the "JPMorgan" name in the forms that currently appear on the systems and applications used in connection with the

104

**ATTACHMENT K**

# PURCHASE AND ASSUMPTION AGREEMENT

## BY AND BETWEEN

## THE BANK OF NEW YORK COMPANY, INC.

## AND

## JPMORGAN CHASE & CO.

DATED AS OF APRIL 7, 2006

AMENDED AND RESTATED AS OF OCTOBER 1, 2006

BNY As Trustee v Bell
Production 061805092
0001

# TABLE OF CONTENTS

## ARTICLE I

## DEFINITIONS; CONSTRUCTION

Section 1.1   Definitions.................................................................................................. 2
Section 1.2   Other Definitions ..................................................................................... 10
Section 1.3   Construction; Absence of Presumption .............................................. 10
Section 1.4   Heading ...................................................................................................... 10

## ARTICLE II

## PURCHASE AND SALE OF CORPORATE TRUST BUSINESS

Section 2.1   Purchase and Sale of Corporate Trust Assets ....................................... 10
Section 2.2   Assumption of Corporate Trust Liabilities ............................................ 10
Section 2.3   Corporate Trust Liabilities under this Agreement and the Corporate
              Trust Related Agreements................................................................... 10
Section 2.4   Untransferrable Appointments............................................................. 10

## ARTICLE III

## PURCHASE AND SALE OF BANKING BUSINESS

Section 3.1   Purchase and Sale of Banking Business ................................................. 10
Section 3.2   Assumption of Banking Liabilities.......................................................... 10
Section 3.3   Arrangements with Respect to IRAs and Keogh ................................... 10

## ARTICLE IV

## PURCHASE PRICE AND ADJUSTMENTS

Section 4.1   Corporate Trust Closing Payment......................................................... 10
Section 4.2   Corporate Trust Post-Closing Payments ............................................... 10
Section 4.3   Banking Closing Payment...................................................................... 10
Section 4.4   Banking Post-Closing Payment ............................................................. 10
Section 4.5   Adjustment to Payments for Expenses, Prepayments and Fees............ 10
Section 4.6   Allocation of Purchase Price.................................................................. 10

## ARTICLE V

## THE CLOSING

Section 5.1   Closing Time and Place ......................................................................... 10
Section 5.2   Closing Documents................................................................................ 10

BNY As Trustee v Bell
Production 051602
0002

Section 5.3      Delivery of Assets ..................................................................................................... 10

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF JPM RELATING TO CORPORATE TRUST

Section 6.1      Organization..................................................................................................... 10
Section 6.2      Authority; Capacity.......................................................................................... 10
Section 6.3      No Conflict; Defaults......................................................................................... 10
Section 6.4      Consents and Approvals ................................................................................... 10
Section 6.5      Litigation and Related Matters.......................................................................... 10
Section 6.6      Brokers.............................................................................................................. 10
Section 6.7      Absence of Undisclosed Liabilities; No Material Adverse Change ................... 10
Section 6.8      Property and Equipment ................................................................................... 10
Section 6.9      Necessary Corporate Trust Permits .................................................................. 10
Section 6.10     Purchased Corporate Trust IP & IT Assets...................................................... 10
Section 6.11     Governmental Notices ....................................................................................... 10
Section 6.12     Corporate Trust Employees and Benefits .......................................................... 10
Section 6.13     Labor Contracts and Relations.......................................................................... 10
Section 6.14     Corporate Trust Agreements and Other Corporate Trust Contracts ................... 10
Section 6.15     Environmental Matters...................................................................................... 10
Section 6.16     Compliance with Laws ...................................................................................... 10
Section 6.17     Corporate Trust Financial Information .............................................................. 10
Section 6.18     Books and Records ........................................................................................... 10
Section 6.19     Corporate Trust Assets...................................................................................... 10
Section 6.20     Leased Corporate Trust Premises ...................................................................... 10
Section 6.21     Insurance Coverage........................................................................................... 10
Section 6.22     Taxes................................................................................................................. 10
Section 6.23     No Prepayment.................................................................................................. 10
Section 6.24     Information Regarding Corporate Trust Customers and Relationships................ 10
Section 6.25     No Other Representations or Warranties ............................................................ 10

## ARTICLE VII

## REPRESENTATIONS AND WARRANTIES OF BNY RELATING TO CORPORATE TRUST

Section 7.1      Organization..................................................................................................... 10
Section 7.2      Authority; Capacity.......................................................................................... 10
Section 7.3      No Conflict; Defaults......................................................................................... 10
Section 7.4      Consents and Approvals ................................................................................... 10
Section 7.5      Litigation and Related Matters.......................................................................... 10
Section 7.6      Compliance with Laws and Regulations............................................................ 10
Section 7.7      Governmental Notices; Regulatory Matters ...................................................... 10
Section 7.8      Brokers.............................................................................................................. 10
Section 7.9      Financing........................................................................................................... 10

BNY As Trustee v Bell
Production 11/30/09
0003

## ARTICLE VIII

### REPRESENTATIONS AND WARRANTIES OF BNY RELATING TO BANKING

Section 8.1 Organization.................................................................................................. 10
Section 8.2 Authority; Capacity......................................................................................... 10
Section 8.3 No Conflict; Defaults....................................................................................... 10
Section 8.4 Consents and Approvals.................................................................................. 10
Section 8.5 Litigation and Related Matters........................................................................ 10
Section 8.6 Brokers............................................................................................................ 10
Section 8.7 Absence of Undisclosed Liabilities; No Material Adverse Change ................... 10
Section 8.8 Property and Equipment ................................................................................. 10
Section 8.9 Necessary Banking Permits ............................................................................ 10
Section 8.10 Assumed Banking Deposits ............................................................................ 10
Section 8.11 Loans............................................................................................................... 10
Section 8.12 Letters of Credit; Derivative Products ............................................................ 10
Section 8.13 Banking Contracts........................................................................................... 10
Section 8.14 Other Purchased Banking Assets .................................................................... 10
Section 8.15 Purchased Banking IP & IT Assets.................................................................. 10
Section 8.16 Governmental Notices ..................................................................................... 10
Section 8.17 Banking Employees and Benefits .................................................................... 10
Section 8.18 Labor Contracts and Relations........................................................................ 10
Section 8.19 Investment Products; Personnel ..................................................................... 10
Section 8.20 Properties and Purchased Banking Assets ...................................................... 10
Section 8.21 Title................................................................................................................. 10
Section 8.22 Environmental Matters.................................................................................... 10
Section 8.23 Derivative Products......................................................................................... 10
Section 8.24 Compliance with Laws .................................................................................... 10
Section 8.25 Banking Financial Information ........................................................................ 10
Section 8.26 Books and Records .......................................................................................... 10
Section 8.27 Safe Deposit Boxes ......................................................................................... 10
Section 8.28 Banking Assets................................................................................................ 10
Section 8.29 Leased Banking Premises ............................................................................... 10
Section 8.30 Owned Banking Premises ............................................................................... 10
Section 8.31 Insurance Coverage......................................................................................... 10
Section 8.32 Taxes............................................................................................................... 10
Section 8.33 Information Regarding Banking Customers and Relationships........................... 10
Section 8.34 No Other Representations or Warranties ......................................................... 10

## ARTICLE IX

### REPRESENTATIONS AND WARRANTIES OF JPM RELATING TO BANKING

Section 9.1 Organization.................................................................................................. 10
Section 9.2 Authority; Capacity......................................................................................... 10
Section 9.3 No Conflict; Defaults....................................................................................... 10
Section 9.4 Consents and Approvals .................................................................................. 10

BNY As Trustee v Bell
Production 11/30/09
0004

Section 9.5    Litigation and Related Matters............................................................................. 10
Section 9.6    Compliance with Laws and Regulations................................................................ 10
Section 9.7    Governmental Notices; Regulatory Matters .......................................................... 10
Section 9.8    Brokers................................................................................................................ 10

## ARTICLE X

## GENERAL COVENANTS

Section 10.1    Access to Properties and Records Relating to the Corporate Trust
               Business ................................................................................................................. 10
Section 10.2    Access to Properties and Records Relating to the Banking Business................... 10
Section 10.3    Efforts; Regulatory Filings and Other Actions .................................................... 10
Section 10.4    Further Assurances................................................................................................ 10
Section 10.5    Advice of Changes................................................................................................ 10
Section 10.6    Exclusive Dealing ................................................................................................ 10
Section 10.7    Confidentiality ..................................................................................................... 10
Section 10.8    Publicity; Notices.................................................................................................. 10
Section 10.9    Transfer of Economic Benefits ............................................................................ 10
Section 10.10   Execution and Delivery of Related Agreements.................................................... 10
Section 10.11   Non-Competition and Non-Solicitation Agreements Relating to
               Corporate Trust Business..................................................................................... 10
Section 10.12   Non-Competition and Non-Solicitation Agreements Relating to
               Banking and Other Businesses.............................................................................. 10
Section 10.13   Updated Schedules................................................................................................ 10
Section 10.14   Transition Coordinators; Cooperation with Transition.......................................... 10

## ARTICLE XI

## FURTHER AGREEMENTS RELATING TO CORPORATE TRUST

Section 11.1    Conduct of the Corporate Trust Business Prior to the Closing.............................. 10
Section 11.2    Conduct of Corporate Trust Business After the Closing ...................................... 10
Section 11.3    Corporate Trust Landlord Consents...................................................................... 10
Section 11.4    Cooperation Regarding Transition of Products and Services................................. 10
Section 11.5    UCC-1 Assignment and Other Documents............................................................ 10
Section 11.6    Use of JPM's Names and Forms............................................................................ 10
Section 11.7    Transfer of Paying and Authenticating Agencies ................................................. 10
Section 11.8    Transfer of Nominee Name ................................................................................. 10
Section 11.9    Conversion and Conversion Plan.......................................................................... 10
Section 11.10   Grant of FCS Sublicense...................................................................................... 10
Section 11.11   Interest Reporting................................................................................................. 10
Section 11.12   Withholding ......................................................................................................... 10
Section 11.14   Intercompany Obligations.................................................................................... 10

BNY As Trustee v Bell
Production 11/30/09
0005

## ARTICLE XII

### FURTHER AGREEMENTS RELATING TO BANKING

Section 12.1 Conduct of the Banking Business Prior to the Closing.......................................... 10
Section 12.2 Conduct of Banking Business After the Closing .................................................. 10
Section 12.3 Banking Landlord Consents................................................................................. 10
Section 12.4 Cooperation Regarding Transition of Products and Services; Courier
Contracts ............................................................................................................. 10
Section 12.5 UCC-1 Assignment and Other Documents.......................................................... 10
Section 12.6 Interest Reporting............................................................................................... 10
Section 12.7 Withholding ........................................................................................................ 10
Section 12.8 Letters of Credit ................................................................................................. 10
Section 12.9 Form of Transfer................................................................................................. 10
Section 12.10 Data Processing Conversion for the Retail Branches and Handling of
Certain Items........................................................................................................ 10
Section 12.11 Physical Damage to Owned Banking Premises .................................................... 10
Section 12.12 Right of First Offer for Excluded Banking Premises............................................ 10
Section 12.13 Termination of Agent Bank Agreement ............................................................... 10
Section 12.14 Limited License of BNY's Name ........................................................................ 10
Section 12.15 Bank-At-Work Arrangement; Sublease of Certain Employee Branches............... 10
Section 12.16 Information Regarding Banking Customers and Relationships.............................. 10
Section 12.17 Private Banking Earnout..................................................................................... 10
Section 12.18 Subpoena and Certain Process Matters................................................................ 10

## ARTICLE XIII

### EMPLOYMENT AND BENEFIT MATTERS

Section 13.1 Corporate Trust Business..................................................................................... 10
Section 13.2 Banking Business................................................................................................ 10

## ARTICLE XIV

### TAX MATTERS

Section 14.1 Tax Indemnification............................................................................................ 10
Section 14.2 Preparation and Filing of Tax Returns................................................................. 10
Section 14.3 Refunds, Credits and Carrybacks........................................................................ 10
Section 14.4 Cooperation ........................................................................................................ 10
Section 14.5 Transfer Taxes .................................................................................................... 10
Section 14.6 United Kingdom VAT ......................................................................................... 10
Section 14.7 VAT ................................................................................................................... 10
Section 14.8 Coordination ....................................................................................................... 10
Section 14.9 Tax Treatment of Payments................................................................................ 10
Section 14.10 Limitations and Survival..................................................................................... 10
Section 14.11 Tax-Deferred Exchange ...................................................................................... 10

BNY As Trustee v Bell
Production 11/30/09
0006

## ARTICLE XV

### CLOSING CONDITIONS

Section 15.1   Conditions to Obligations of Each Party to Close ................................................. 10
Section 15.2   Conditions to Obligation of BNY to Close ............................................................. 10
Section 15.3   Conditions to Obligation of JPM To Close ........................................................... 10

## ARTICLE XVI

### TERMINATION

Section 16.1   Termination ............................................................................................................. 10
Section 16.2   Effect of Termination ............................................................................................. 10

## ARTICLE XVII

### INDEMNIFICATION

Section 17.1   Survival of Representations and Warranties .......................................................... 10
Section 17.2   Indemnification of BNY Indemnified Parties ....................................................... 10
Section 17.3   Indemnification of JPM Indemnified Parties ........................................................ 10
Section 17.4   Claims .................................................................................................................... 10
Section 17.5   Limitations on Indemnity ...................................................................................... 10
Section 17.6   Mitigation ............................................................................................................... 10
Section 17.7   Remedies Exclusive .............................................................................................. 10

## ARTICLE XVIII

### MISCELLANEOUS

Section 18.1   Entire Agreement; Amendment ............................................................................. 10
Section 18.2   Binding Effect; Assignment; No Third-Party Beneficiaries .................................. 10
Section 18.3   Counterparts ........................................................................................................... 10
Section 18.4   Notices ................................................................................................................... 10
Section 18.5   Provisions Separable ............................................................................................. 10
Section 18.6   Expenses ................................................................................................................ 10
Section 18.7   Deadlines ................................................................................................................ 10
Section 18.8   Scope of Agreements ............................................................................................. 10
Section 18.9   Delays or Omissions ............................................................................................. 10
Section 18.10  Waiver of Jury Trial ............................................................................................. 10
Section 18.11  Governing Law ...................................................................................................... 10

BNY As Trustee v Bell
Production 11/30/09
0007

## SCHEDULES AND EXHIBITS

Schedules

JPM Disclosure Schedules
BNY Disclosure Schedules
Schedule A
Schedule B

Annexes

| Annex A | Amended and Restated Schedules |
| Annex B | Allocation Schedule for Corporate Trust Retention |
| Annex C | Allocation Schedule for Banking Retention |

Exhibits

| Exhibit A | Corporate Trust Transition Services Agreement |
| Exhibit B | Banking Transition Services Agreement |
| Exhibit C | Servicing Agreement |

BNY As Trustee v Bell
Production 11/30/09
0008